MARIO A. MOYA (State Bar No. 262059)
REBECCA M. HOBERG (State Bar No. 224086)
MOYA LAW FIRM
1300 Clay Street, Suite 600
Oakland, California 94612
Tel:  510.926.6521
Fax: 510.340.9055
Email: mmoya@moyalawfirm.com
        rhoberg@moyalawfirm.com

Attorneys for Defendant
DASAGROUP HOLDINGS CORP.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFERIES FUNDING, LLC,<br><br>           Plaintiff,<br><br>     v.<br><br>DASAGROUP HOLDINGS CORP. (d/b/a KICKHASS AVOCADOS) and LONDON FRUIT, INC.,<br><br>           Defendants. | Case No. 3:24-cv-05639-TLT<br><br>**OPPOSITION OF DASAGROUP HOLDINGS CORP. TO SILO TECHNOLOGIES, INC.'S MOTION TO DISMISS THIRD PARTY COMPLAINT** |
| DASAGROUP HOLDINGS CORP. (d/b/a KICKHASS AVOCADOS),<br><br>           Counter- and Cross-Claimant/<br>           & Third-Party Plaintiff,<br><br>     v.<br><br>JEFFERIES FUNDING, LLC,<br><br>           Counter-Defendant,<br><br>LONDON FRUIT, INC., and<br><br>           Cross-Defendant,<br><br>SILO TECHNOLOGIES, INC.,<br><br>           Third-Party Defendant. | Date: March 4, 2025<br>Time: 2:00 p.m.<br>Courtroom: 9<br>Judge: Hon. Trina L. Thompson |

DEFENDANT DASAGROUP'S OPP'N TO MOTION TO DISMISS THIRD PARTY COMPLAINT

1

**TABLE OF CONTENTS**

2

I. INTRODUCTION & BACKGROUND..................................................................................1

II. ARGUMENT...............................................................................................................3

   A. Standard of Review.............................................................................................3

   B. Movants Advocate for a Rule 9(b) Standard That Is Inapplicable to the Claims Pleaded...............5

      1. The Prior Order Did Not Apply a Heightened Pleading Standard to Any Claim.....................5

      2. Movants Cannot Recast Specific Pleadings In General Terms Without Context......................6

      3. Actionable Omissions Are Pleaded Under a Relaxed Standard, and Nothing is Conclusory About Dasagroup's Detailed Amended Pleadings........................................................7

   C. Dasagroup's Claim for Declaratory Relief Is Adequately Pleaded...................................7

      1. The Court Has Already Overruled a Challenge to the Claim for Declaratory Relief, and Movants Cannot Dismiss "Parts" of a Claim Pleaded.................................................7

      2. Coercion and Economic Duress Are Adequately Pleaded.........................................9

   D. Unjust Enrichment Is Adequately Pleaded By Voluminous Amendments................................10

      1. The Fees Charged Are Invalid and Subject to Challenge........................................11

      2. Movants Have Forfeited Any Objection to Failure to Allege an Inadequate Remedy.............13

      3. Dismissal Is Not Appropriate for Claims and Relief Pleaded In the Alternative.................15

      4. The Amended Pleadings Plausibly Allege Unjust Enrichment....................................16

   E. Breaches of the Implied Covenant Are Adequately Pleaded in the Alternative........................18

   F. Money Had and Received Is Adequately Pleaded By Voluminous Amendments.............................19

   G. Claims Under the UCL Are Adequately Pleaded By Voluminous Amendments.............................21

      1. Movants Forfeited Any Objection to Failure to Allege an Adequate Remedy at Law..............21

      2. The Unlawful Prong Is Adequately Pleaded on Several Bases....................................21

      3. The Fraudulent Prong Is Adequately Pleaded..................................................24

      4. The Unfair Prong Is Adequately Pleaded......................................................24

   H. Should the Court Find Any Deficiency, It Should Grant Leave To Amend...............................25

III. CONCLUSION.............................................................................................................25

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) .................................................................................. 4

*Astiana v. Hain Celestial Group, Inc.,*
  783 F.3d 753, 762 (9th Cir. 2015).........................................……..16

*Baruch Inv. Co. v. Huntoon,*
  257 Cal. App. 2d 485 (1967)..................................................... 18

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) .............................................................. 10

*Boyack v. Regis Corp.,*
  812 Fed. Appx. 428 (2020)....................................................... 9

*Broam v. Bogan,*
  320 F.3d 1023 (9th Cir. 2003) .................................................... 5

*Buckley v. Align Tech., Inc.,,*
  2014 U.S. Dist. LEXIS 105779 .................................................22

*Creative Ventures, LLC v. Jim Ward & Assocs.,*
  195 Cal. App. 4th (2011).......................................................... 24

*Davidson v. Sprout Foods, Inc.,*
  106 F.4th 842 (9th Cir. 2024).....................................................6

*Doe v. Napa Valley Unified Sch. Dist.,*
  2018 U.S. Dist. LEXIS 238175 (N.D. Cal. Apr. 24, 2018) .................. 5

*Elias v. Hewlett-Packard Co.,*
  950 F. Supp. 2d 1123 (N.D. Cal. 2013) ....................................... 11

*Emerson v. N. Tr. Corp.,,*
  U.S. Dist. LEXIS 240782  (N.D. Cal. June 20, 2023) ......................5

*Fox v. Federated Department Stores, Inc.,*
  94 Cal. App. 3d 867 (1979) ..................................................... 18

*FTC v. Commerce Planet, Inc.,*
  815 F.3d 593 (9th Cir. 2016)....................................................16

*García-Catalán v. United States,*
  734 F.3d 100  (1st Cir. 201) ...................................................4

*Great-West Life & Annuity Ins. Co. v. Knudson,,*

534 U.S. 204, 212 (2002) ............................................................................15

*Greentree Fin. Grp., Inc. v. Execute Sports, Inc.*,
163 Cal. App. 4th 495 (2008) .............................................................12, 14

*Hardwick v. Wilcox*,
11 Cal. App. 5th 975 (2017) .............................................................17, 18

*In re Apple & AT & TM Antitrust Litig.*,
596 F. Supp. 2d 1288 (N.D. Cal. 2008)................................................8

*In re Gilead Scis. Secs. Litig.*,
536 F.3d 1049 (9th Cir. 2008)................................................................11

*In re Apple & AT & TM Antitrust Litig.*,
588 F. Supp. 2d 1111 (C.D. Cal. 2008)................................................8

*In re Netopia, Inc.*,
2005 U.S. Dist. LEXIS 38823 (N.D. Cal. Dec. 15, 2005) ...........22, 23

*Janisse v. Winston Inv. Co.*,
154 Cal. App. 2d 580 (1957) .................................................................17

*Johnson v. GMRI, Inc.*,
2007 U.S. Dist. LEXIS 4017 (E.D. Cal. May 21, 2007) ........................22

*Jones v. Kirchner*
835 F.3d 74, 80 (D.C. Cir. 2016) .............................................................5

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .................................................................11

*Korchemny v. Piterman*,
68 Cal. App. 5th 1032 (2021) .................................................................17

Lagrisola v. N. Am. Fin. Corp.,
96 Cal. App. 5th 1178 (2023)................................................................25

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) ........................................................11, 25

*Lorenz v. Safeway, Inc.*,
241 F. Supp. 3d 1005(N.D. Cal. 2017)..................................................4

*Merced County Mut. Fire Ins. Co.*,
233 Cal. App 3d 765 (1991) .................................................................21

*Milana v. Credit Discount Co.*,

---

DEFENDANT DASAGROUP'S OPP'N TO MOTION TO DISMISS THIRD PARTY COMPLAINT

27 Cal. 335 (1945) ..............................................................................................12, 14

*Morongo Band of Mission Indians v. Rose,*
  893 F.2d 1074 (9th Cir. 1990) ................................................................................ 25

*Nevcal Enterprises, Inc. v. Cal-Neva Lodge, Inc.,*
  217 Cal. App. 2d 799 (1963) .................................................................................. 18

*NRA of Am. v. Vullo,*
  602 U.S. 175 (2024) ..................................................................................................5

*Olguin v. FCA US LLC,*
  2023 U.S. Dist. LEXIS 2388 (E.D. Cal. Feb. 13, 2023) .........................................27

*Orozco v. WPV San Jose, LLC,*
  36 Cal. App. 5th 375 (2019) ................................................................................... 22

*Park v. Thompson,*
  851 F.3d 910 (9th Cir. 2017) .................................................................................. 22

*Powell v. McCormack,*
  395 U.S. 486 (1969) ............................................................................................... 25

*Produce Pay, Inc. v. Izguerra Produce, Inc.,*
  39 F.4th 1158 (9th Cir. 2022) ................................................................................ 25

*Reich v. Cont'l Cas. Co.,*
  33 F.3d 754 (7th Cir. 1994) .................................................................................... 15

*Reiter v. Mut. Credit Corp.,*
  2011 WL 13175458 (C.D. Cal. Aug. 31, 2011) ...................................................... 27

*Rich & Whillock, Inc. v. Ashton Development, Inc.,*
  157 Cal.App.3d 1154 (1984) .................................................................................. 10

*Rivera v. Anaya,*
  726 F.2d 564 (9th Cir. 1984) ..................................................................................16

*Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Assn.,*
  55 Cal. 4th 116 (2013)..............................................................................................7

*Robertson v. Superior Court,*
  90 Cal. App. 4th 1319 (2001) ................................................................................ 25

*Rondberg v. McCoy,*
  2009 U.S. Dist. LEXIS 118869 (S.D. Cal. Dec. 21, 2009)...................................... 22

*Saunders v. Superior Court*,
  27 Cal. App. 4th 832 (1994) ............................................................................................ 23

*Scherer v. FCA US*
  565 F. Supp. 3d 1184, 1189 (S.D. Cal. 2021) .............................................................. 8, 27

*Side, Inc. v. Official Partners New York, LLC*,
  2025 U.S. LEXIS 6600 (N.D.Cal. Jan. 13, 2025 ................................................................ 9

*Stock v. Meek*,
  35 Cal. 2d 809 (1950) .................................................................................................... 23

*Synopsys, Inc. v. Real Intent, Inc.*,
  2024 U.S. Dist. LEXIS 192189  (N.D. Cal. Oct. 22, 2024) ............................................ 15

*Tyler v. Hennepin County*,
  598 U.S. 631, 637 (2023) ................................................................................................. 5

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097, 1105 (9th Cir. 2003) ............................................................................... 7

*West Pico Furniture Co. v. Pac. Fin. Loans*,
  2 Cal. 3d 594 (1970) ..................................................................................................... 18

**Statutes**

7 U.S.C. §§ 499a-499t ....................................................................................................... 25

Cal. Civ. Code § 1671(b) ......................................................................................... 11, 12, 13

Cal. Civ. Code § 1689(b) ................................................................................................... 10

Cal. Fin. Code § 22100(a) .......................................................................................... 17, 24

Cal. Fin. Code §§ 22800-22806 ................................................................................. 17, 23

**State Constitution**

Cal. Const., art. XV, § 1 ................................................................................................... 15

**Rules**

Fed. R. Civ. P. 8(d) ......................................................................................................... 24, 25

Fed. R. Civ. P. 12(b)(6) .................................................................................................... 4, 5, 9

Fed. R. Civ. P. 12(g)(2) ........................................................................................... 2, 5, 6, 19

Fed. R. Civ. P. 15(a)(2) ................................................................................. 25

**Regulations**

10 Cal. Code Regs. § 900 ……….…………………………..…………………….23

10 Cal. Code Regs. § 912 ……….…………………………..…………………….23

10 Cal. Code Regs. § 913 ............................................................................ 23

10 Cal. Code Regs. § 943 ............................................................................23

## I.    INTRODUCTION & BACKGROUND

The Ag-Tech and agricultural factoring company Silo Technologies, Inc. ("Silo"), a third-party defendant in this action, has filed a joint motion to dismiss the first amended third party complaint ("ATPC") by its borrower, Dasagroup Holdings Corp. ("Dasagroup"), who is claimed to owe a staggering debt arising out of the factoring of its agricultural receivables under the Silo Instant Pay program.  The motion to dismiss is joined by Silo's silent table lender, Plaintiff Jefferies Funding, LLC ("Jefferies"), whose $100 million secured credit facility was used by Silo to extend problematic loans to participants in the perishable produce industry like defendant/third-party plaintiff Dasagroup, a purveyor of fresh avocados.  In the joint motion filed, Jefferies also challenges Dasagroup's second amended counterclaim ("SACC") against it, which seeks similar relief as the ATPC asserted against Silo.[1]

The joint motion to dismiss filed by Jefferies and Silo (collectively, "Movants"), while fresh in its frenzied demand for heightened pleading of everything and anything under Rule 9(b), is incongruous with the parties' prior briefing, the applicable *Iqbal/Twombly* pleading standard, the Supreme Court's recent directive to consider the "whole complaint" when evaluating motions to dismiss, and the detailed amended pleadings. Without getting too mired in needless complexity, one thing is clear:  The causes of action are well pleaded, and they are not subject to heightened pleading under Rule 9(b).  The amended pleadings are voluminous and provide ample context to state a claim on all claims pleaded.

The movant's briefing is a massive red herring, muddying waters to cloud what is clearly depicted in two voluminous amended pleadings.  Even though Dasagroup, per the Court's prior order, has bolstered the factual narrative of its pleadings with mountains of new averments for additional background and context (*see, e.g.,* new averments at SACC ¶¶ 9-60 and FATPC ¶¶ 9-60), the joint motion implausibly demands even greater elaboration.  The joint motion ignores these new averments and mashes together snippets of disparate causes of action to lob a hail-Mary, desperation pass somewhere toward an endzone in hopes that the Court will dismiss well-pleaded claims.  *See, e.g.,* Mot. at 7-8 (arguing that disparate paragraphs of Dasagroup's Second Claim for unjust enrichment and Fifth Claim for violations of the California unfair competition law do not meet an inapplicable pleading standard under Rule 9(b)).  Throughout their briefing, Movants feign an inability to understand what is pleaded against them, but the arguments strain credibility in light of the voluminous allegations made in

---

[1] For simplicity, the SACC and ATPC are collectively referred to herein as the "Amended Pleadings."

the Amended Pleadings, especially when one considers that Silo and Jefferies are the parties who are best positioned to know how much Silo charged to Dasagroup under the Instant Pay Program; how the program worked; and why it was impossible for Dasagroup to make sense of how its loan balances were accruing, how payments were being applied, and how much in late fees were accumulating and how Silo was calculating what was previously paid.

The Court's prior order was clear in what more Dasagroup needed to plead in order to state its claims, and Dasagroup has gone above and beyond and with discovery having just commenced.  The amended pleadings describe what material non-disclosures were made to induce Dasagroup into the Instant Pay Program, and also what coercive acts were done toward Dasagroup and its unsuspecting customers — far beyond simple threats of litigation —  to pressure Dasagroup into agreeing to the Forbearance Agreement under threat of extreme economic duress.   The amended pleadings explain in detail why the late fees charged under the program — which fees mounted over time and were adjusted at Silo and Jefferies' whim — were unconscionable and were also vulnerable to a legal challenge under applicable statutes (including Civil Code § 1671(d)) and the state constitutional prohibitions on usury. The amended pleadings also clearly state multiple bases for other claims for unjust enrichment, money had and received, and violations of the California Unfair Competition Law.

Under Fed. R. Civ. P. 12(g)(2), Movants cannot raise new arguments that they could have raised before in their prior motion.  If the gist of the motion is to force Dasagroup, without the full benefit of discovery, to plead a precise amount in dollars and cents to substantiate its claim of usurious interest (which excessive detail Dasagroup disputes at the pleadings stage before discovery), then Dasagroup seeks leave to amend to plead the last-available quantification of late fees that it obtained concerning Silo and Jefferies' claims.  As shown in the demonstrative below, that quantification appeared to assess late fees totaling **_over $661,000_** on the total amount allegedly due by Dasagroup and other additional fees that, with the late fees, total more than $717,000 as shown on the screenshot below from Silo's website and customer portal, which shows over 20% of the amount allegedly due from Dasagroup was from late fees, which is a remarkable feat for its only having participated in the program for 19 months:



Much like this web portal and its underlying calculations were indecipherable to Dasagroup, the Motion to dismiss now before the Court is similarly opaque. The motion does not track the causes of action pleaded, and it demands an excessive level of specificity that is incompatible with the Federal Rules and ordinary pleading standards.

Presuming the truth of all that is pleaded, the joint motion must be denied. The Court has already rejected a challenge to the declaratory relief claim, and the remaining claims ARE pleaded with considerable facts and context. Dasagroup should have its day in Court. If any further doubt remains, then the Court should grant Dasagroup leave to amend.

## II.    ARGUMENT

### A.    <u>Standard of Review</u>

To withstand a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Plausibility "is not akin to a 'probability requirement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 664. A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). The plausibility requirement does not require detailed fact pleading or

---

offering evidence to support the claims.  A plaintiff need not "rule out every possible lawful explanation for the conduct . . . challenge[d]," and a rule to the contrary "would invert the principle that the complaint is construed most favorably to the nonmoving party" on a motion to dismiss." *Lorenz v. Safeway, Inc.*, 241 F. Supp. 3d 1005, 1020 (N.D. Cal. 2017) (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 597 (8th Cir. 2009)), *overruled in part on grounds not applicable*, *Rollins v. Dignity Health*, 338 F. Supp. 3d 1025, 1032 n.1 (N.D. Cal. 2018).

"[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009); *García-Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013).  Claims may be adequately pleaded when "the complaint, *assessed as a whole*," "plausibly allege[s] conduct that, viewed in context, could be reasonably understood to [constitute a cause of action]." *NRA of Am. v. Vullo*, 602 U.S. 175, 191-198 (2024) (reversing court of appeals's order of dismissal for failure to state claim where plaintiff's complaint plausibly alleged state regulatory agency violated First Amendment by coercing regulated entities to end business relationships with plaintiff in order to punish or suppress advocacy) (emphasis added).  "Credibility determinations are not for the district court, especially at the motion to dismiss stage, before evidence is available and before the Defendants have even denied the allegations against them." *Jones v. Kirchner*, 835 F.3d 74, 80 (D.C. Cir. 2016).

"A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of parts of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief." *Fed. Trade Comm'n v. Amazon.com, Inc.*, 735 F. Supp. 3d 1297, 1312 (W.D. Wash. 2024) (citation omitted); *see also*, *Doe v. Napa Valley Unified Sch. Dist.*, 2018 U.S. Dist. LEXIS 238175, at *8 (N.D. Cal. Apr. 24, 2018) ("By its own terms, there does not appear to be any way to grant partial dismissal of a claim under Fed. R. Civ. P. 12(b)(6)."); Fed. R. Civ. P. 8(d)(2) ("[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count . . . or in separate ones," and "[i]f a party makes alternative statements, the pleading is sufficient if any one of them is sufficient").

If a court grants a motion to dismiss, leave to amend should be granted unless the pleading could not possibly be cured by other facts. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  "Facts raised for the first time in plaintiff's opposition papers should be considered by the court in determining

---

whether to grant leave to amend or to dismiss the complaint with or without prejudice." *See Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) (citation omitted); *Elias v. Hewlett-Packard Co.*, 950 F. Supp. 2d 1123, 1139 (N.D. Cal. 2013).

Finally, with limited exception, "a party that makes a motion under [Rule 12(b)(6)] must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2); *Schnabel v. Lui*, 302 F.3d 1023, 1034 (9th Cir. 2002). A party's failure to raise such defenses or objections in an earlier motion to dismiss amounts to forfeiture. *See Cepelak v. HP Inc.*, 2021 U.S. Dist. LEXIS 221360, at *2 (N.D. Cal. Nov. 15, 2021).

## B. Movants Advocate for a Rule 9(b) Standard That Is Inapplicable to the Claims Pleaded.

A considerable portion of the joint motion (at Mot. pp. 7-8) advocates for an inapplicable standard of review under Rule 9(b). While just two paragraphs Amended Pleadings reference various "misreprentat[ions]" or "misreprentat[ions] or conceal[ments]" made by Silo and/or Jefferies as a basis for Dasagroup's claims for fraudulent and unfair conduct under the Unfair Competition Law (see, generally, SACC ¶¶ 93, 96), there are no statutory or common-law claims for fraud asserted in the Amended Pleadings. The only claims for relief asserted against Silo and Jefferies five claims for declaratory relief, unjust enrichment, breach of the implied covenant, money had and received, and violations of the California Unfair Competition Law, all of which are properly pleaded.

### 1. The Prior Order Did Not Apply a Heightened Pleading Standard to Any Claim.

Movants incorrectly presume that all causes of action pleaded should be subject to Rule 9(b). That cannot be the case. First, in the March 5 order, the Court previously denied a challenge to Dasagroup's counterclaim and third party claim for declaratory relief. Dasagroup did not make further amendments to those claims in light of this ruling, which had overruled a challenge to those claims. The March 5 order did not apply a Rule 9(b) standard to the declaratory relief claim or any other claim, even though Movants had previously briefed the issue. Because the matter has been implicitly settled by the prior ruling, the Court should reject Movants' request to apply a new standard of review to pleadings that were amended based upon the contents and instructions of the prior order.

Second, any new arguments challenging this claim have been forfeited by Rule 12(g)(2). There is no authority for the proposition that claims for declaratory relief and also common counts like unjust enrichment and money had and received are subject to Rule 9(b) merely because the complaint pleads

1   allegations of a fraudulent course of conduct with respect to its UCL claim.  Each claim is assessed on

2   its own merits, and unless the claim itself alleges all elements of fraud, the standard pleading

3   requirements apply.  *See, e.g., Davidson v. Sprout Foods, Inc.*, 106 F.4th 842, 853 (9th Cir. 2024) (while

4   consumer protection claims for false advertising had been properly dismissed under Rule 9(b), court

5   reversed dismissal of claims under the Sherman Act and for unjust enrichment under ordinary pleading

6   standard).  The mere fact that a UCL claim and other consumer-protection claims can allege fraudulent

7   conduct does not imply that Rule 9(b) applies to every such claim.  *See California v. Meta Platforms,*

8   *Inc. (In re Soc. Media Adolescent Addiction/Personal Inj. Prods. Liab. Litig.)*, 753 F. Supp. 3d 849 n.40

9   (N.D. Cal. 2024) (citing *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1019 (9th Cir. 2020)).

   **2.  Movants Cannot Recast Specific Pleadings In General Terms Without Context.**

10          In a sleight of hand, the motion (at pp. 7-8) attempts to abstract-away all of the detailed nuance

11   and particulars pleaded in the Amended Pleadings by recasting them into self-serving generalized

12   categories that Movants' then attack as "conclusory.:  *See* Mot. at 7-8 (grouping allegations into three

13   general categories listed in bulletpoints).  This argument invites error.  In determining whether a claim

14   has been adequately pleaded, the complaint must be read "as a whole," as opposed to piece by piece.

15   *See Vullo*, 602 U.S. at 194; *Braden*, 588 F.3d at 594.   Movants' briefing is disingenuous in this regard,

16   and it attempts to apply an inapplicable standard under Rule 9(b) to those pleadings.  *See* Mot. at 8:6.

17          Movant's other attempts (at Mot. pp. 8:10-9:18) to whittle-away the surrounding context of the

18   Amended Pleadings fall flat.  Movants cannot "strike" allegations under Rule 9(b) by myopically

19   focusing, in isolation, on cherry-picked allegations like a press release[2] or contract terms devoid of parol

20   evidence in which Dasagroup was assured of how such terms would be interpreted and applied in the

21   course of the parties' relationship.  To strike allegations in the manner Movants contend would

22   undermine California's unique substantive law governing the interpretation of contracts and use of parol

23   evidence.  *See generally Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Assn.*, 55

24   Cal. 4th 1169, 1182 (2013) ("Under California law, the parol evidence rule does not bar introduction of

25   prior or contemporaneous understandings to plead fraud.").  Movants' citation to *Vess v. Ciba-Geigy*

26   *Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) cannot be reconciled with the Supreme Court's recent

27   ─────────────
     [2] The fact of a public announcement is not the same as a 1:1 communication, and, in any event, nothing
28   in the press release states that such funding was intended to directly fund the Instant Pay Program.

─────────────
DEFENDANT DASAGROUP'S OPP'N TO MOTION TO DISMISS THIRD PARTY COMPLAINT

instruction in *Vullo* to consider the "whole complaint" in evaluating motions to dismiss or subsequent cases in which the holding in *Vess* was deemed in applicable to lawsuits seeking to impose liability upon the fraudulent prong of the UCL, which does not require proof of all elements of common law fraud. *See In re Mattel, Inc.*, 588 F. Supp. 2d 1111, 1118 (C.D. Cal. 2008).

### 3. Actionable Omissions Are Pleaded Under a Relaxed Standard, and Nothing is Conclusory About Dasagroup's Detailed Amended Pleadings.

The courts have relaxed Rule 9(b) standards for fraud claims based upon material omissions, because "an omission cannot be described in terms of the time, place, and contents of the misrepresentation or the identity of the person making the misrepresentation."  *Entm't v. Writers Guild of Am.*, 478 F. Supp. 3d 932, 933–34 (C.D. Cal. 2020) (citation omitted); *see also*, *Scherer v. FCA US*, 565 F. Supp. 3d 1184, 1189 (S.D. Cal. 2021) ("Although federal case law requires plaintiffs to allege fraud by omission in accordance with Rule 9(b), the particularity 'pleading standard is *lowered* on account of the reduced ability in an omission suit 'to specify the time, place, and specific content' relative to a claim involving affirmative misrepresentations.") (quoting *In re Apple & AT & TM Antitrust Litig.*, 596 F. Supp. 2d 1288, 1310 (N.D. Cal. 2008)) (emphasis in original).  In such cases, the following must be pleaded: "(1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff, and (4) what defendant obtained through the fraud."  *Senior Health Insurance Co of Pa. v. Beechwood Re Ltd.*, 345 F. Supp. 3d 515, 525 (S.D.N.Y. 2018) (citation omitted).

Even when particularized facts must be pleaded, the law does not demand a plaintiff to strictly particularize everything and anything, including details that are already known to a defendant.  *See Wood v. Apodaca* (N.D. Cal. 2005), 375 F. Supp. 2d 942, 949 (claim for rescission of a partnership agreement not subject to dismissal under Fed. R. Civ. P. 9(b) because owner pleaded fraud with requisite particularity, even though she did not identify "place" where the fraud occurred, which occurred at inception and was known to defendant).  Even if the Court were to apply Rule 9(b) to the allegations (which it should not), the Amended Pleadings would satisfy these standards.

### C. <u>Dasagroup's Claim for Declaratory Relief Is Adequately Pleaded.</u>

### 1. The Court Has Already Overruled a Challenge to the Claim for Declaratory Relief, and Movants Cannot Dismiss "Parts" of a Claim Pleaded.

---

To take another bite at the apple, movants renew their previously-unsuccessful challenge to Dasagroup's claims for declaratory relief. *See* Mot. at pp. 22-23. But the Court's March 5 order denied each of the Movants' challenges to these claims which, among other things, seek declarations that the Silo Instant Pay Agreement and the Forbearance Agreement are subject to rescission and/or are invalid for other reasons. *See* Dkt. 72 (March 5, 2024 order) at p. 15.

Dasagroup's claims for declaratory relief are asserted as the first claims for relief in the SACC and ATPC (both at ¶¶ 66-73). Because the Movants' challenge has already been overruled once before, their latest challenge to the same pleadings — which have now been bolstered with even additional factual detail pleaded elsewhere — should be overruled. *See Twombly,* 550 U.S. at 563 ("[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."). Movants also cannot raise new arguments that were previously available but not raised in their prior motion to dismiss per Fed. R. Civ. P. 12(g)(2).

If the Court were inclined to revisit any of these issues, the claim still stands. Movants make the outlandish claim that "there are no factual allegations" supporting the claim for declaratory relief. *See* Mot. at 22:10-17. This is not credible. As before, to provide context for the claim, the first paragraph of each claim for declaratory relief expressly incorporates by reference all other allegations of the amended pleadings. See SACC ¶ 66, ATPC ¶ 66. The Court must consider this detailed factual context when evaluating the sufficiency of the pleading, and it is absurd for Movants to suggest that the claim is "so vague and ambiguous" that it cannot reasonably prepare a response to either pleading.[3]

Next, Movant's attempts to cherry-pick various averments in isolation distorts the pleadings in a manner that is inconsistent Rule 12(b)(6) and *Twombly/Iqbal*. Contrary to what Movants argue, nothing in the Amended Pleadings suggest that Silo's failure to register as a commercial lender — in and of itself — is a sole basis pleaded for a declaration of rescission. The Amended Pleadings go into greater detail about why that fact is only pertinent to the predicate violation for a UCL claim. It is also context for Silo and Jefferies's greater misconduct, specifically their failures to disclose material information in

---

[3] Movants' citations to *Boyack v. Regis Corp.*, 812 Fed. Appx. 428, 431 (9th Cir. 2020) and *Kuhn v. Three Bell Capital*, 698 F. Supp. 3d 1119, 1122 (N.D. Cal. 2023) are not helpful. Neither case concerned a claim of declaratory relief or claim seeking declaration of rescission. The portion of *Boyack* cited concerned a claim for unpaid overtime that failed to meet minimal pleading requirements. *Kuhn* is cited merely for a general pleading standard, and the fiduciary claim at issue was dismissed with leave to amend so that the plaintiff could allege the source and scope of the alleged fiduciary duty.

connection with the Instant Pay Program, their failure to disclose all the required financial disclosures required of commercial factoring companies, and the conflicted manner in which they suddenly altered their course of dealing with Dasagroup once Jefferies began demanding sudden payment.

Movants' citations to *Side, Inc. v. Official Partners New York, LLC*, 2025 WL 81576, 2025 U.S. LEXIS 6600 (N.D.Cal. Jan. 13, 2025) and *Cent. Valley Ranch, LLC v. World Wide Invs., LLC*, 2012 U.S. Dist. LEXIS 7953, at *11 (E.D. Cal. Jan. 23, 2012) are not helpful.  In those cases, the litigants had relied *exclusively* on the lender's unlicensed status as the sole basis for a claim of rescission.  Dasagroup does no such thing.  In its voluminous pleadings, Dasagroup has pleaded facts explaining why it seeks "rescission of both Supplier Receivable Sales Agreement and the Forbearance Agreement pursuant to Civil Code § 1689 because of one or more of the following: (i) [its] consent to those agreements was obtained through duress, menace, fraud, or undue influence; (ii) if the consideration for the obligation of [Dasagroup] fails in a material respect from any cause; (iii) the contracts are unlawful for causes which do not appear in their terms or conditions, and the parties are not equally at fault (including specific violations of California state law); and/or (iv) because the public interest will be prejudiced by permitting the Agreements to stand."  SACC  69; ATPC  69.   These allegations are made following considerable prior averments about Silo's Instant Pay Program, Dasagroup's participation in the program, the course of dealing that arose, and later difficulties and disputes that resulted in the Forbearance Agreement.  *See id.* ¶¶ 9-60.  Because a Rule 12(b)(6) motion cannot dismiss only a part of a claim pleaded, the scattershot challenge should be overruled.

### 2.  Coercion and Economic Duress Are Adequately Pleaded.

The Amended Pleadings show that Dasagroup's claims of coercion and economic duress pertain to the Forbearance Agreement with Jefferies and not the original Instant Pay Agreement with Silo.  *See* SACC ¶¶ 36-50, ATPC ¶¶ 36-50.  That is no secret or deep revelation.

Under California law, the doctrine of economic duress "may come into play upon the doing of a wrongful act which is sufficiently coercive to cause a reasonably prudent person faced with no reasonable alternative to succumb to the perpetrator's pressure." *Rich & Whillock, Inc. v. Ashton Development, Inc.* (1984) 157 Cal.App.3d 1154, 115 (collecting cases).  "The assertion of a claim known to be false or a bad faith threat to breach a contract or to withhold a payment may constitute a wrongful act for purposes of the economic duress doctrine.  Further, a reasonably prudent person subject to such

---

an act may have no reasonable alternative but to succumb when the only other alternative is bankruptcy or financial ruin." *Id*. at 1159 (citations omitted). In *Rich & Whillock*, the Court rescinded a settlement agreement and release where it was shown that the defendant had acted in bad faith by refusing to pay plaintiff-contractor's final billing and instead offering to pay a compromised amount, knowing that contractor was a new company faced with imminent bankruptcy if it was not paid.

Here, Movants correctly reference the portions of the Amended Pleadings that support Dasagroup's claim of economic duress. See SACC ¶¶ 37-53. These allegations show that Movants made threats to contact Dasagroup's customers — including customers whose receivables were not factored — in order to pressure the company to pay amounts allegedly owed. And Movants followed through on this threat by sending false notices of assignment that falsely stated that Silo had a security interest in "all" of Dasagroup's receivables and that all future payments to Dasagroup should be sent to Silo instead. *Id*. As a result of this misconduct and to avoid further action taken against its customers (who Movants threatened to sue), Dasagroup executed the Forbearance Agreement under extreme economic duress — without free will, agency and judgment that it would have otherwise had — and without any reasonable alternative but to comply or face financial ruin. See id. ¶ 48-49. Nevertheless, this has caused Dasagroup's largest customer to stop doing business with it, which has caused Dasagroup severe economic harm.[4]

### D. Unjust Enrichment Is Adequately Pleaded By Voluminous Amendments.

Movants' challenge to Dasagroup's claim for unjust enrichment (at Mot. pp. 11-14) fails. First, despite considerable voluminous amendments at SACC ¶¶ 9-60 & ATPC ¶¶ 9-60, Movants argue that the unjust enrichment claim "is essentially unchanged" from the claim the court previously dismissed. See Mot. at 11. The argument strains credibility when all other allegations of the Amended Pleadings are incorporated by reference into the claim. See SACC ¶ 74 & ATPC ¶ 74. The Amended Pleadings also provide new, detailed averments establishing why the terms and conditions of the Silo Instant Pay contracts, including the various fees charged — the late fees and even the transaction fees — are vulnerable to a legal challenge. *See, e.g.,* SACC ¶¶ 29, 50, 65-61.[5]

---

[4] There is nothing improper about Dasagroup's retention of counsel to defend itself in this lawsuit. Any argument to the contrary is unbecoming and should be disregarded.

[5] Among other things, these paragraphs allege that when Dasagroup entered into its agreements with Silo (and later Jefferies), "there was no legitimate business justification for the excessive charges, transaction fees, and late fees assessed under the SRA"; "[t]hese fees were not commercially reasonable, were disproportionate to the actual costs incurred by Silo related to those provisions, and did not bear

**1.    The Fees Charged Are Invalid and Subject to Challenge.**

The Court should reject Movants' suggestion that the late fees charged under the Instant Pay Program are exempt from scrutiny "because they are not dependent on a breach of contract by Dasagroup," as opposed to, presumably, the Obligors late payment of the underlying receivables. *See* Mot. at p. 12:1-9. That is not a fair reading of the Supplier Receivables Agreement ("SRA"). The document contains a contractual commitment by Supplier to repay the amounts loaned within a fixed period — i.e., within 30 days of the maturity date on the underlying receivable. If that does not occur, then a late fee of 2.5% is assessed for any payments received within the 30 days thereafter. If, however, a repayment is received later than such time, then an enhanced late fee [of a total 3.5]% is charged on the balance due. The SRA states that these late fees will be assessed based on when payments are received and are unconditional. They are tied to the Supplier's repayment obligation and are even referred to as "late fees" on that obligation. It is not credible for Movants to argue that they are not "dependent on a breach" Dasagroup. *See* Mot. at 12:1-6. A "breach" only exists with reference to an underlying duty. When, as here, a repayment obligation exists to pay Silo within 30 days of maturity, then such an obligation can be breached. And a late fee will be assessed upon any such breach, with an even greater enhanced penalty assessed if payment is further delayed more than 30 days past maturity.

These provisions are invalid and punitive in nature. In California, a damages clause will generally be considered unreasonable and unenforceable under Civ. Code § 1671(b), if it bears no reasonable relationship to the range of actual damages that the parties could have anticipated would flow from a breach. See *Greentree Fin. Grp., Inc. v. Execute Sports, Inc.*, 163 Cal. App. 4th 495, 496 (2008) (invalidating provisions in settlement agreement). Such a provision will be considered unreasonable if the amount specified bears no reasonable relationship to the range of actual damages the parties could have contemplated at the time of contracting. *Ridgley v. Topa Thrift & Loan Assn.*, 17 Cal.4th 970, 977 (1998). "In the absence of such relationship, a contractual clause purporting to predetermine damages 'must be construed as a penalty.'" *Id*. Moreover, "[a] contractual provision imposing a 'penalty' is ineffective, and the wronged party can collect only the actual damages sustained." *Id*. (collecting cases).

Here, both the Silo Instant Pay agreement and the later Forbearance Agreement contain unenforceable provisions that do not represent a reasonable endeavor by the parties, at the time of

---

any reasonable relationship to the range of actual damages that the parties could have anticipated would flow from any late payment or other breach of the agreement." *See generally* SACC   29.

contracting, to arrive at a fair estimate of damages caused by a breach by delayed payment.  The Instant Pay contract automatically imposes a standard 2.5% late fee (the Transaction Fee plus 0.5% of NFV) on payments received within 30 days of the "Maturity Date," see Dkt. 1 at Exh. B § 6, which is when payment would be due from the Obligor (typically, for Dasagroup, is Net 30 — i.e., payment due within 30 days of the invoice). If payment is made by Dasagroup more than 30 days after Maturity (i.e., which is defined as the receivable's due date to be paid by the Obligor), then, in Dasagroup's case, the late fee escalates to 3.5% (i.e., the 2% transaction fee plus an additional 1.5%). *Id.*  Nothing in section 6 of the Instant Pay Agreement (or elsewhere) indicates that these late fees are intended to be anything but a penalty to Dasagroup.  There is no language in the agreement indicating that actual damages are difficult to estimate or that the fees charged are a reasonable estimate of actual damages.

The punitive nature of the agreement becomes clear when one considers that the clause and its "late fees" bear no relationship to actual damages and operate to exact a forfeiture.  Conceivably, if Dasagroup's "Obligors" typically paid on the 30th day (at Maturity of the receivables), then presumably every invoice factored would necessarily be subject to a late fee if Dasagroup needed to await clearance of payment of those funds to remit them to Silo (e.g., on either the 31st day, 32nd day, etc. as practicable).  If payment were further delayed to past more than 30 days after Maturity, then the late fee automatically escalates to 3.5% (the standard 2% transaction fee plus an additional 1%).  *See id.*[6] These fees are invalid as a matter of law under Civil Code § 1671(b).  *See Ridgley*, 17 Cal.4th at 977-978.

The same problem pervades the later Forbearance Agreement, which contemplated an onerous payment schedule totaling over $3,000,000 over a series of months demanded by Jefferies, but which assessed late fees "as calculated pursuant to Section 6 of the Sale Agreement" if Dasagroup was delayed in paying any installment, plus an additional 3% monthly financing charge for any payment deficiencies under the schedule.  See Dkt. 1 (Jefferies Compl.) at Exh. C § 4.3 (Forbearance Agmt).  Even putting aside the usury issues raised elsewhere (which are also problematic), this is precisely the type of payment arrangement invalided in *Greentree*.  *See id.*, 163 Cal. App. 4th at 496.

---

[6] This creates an inherent absurdity.  At the time of contracting, there was no conceivable market environment in which that is a reasonable estimate of actual damages by a delayed payment.  A payment by Dasagroup made on the 59th day after the invoice is sent (just 29 days after Maturity), bears the same late fee under the contract as a late fee imposed on a payment made just one day after maturity (i.e., 31 days after the Net 30 invoice is sent).

Movants' citation to *Bauer v. Atlantis Events, Inc.*, 645 Fed. Appx. 545 (9th Cir. 2016), a case involving an alternative performance provision, is readily distinguishable. The challenge in *Bauer* concerned a cruise company's 40% fee for cancellation of a reservation for a cruise cabin. The fee was upheld and not found to implicate section 1671(d) because it was found to provide alternative consideration for alternative performance, as opposed to damages for a contractual breach. The customers challenging the cancellation fee were not contractually required to keep the cabin they had reserved, and they could still attend the cruise if they agreed to a generally-assigned cabin at the time of departure. Accordingly, the Court found that there was no breach of contract if they decided to cancel their reservation, which triggered the fee. *See id.* at 547.

Finally, Movants' citation to *Langan v. United Servs. Auto. Ass'n*, 69 F. Supp. 3d 965 (N.D. Cal. 2014) — which involved a sparse pleading without specificity as to which provision of which of several contracts mentioned by a pro se litigant were offensive to section 1671 — is readily distinguishable and adds nothing by comparison. *Compare Langan*, 69 F. Supp. 3d at 981.

### 2. Movants Have Forfeited Any Objection to Failure to Allege an Inadequate Remedy.

Movants argue — for the first time — that the claim for unjust enrichment should be dismissed because, they contend, it is an equitable claim and does not plead the absence of an adequate remedy at law. *See* Mot. at 12-13. The argument has been forfeited by Rule 12(g)(2). *See Cepelak*, 2021 U.S. Dist. LEXIS 221360, at *2. They cannot raise it now when they could have raised it before.

If, however, the Court were inclined to consider the issue, the argument is circular and presumes what Movants have yet to prove. "Although courts frequently refer to restitution as a type of equitable relief, the Supreme Court has long since rejected the notion that all restitution is equitable." *Synopsys, Inc. v. Real Intent, Inc.*, No. 5:20-cv-02819-EJD, 2024 U.S. Dist. LEXIS 192189, at *5-6 (N.D. Cal. Oct. 22, 2024 (citing *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)). Unlike an injunction, "[r]estitution is [] not an exclusively equitable remedy." *Reich v. Cont'l Cas. Co.*, 33 F.3d 754, 756 (7th Cir. 1994) (Posner, J.). "[N]ot all relief falling under the rubric of restitution is available in equity," *Knudson*, 534 U.S. at 212, and the most recent version of the Restatement clearly states that "[a] claimant otherwise entitled to a remedy for unjust enrichment, including a remedy originating in equity, need not demonstrate the inadequacy of available remedies at law." Rest. 3d. Restitution and Unjust Enrichment, § 4(2).

---

In *Synopsys, Inc.*, this Court analyzed these authorities to determine the nature of a claim for unjust enrichment for purposes of a jury trial under the Seventh Amendment. The court noted that the claim is equitable when it seeks to recover specific property and the proceeds of that specific property. *See Synopsys, Inc.*, 2024 U.S. Dist. LEXIS 192189, at *5-6 ("[R]estitution is equitable when it seeks to recover particular property—meaning 'specifically identified funds' or other property that might have been traceable to such funds—that the plaintiff has a rightful interest in.") (collecting cases). "By contrast, restitution is a legal remedy in situations where the plaintiff '[can] not assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him.'" *Id*. at *6 (quoting Great-West, 534 U.S. at 213 (citation omitted). In those cases, the remedy "is legal in nature because it is 'derived from the common-law writ of assumpsit' and imposes 'merely personal liability upon the defendant to pay a sum of money' rather than attempt 'to restore to the plaintiff particular funds or property in the defendant's possession.'" *Id*. at *6 (quoting *Great-West*, 534 U.S. at 213-14) (citation omitted). The Ninth Circuit has recognized this same distinction. *See FTC v. Commerce Planet, Inc.*, 815 F.3d 593, 601 (9th Cir. 2016) (citing *Great-West*, 534 U.S. at 213).

Here, Dasagroup seeks to recover, as damages, the amounts paid to Silo and Jefferies for fees and other compensation to which they were not entitled. That is a general "legal" claim in assumpsit to impose legal liability on Movants in an amount appropriate to avoid their unjust enrichment. Dasagroup is not requesting a return of specific, identifiable money, property, or other consideration advanced, and there is no claim for writ of possession or replevin asserted anywhere in the claim asserted. That Dasagroup has made a separate claim for "compensatory damages" elsewhere (see Mot. at pp. 12:22-13:6) is of no consequence and is not inconsistent with a claim for restitution at law.

Rather than analyze the nature of relief requested, the authorities cited in Movants' briefing attempt to re-cast the claim as a claim for "equitable relief" in quasi-contract, which, they argue, cannot be maintained unless an inadequate remedy at law is affirmatively pleaded. *See* Mot. 12-13. Again, Movants presume that the claim necessarily seeks equitable relief. Movants' citation to *Astiana v. Hain Celestial Group, Inc*., 783 F.3d 753, 762 (9th Cir. 2015) is actually helpful to Dasagroup in this regard. In that case, the Ninth Circuit reversed a district court's hasty dismissal of a claim for unjust enrichment on the erroneous grounds that it was "not a standalone cause of action" and was "nonsensical." The Ninth Circuit reversed and found that plaintiff's "straightforward statement" alleging that a defendant in

---

a false advertising case was "unjustly enriched" by false and misleading labeling concerning baby food was "sufficient to state a quasi-contract cause of action" by the plaintiff, even though there was no reference to any allegations of an inadequate remedy at law anywhere in the court's opinion. *Id*. at 762. To be sure, the pleadings below from the district court show that the claim for restitution dismissed by the district court in *Asitana* did not contain *any* affirmative allegations of an inadequate remedy at law. *See generally* Dkt. 29 at pp. 55-56 (Eighth Cause of Action) in Case No. 4:11-cv-06342-PJH (N.D.Cal.). Surely the Ninth Circuit must have known that there was no such allegation made in the pleadings when it reversed dismissal and held that the claim was adequately pleaded.

Movants' reliance on this Court's prior decisions in *Emerson v. N. Tr. Corp*., No. 23-cv-00241-TLT, (N.D. Cal.) are distinguishable and not helpful to their position. The first decision, *Emerson v. N. Tr. Corp*., No. 23-cv-00241-TLT, 2023 U.S. Dist. LEXIS 240782, at *17 (N.D. Cal. June 20, 2023) ("*Emerson I*") found that an initial claim for unjust enrichment arising out of a beneficiary's challenge to tax-return fees paid by a trustee were not sufficiently alleged because they did not allege an inadequate remedy at law and because the litigant could not show that a claim for quasi-contract was appropriate in the context of a trust. After leave to amend was granted, the amended pleading was again challenged in *Emerson v. N. Tr. Corp.*, No. 23-cv-00241-TLT, 2023 U.S. Dist. LEXIS 240550, at *26-27 (N.D. Cal. Nov. 15, 2023) ("*Emerson II*"). There, the court found that because a trust agreement already existed between the beneficiary and the trustee, the claim could not stand where there was no allegation that "the contract between them is unenforceable or invalid." The court's opinion in *Emerson II* did not reach whether failure to plead an inadequate remedy at law was fatal to the claim. *See Emerson II*, 2023 U.S. Dist. LEXIS 240550, at *27. This case does not present a similar factual scenario as *Emerson*, which involved a written trust agreement with no challenges to its validity. Here, by contrast, Dasagroup challenges validity of the SRA and its various fees.

### 3. Dismissal Is Not Appropriate for Claims and Relief Pleaded In the Alternative.

Movants remaining arguments and authorities at Mot. pp. 12:21-13:17 fail. Dasagroup is entitled to plead claims and relief in the alternative under Rule 8, and there is nothing inconsistent with respect to that at the pleadings stage. The fact that Dasagroup's challenge to the validity of the SRA could possibly undercut a different theory of relief pleaded in the alternative, like its implied-covenant claim, is of no consequence. Movants did not make this argument in its prior motion to dismiss, so the objection is forfeited by Rule 12(g)(2).

Even if the Court were inclined to excuse the forfeiture, the challenge should still be overruled. *World Surveillance Grp. Inc. v. La Jolla Cove Inv'rs, Inc.*, No. 13-cv-03455-WHO, 2014 U.S. Dist. LEXIS 51464, at *5 (N.D. Cal. Apr. 11, 2014) is distinguishable.  There, the plaintiff asserting an unjust enrichment claim had also asserted a breach of contract claim to enforce its rights under a Convertible Debenture that governed the parties' relationship.  But nothing in the pleadings challenged the validity of the Convertible Debenture, the contract on which it had sued, or the alternative relief pleaded.[7]

### 4.  The Amended Pleadings Plausibly Allege Unjust Enrichment.

In light of the parties' prior briefing and the voluminous amendments made, Dasagroup is bewildered by the arguments advanced at pp. 13-14 of the Motion, which dispute that Movants received any benefits from the payment and assessment of the unlawful and usurious fees alleged in the Amended Pleadings.  The argument ignores voluminous pleadings concerning the Instant Pay Program, its provisions, the manner in which if operated, the charges assessed against Dasagroup, and the manner in which the Forbearance Agreement attempted to incorporate problematic fees by reference.  *See* SACC and ATPC ¶¶ 19-50, 59-61, 74-77.

By engaging in what are essentially lending activities (and/or acting as a broker of loans funded or syndicated by Jefferies), Silo was subject to several legal obligations under California law.  These obligations include lender-licensing requirements, disclosure requirements for commercial financings, and an obligation to avoid violating state usury laws.  *See generally* Cal. Fin. Code §§ 22100(a), 22001(a)(4), 22004, 22009, 22800(d)(1), 22800(n), and Cal. Const. Art. XV, § 1(2) (with limited exception, generally imposing 10 percent per annum  cap on " any loan or forbearance of any money, goods, or things in action for use other than primarily for personal, family, or household purposes").

The California courts have held that usury laws apply to lending transactions that, at first glance, may be disguised as "sale."  *See Fox v. Federated Dept. Stores, Inc.*, 94 Cal. App. 3d 867, 877 (1979). This is true of factoring transactions as well.  *See Baruch Inv. Co. v. Huntoon*, 257 Cal. App. 2d 485, 492 (1967); *Milana v. Credit Discount Co.*, 27 Cal. 335, 339 (1945).  "Where the form of the transaction makes it appear to be nonusurious, it is for the trier of the fact to determine whether the intent of the

---

[7] Movants citation to *McIlwain v. Berman*, No. 18-cv-03127 CW, 2020 U.S. Dist. LEXIS 50018 (N.D. Cal. Feb. 10, 2020) for the proposition that an implied covenant claim presumes an enforceable contract is unremarkable.  No claim for unjust enrichment was implicated by that decision, which found an underlying fee-splitting agreement between law firms to be unenforceable.

---

DEFENDANT DASAGROUP'S OPP'N TO MOTION TO DISMISS THIRD PARTY COMPLAINT

*Jefferies Funding v. Dasagroup Holdings et al.*
No. 3:24-cv-05639-TLT

1   contracting parties was that disclosed by the form adopted, or whether such form was a mere sham and

2   subterfuge to cover up a usurious transaction." *West Pico Furniture*, 2 Cal. 3d at 603 (quoting *Janisse v.*

3   *Winston Inv. Co.*, 154 Cal. App. 2d 580, 582 (1957)).  Furthermore, as a matter of state law, the

4   protections of the usury law cannot be waived by a debtor's voluntary payment of excessive interest.

5   This is because payments of usury are not considered voluntary but are deemed to be made under

6   restraint.  *See Hardwick v. Wilcox*, 11 Cal. App. 5th 975, 988 (2017).  When a loan is usurious the

7   creditor is entitled to repayment of principal only and no interest.  *See id.* at 979.  "The attempt to exact

8   [a] usurious rate of interest renders the interest provisions of a note void," and "any interest payments

9   made at the usurious rate should be credited against the principal balance in any action to collect. . . ."

    *See Korchemny v. Piterman*, 68 Cal. App. 5th 1032, 1042–1043 (2021) (collecting cases).

10          Applying these principles, it is apparent that the amounts charged under Silo's Instant Pay

11   Program exceeds the applicable 10% annual threshold to state a defense of illegality under the state

12   usury laws.  For every receivable factored, the terms of the Instant Pay Program assess a 2% transaction

13   fee when the Deferred Purchase Price is paid, *see* Compl. Exh. B §§ 2-3, and again if late fees were

14   assessed for delayed payments after the receivable's maturity date.  *See id.* § 6.  Section 6 also required

15   payment of interest on all such outstanding amounts owed to Silo (including amounts assessed for

16   transaction fees and late fees) at maximum legal rates — as if the propriety of paying interest on interest

17   were curable by only assessing interest on the total accumulating balances due at the maximum rate.

18   This is not to mention that Silo's retention of the Reduction Reserve provides additional economic

19   "float" to Silo on its ability to generate interest from that holdback factored-into the Purchase Price, in

20   addition to Silo and Jefferies's apparent belief, understanding, and course of dealing that they could

21   charge-back the full balance of unpaid receivables to their customers like Dasagroup.  In all, these

22   charges readily exceed the applicable maximum monthly rate of 0.83%, even though over 10% may or

23   may not be collected if the debts at issue were considered on an annual basis.  This is because the

24   charges at issue are not payable in one year; they are due much sooner based on the standard duration for

25   factored receivables, which is typically measured in months, not years.  Regardless, it is apparent from

26   the screenshot *supra* that Dasagroup — having only participated in the program for 19 months — has

27   been charged no less than $661,000 in late fees out of a total face value of approximately $2.58 million

    in invoices factored.  Those late fees amount to far more than 25% of the invoice face value, which

28

---

DEFENDANT DASAGROUP'S OPP'N TO MOTION TO DISMISS THIRD PARTY COMPLAINT

easily exceeds the 10% annual constitutional maximum.

By incorporating these fees into the agreement, the Forbearance Agreement that Dasagroup was forced to sign under duress to avoid economic ruin was also usurious.  Under California law, whatever the counterparty's best intentions, a forbearance agreement cannot be used to shield a usurious transaction.  *See Hardwick*, 11 Cal. App. 5th at 991.  The Forbearance Agreement's attempt to incorporate all prior charges under the Silo Instant Pay Program is itself usurious.

### E. <u>Breaches of the Implied Covenant Are Adequately Pleaded in the Alternative.</u>

Dasagroup's claim for breach of the implied covenant is well pleaded, and the Court can dispose of the arguments advanced by Movants.  First, the covenant of good faith and fair dealing is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct that, while not technically transgressing the express covenants, frustrates the other party's rights to the benefits of the contract.  *See Racine & Laramie, Ltd. v. Dep't of Pks. & Rec.*, 11 Cal. App. 4th 1026, 1031-32 (1992).  Likewise, a party to a contract cannot use a contractual right as pretext to commit acts that are far beyond the scope of what the agreement contemplates, nor can a party exercise discretion conferred in a manner that deprives its counterparty of contractual benefits.

The motion does not address the vast majority of conduct pleaded in support of this claim.  For instance, the Amended Pleadings allege that a course of dealing arose between Dasagroup and Silo with respect to the Instant Pay Program, *see* SACC/ATPC ¶¶ 35-38, but that this abruptly changed when Silo received a payment demand from Jefferies on its credit facility, terminated Dasagroup's ability to obtain further financing, and began making onerous payment demands with threats and contacts with Dasagroup's customers, even customers whose invoices were not factored under the program.  See id., ¶¶ 39-50.  The Amended Pleadings alleges that, in light of this course of dealing and mutual understanding about how the terms of the Instant Pay Program, Silo breached the implied covenant by abruptly terminating Dasagroup's financing; suddenly declaring that Dasagroup was overextended; charging fees, expenses, penalties and other items against Dasagroup's reserve account without any transparency; attempting to exercise excessive control over Dasagroup's business by attempting to control Dasagroup's operations and insisting on immediate payment (from Dasagroup and customers like London Fruit) of Dasagroup's Instant Pay account to the exclusion of Dasagroup's other operational needs (which conduct was beyond the scope of the SRA); initiating contact with Dasagroup's customers

(including customers whose receivables were ; and failing to acknowledge the parties' longstanding course of dealing and at a point in time in which Dasagroup had been in substantial compliance with its obligations.  See generally SACC ¶¶ 80(a)-(i); ATPC ¶¶ 81(a)-(i).  All of these acts, assuming their truth, establish a violation of the implied covenant.  *See, e.g., Powerhouse Motorsports Grp., Inc. v. Yamaha Motor Corp., U.S.A.*, 221 Cal. App. 4th 867, 882-83 (2013)  (franchisor acted in bad faith by encouraging dealer to sell its dealership after its closure, but then terminating the franchise agreement because of the closure); *Bailey Tool & Mfg. Co. v. Republic Bus. Credit, LLC* (In re Bailey Tool & Mfg. Co.), 2021 Bankr. LEXIS 3502 *118-122; 2021 WL 6101847 (N.D.Tex. Dec. 23, 2021) (applying Louisiana law to find breach of implied covenant where, among other things, contracting party used contractual rights as pretext to excerpt unanticipated control over counterparty's business operations).

## F.    <u>Money Had and Received Is Adequately Pleaded By Voluminous Amendments.</u>

Movants' challenge to Dasagroup's claim for the common count of money had and received (at Mot. pp. 16-17) fails.  In the Court's prior order, the Court advised that Dasagroup needed to plead that a "definite sum" was received by the movants, which was missing from the original complaint filed.  *See* Order (Mar. 5, 2025) at pp. 11-12.  In response, Dasagroup has considerably amended the factual background of its pleadings (at SACC & APTC ¶¶ 9-60) and explained the usurious late fees and other improper charges assessed by Silo and Jefferies, all of which allegations are incorporated by reference into the claim pleaded.  See SACC   85; APTC   86.

While discovery continues, the amendments made to the Fourth Claim for relief did, indeed, attempt to plead the "definite sum" that Dasagroup seeks to recover by referencing the specific charges that were assessed against Dasagroup that it contends are unlawful and/or invalid.  See SACC/ATPC ¶¶ 86-88.  Paragraph 86, for instance, specifies, "Among other things, Dasagroup seeks restoration of the following usurious charges: usurious late fees under section 6 of the SRA ranging from 2.5% to 3.5% assessed on late payments received 1 to 30 days or 31 to 60 days, respectively, following maturity on such payments, in addition to all such charges paid under the Forbearance Agreement and the additional forfeiture penalty of 3% assessed thereunder."  Id. ¶ 86.

As Dasagroup has stated in prior briefing (and has disclosed in the screenshot *supra* at Part I, showing over $661,000 in assessed "late fees" against Dasagroup), the statement of its account on Silo's platform was opaque and did not provide much detail into how amounts owed under the Instant Pay Program were calculated, how payments were applied, how late fees were assessed after applying

---

payments, and how other charges were factored into Dasagroup's running account balance on Silo's Instant Pay platform.  Because of this — and to avoid pleading *less* than what it is truly owed — Dasagroup has pleaded these definite and ascertainable sums that are known by Silo/Jefferies in the manner shown above, which is sufficient under Rule 12 pleading standards under *Iqbal/Twombly*.  *See Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) ("The *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible.").

The authorities cited by Movants to oppose this manner of pleading are not persuasive.  The case of *Johnson v. GMRI, Inc*., 2007 U.S. Dist. LEXIS 40176, at *17 (E.D. Cal. May 21, 2007) found that various wage-and-hour class-action litigants had not met this standard by alleging that they were "induced to give money and provide labor to defendants in unknown sums because they were not compensated the one-hour wage for working split shifts and pa[ying] defendants cash shortages."  These unliquidated and disparate amounts — varying from plaintiff to plaintiff — are far different than what Dasagroup has pleaded above, which amounts are set by contract and known to Silo and Jefferies, who have superior knowledge of what Dasagroup was charged.  Similarly, the sums at issue in the class action case of *Buckley v. Align Tech., Inc*., No. 5:13-CV-02812-EJD, 2014 U.S. Dist. LEXIS 105779, at *17 (N.D. Cal. July 31, 2014) and in the professional dispute underlying *Rondberg v. McCoy*, No. 09-CV-1672-H (CAB), 2009 U.S. Dist. LEXIS 118869, at *18 (S.D. Cal. Dec. 21, 2009) also concerned unliquidated sums — the former, the varying costs of Invisalign treatments among class plaintiffs, and the latter concerning funds allegedly taken from the defendant's commandeering of a chiropractic journal's websites, advertising accounts, and merchant accounts.  Neither of those amounts could be ascertained definitively as they had been alleged in those cases.

Moreover, as stated in prior briefing, the California Supreme Court has held that a claim for money had and received is also recognized in scenarios like one — i.e., where a debtor seeks to recover usurious interest payments previously paid under an unlawful lending agreement.  *See Stock v. Meek*, 35 Cal. 2d 809, 816-17 (1950) (holding that "[b]orrowers may . . . bring an action for money had and received to recover usurious interest paid within two years of . . . suit"); *Creative Ventures, LLC v. Jim Ward & Assocs*., 195 Cal. App. 4th 1430, 1441 (2011) (recognizing a claim for money had and received as one of "two remedies available to borrowers who have paid interest under a usurious loan

agreement").  To the extent that Dasagroup is able to show that the Silo Instant Pay Agreement and the Forbearance Agreement are usurious, then Dasagroup should be entitled to plead this relief and the remedies recognized by the California courts.

### G.  Claims Under the UCL Are Adequately Pleaded By Voluminous Amendments.

Despite considerable amendments to the complaint (at SACC & APTC ¶¶ 9-60) and *pages* of new averments added to the UCL claims pleaded in the Amended Pleadings (see SACC ¶¶ 90-102 & ATPC ¶¶ 91-103), Movants again challenge the sufficiency of the claim, but with no good basis.

#### 1.  Movants Forfeited Any Objection to Failure to Allege an Adequate Remedy at Law.

As with the claim for unjust enrichment, Movants attempt to avoid forfeiture by arguing for the first time that Dasagroup's claims under the UCL the claim for unjust enrichment should be dismissed because, they argue — for the first time — that the claim is an equitable claim and does not plead the absence of an adequate remedy at law.  *See* Mot. at 12-13.  They did not make this argument in the prior round of briefing, and the argument has been forfeited by Rule 12(g)(2).  See Cepelak, 2021 U.S. Dist. LEXIS 221360, at *2.  They cannot raise it anew in response to the Amended Pleadings when they did not raise the same objection before.

#### 2.  The Unlawful Prong Is Adequately Pleaded on Several Bases.

Movants challenge Dasagroup's claim under the "unlawful" prong of the California Unfair Competition Law fails, resoundingly.   "The 'unlawful' practices prohibited by section 17200 [of the Business & Professions Code] are *any practices forbidden by law*, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made.  It is not necessary that the predicate law provide for private civil enforcement. . . .  [S]ection 17200 "borrows" violations of other laws and treats them as unlawful practices independently actionable under section 17200 et seq."  *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838-39 (1994) (emphasis added).

The Amended Pleadings go above and beyond in pleading various specific laws violated by Silo and Jefferies with respect to the Instant Pay Program, the Forbearance Agreement, and all other prior allegations incorporated by reference.  See SACC ¶ 90, ATPC ¶ 91.  The claim pleads eight (8) separate and distinct predicate violations, which contain specific citations to statutes, constitutional provisions, and other regulations.  See SACC ¶ 92(a)-(h), ATPC ¶ 93(a)-(h).  The motion before the Court challenges these predicate acts in scattershot fashion (again, ignoring that Rule 12(b)(6) relief cannot lie

against a "part" of a cause of action), but none of the challenges are sufficient, individually and collectively, to warrant dismissal for the following reasons:

CDL & Implementing Regulations.  Without acknowledging the full contents of the two particular averments cited at SACC ⁋ 92(e), (f) and ATPC ⁋ 93(e), (f), Movants claim that the Amended Pleadings fail to sufficiently allege violations of the California CDL and its implementing regulations to such an extent that they cannot meaningfully defend themselves.  This strains credibility when subsections (e) and (f) of these paragraphs contain detailed citations to the California Finance Code and the California Code of Regulations. *Id*.  Such detailed citations are more than sufficient to put Movants on notice of which laws and which regulations they violated in the context of the pleadings.

California Financing Law.  Movants also challenge subsections (d) of SACC ⁋ 92 and ATPC ⁋ 93, which alleges "violat[ions] [of] Division 9 of the California Financial Code, the California Financing Law, which requires nonbank lenders and also brokers engaged in the business of making or brokering loans to obtain a California Financing license from the California Department of Financial Protection and Innovation (formerly the Department of Business Oversight), including, but not limited to, Cal. Fin. Code §§ 22100(a), 22004, 22009." *Id*.; *see also* SACC/ATPC ⁋⁋ 56, 59-60 (other similar allegations re: unlicensed lending).  Here, Dasagroup's reference to this failure to obtain a lender's license is intended to show a predicate violation of law for purposes of the UCL.  These amendments are more than sufficient to cure the deficiency noted by the Court in its March 5 order, and is a stark difference from the pleadings at issue in *Khoury v. Maly's of California, Inc*., 14 Cal. App. 4th 612, 619 (1993), which "[did] not describe the manner in which respondent's practice [was] 'unlawful.'" *Id*.[8]  Movants' other authorities cited about the substantive effect of a violation shown (see Mot. at pp. 18-19) are beside the point and do not address the issue before the Court on the UCL challenge.  Finally, Movant's citation to Lagrisola v. N. Am. Fin. Corp., 96 Cal. App. 5th 1178, 1178 (2023) is distinguishable on its facts and what Dasagroup has already pleaded.  The litigant in Lagrisola had relied entirely on licensing status to state a predicate violation without any other averments of how it was harmed by that fact.  Here, by contrast, Dasagroup complains that it was harmed by the failure of licensure because of the lack of disclosures, the usurious nature of the Instant Pay Program, and the manner in which Dasagroup was treated due to conflicts of interest inherent to the Silo-Jefferies relationship (and Jefferies' relationship

---

[8] In light of Dasagroup's pleading of eight (8) independent and sufficient predicate unlawful acts to support its claim under the unlawful prong of the UCL, it is hard to see how Movants could plausibly argue (at Mot. p 18 n. 8) that the claim is entirely "derivative" of other claims pleaded.

with one of its largest shareholders) that, if disclosed, would have deterred Dasagroup's participation in the program altogether.

PACA.  With respect to PACA, the motion avoids the predicate violations pleaded at SACC 92(g) and ATPC  93(g) — i.e., the deliberate attempt by Movants to orchestrate the encumbrance of a federal statutory trust that arises by operation of law —  and instead attempts to argue something wholly different.  The averment clearly alleges that Movants committed yet another unlawful predicate act by "violating federal Perishable Agriculture Commodities Act ("PACA"), 7 U.S.C. §§ 499a-499t by attempting to create a contractual security interest in proceeds of a statutory trust, which action is preempted by the statutory trusts that arise under federal law upon the sale of produce, which law prevails over any contrary provisions of the Uniform Commercial Code and cannot be evaded by private agreement. *See Produce Pay, Inc. v. Izguerra Produce, Inc.*, 39 F.4th 1158, 1162 (9th Cir. 2022) ("While PACA protects the interests of suppliers and sellers of produce, it does not protect the interests of parties who are only lenders")." SACC  92(g); ATPC  93(g).  Instead of addressing that allegation, Movants play the blame-game and argue that it was Dasagroup who "willingly entered into the Sales Agreement," even though Dasagroup took no part in any of the backroom deals that resulted in the design and creation of Instant Pay Program or its form agreements.  Additionally, Movants' citations to SACC ¶¶ 35-36 and ATPC ¶¶ 35-36 as proof of a "sale" are overstated; nowhere in those allegations does Dasagroup claim that it "sold" anything as opposed to receiving "advances" on funds loaned and "factor[ing]" its accounts receivable.

In addition, Movants' citation to *Kurtzman v. CIT Business Credit Corp. (In re N. Merberg & Sons)*, 166 B.R. 567 (Bankr. S.D.N.Y. 1994) is somewhat of an "own-goal" that demonstrates why the entire Instant Pay Program was unlawful in its purpose and effect.  While the case does not use the phrase "downstream participants" of the produce industry in the manner suggested by Silo and Jefferies, it is clear that neither Jefferies nor Silo can plausibly claim to be any such thing.   The security interest at issue in that case was an encumbrance on PACA receivables, which were factored under a lending arrangement.  When the case eventually made its way to the U.S. Court of Appeals, the Second Circuit wasted no problem in finding that CIT, the secured lender wishing to enforce its security interest in the encumbered receivables subject to PACA, was not within the universe of persons subject to protection under the law and was required to disgorge all amounts it had collected by virtue of its encumbrance:

> Because CIT held only a security interest in Merberg's accounts receivable, and did not purchase those accounts for value, its interest is subject to the rights of the PACA trust

beneficiaries. Accordingly, any accounts receivable arising from the sale by Merberg of perishable agricultural commodities or other products that Merberg produced from perishable agricultural commodities, which remained unpaid as of the date of Merberg's bankruptcy, were property of the PACA trust. CIT must, therefore, disgorge amounts collected on the accounts after Merberg's bankruptcy filing to the extent necessary to satisfy claims of PACA trust beneficiaries.

*Endico Potatoes v. CIT Grp./Factoring*, 67 F.3d 1063, 1069 (2d Cir. 1995).  Accordingly, Movants will need to account to any unpaid PACA trust beneficiaries as a result of any alleged encumbrances by the Instant Pay Program.

### 3.  The Fraudulent Prong Is Adequately Pleaded.

As with other challenges, Movants' challenge to the fraudulent prong of UCL is too myopic.  The motion only references two paragraphs of the pleadings to the exclusion of all other new allegations pleaded before.  See Mot. at 20:2-18.  Movants claim (at pp. 20) that the crux of the misrepresentations at issue rely upon undated website materials and are belied by other contractual provisions to the contrary.  That is not a fair reading of the Amended Pleadings.

Several of the misrepresentation and omissions specifically referenced in Movants' motion to dismiss (at SACC  96 and ATPC  97) are specifically pleaded earlier at paragraph 31, which is incorporated by reference in the UCL claim.  The next paragraphs in sequence in the Amended Pleadings state that these same misrepresentations and omissions "were similar, if not identical, to the same alleged benefits that Silo''s representatives Jeff Butler and Alex Archer touted directly to Dasagroup to induce [it] to enter into the Instant Pay Program." *Id*. ¶¶ 32.  These statements were material to Dasagroup's decision to enter into the agreement, were relied upon by Dasagroup, and were consistent with the parties' course of dealing after the parties' business relationship commenced. *Id*. ¶¶ 33-34.  These allegations are pleaded with sufficient particularity. *See, e.g., Olguin v. FCA US LLC*, No. 1:21-cv-1789 JLT CDB, 2023 U.S. Dist. LEXIS 23886, at *9-12 (E.D. Cal. Feb. 13, 2023) (collecting cases).  This is especially true as to any omissions pleaded, which are subject to a "lowered" pleading standard. *See Scherer*, 565 F. Supp. 3d at 1189.

### 4.  The Unfair Prong Is Adequately Pleaded.

Movants' challenge to the unfair prong of Dasagroup's UCL claim fares no better.  The allegations in support of that claim are not duplicative of the other prongs of the UCL. *See, e.g.,* SACC ¶¶ 93(a), (d)-(j); ATPC ¶¶ 94(i), (k)-(r).  Movants do not challenge the adequacy of the pleadings under

---

the "tethering" test, which relies upon "specific constitution, statutory, or regulatory provisions." *See* Mot. at 20-21. Instead, without acknowledging any prior pleadings elsewhere in the Amended Pleadings, they argue that the claim is pleaded in a conclusory fashion under the "balancing test." *See* Mot. at 21 (citing *Price v. Apple, Inc.*, 2022 U.S. Dist. LEXIS 64201, at *14 (N.D. Cal. Apr. 6, 2022)). *Price* is distinguishable. There, the court ruled on the pleading challenge after it had already dismissed legal challenges to other claims seeking to invalidate other fees and charges assessed by Apple against its consumers. Here, Dasagroup's challenges to the fees charged by Movants should be sustained.

Finally, while Movants cite *Reiter v. Mut. Credit Corp.*, No. SACV090811AGRNBX, 2011 WL 13175458, at *9 (C.D. Cal. Aug. 31, 2011) (at Mot. pp. 17) for the proposition that Dasagroup's UCL claim should be dismissed for insufficiently pleading aiding and abetting liability for the statutory violation, but the case is readily distinguishable. The aiding and abetting claim in *Reiter* concerned dismissal of claims for aiding and abetting breach of a fiduciary duty asserted against a group of fourteen defendants who were not alleged to have personally participated in the marketing of predatory investment products to seniors. *See id*. Here, by contrast, Silo (as lender) and Jefferies (as the silent table lender/true financier) are the only two defendants alleged to have personally engaged in extending the problematic loans at issue to Dasagroup and other participants in the perishable produce industry.[9]

### H. Should the Court Find Any Deficiency, It Should Grant Leave To Amend.

Dismissal with leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), and this policy is applied with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). If the Court finds any deficiency, Dasagroup respectfully requests further leave to amend.

## III.  CONCLUSION

The Court should deny the joint motion.

---

[9] If there is any doubt about Jefferies's awareness, then Dasagroup respectfully asks that the Court await Jefferies responses to its pending written discovery about Jefferies's agreement with Silo and any contractual commitments that Jefferies demanded of Silo with respect to the use of Jefferies's trade name and trademarks in the marketing of the Instant Pay Program and in the course of its operation.

Respectfully submitted,

DATED: April 29, 2025

MOYA LAW FIRM

*/s/ Mario A. Moya*

_____

Mario A. Moya

Attorneys for Defendant/Counterclaimant
Dasagroup Holdings Corp.