May 29, 2025

Magistrate Judge Peter H. Kang
U.S. District Court for the Northern District of California
San Francisco Courthouse, Courtroom F, 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *Jefferies Funding LLC v. Dasagroup Holdings Corp. et al.*, Case No. 3:24-cv-05639
      <u>Letter re Discovery Dispute Regarding Confidentiality Designations</u>

To the Honorable Peter H. Kang:

Counsel for Jefferies Funding LLC ("Jefferies") and Third-Party Defendant Silo Technologies Inc. ("Silo") (collectively, the "Buyers") and Dasagroup Holding Corp. ("Dasagroup") submit this letter brief pursuant to Section H of Your Honor's Standing Order for Discovery in Civil Cases. This letter brief concerns the parties' disputes regarding Dasagroup's confidentiality designations. The parties have met and conferred but have been unable to resolve the disputes.[1]

**Jefferies & Silo's Position**

This case involves Dasagroup's sale of receivables to Silo, with Jefferies (Silo's secured lender) holding a security interest in the receivables. The Buyers allege that Dasagroup improperly collected and retained customer payments on certain receivables it sold to Silo.

Dasagroup served its first document production on March 29th.[2] On April 8th, the Buyers challenged 34 of Dasagroup's confidentiality designations per ¶ 6.2 of the Stipulated Protective Order (ECF No. 84) ("PO") (the "April 8 Letter"). Dasagroup failed to respond by the promised date of April 11th. During an April 16th meet and confer, the parties discussed the challenges but could not reach an agreement. Dasagroup then promised a further letter response by April 18th, and the parties agreed to have a further meet and confer on April 22nd. Dasagroup's served its response letter on the afternoon of April 22nd (the "April 22 Letter"). In it, Dasagroup agreed to change 10 documents from AEO to Confidential but otherwise stood on its designations.

Given the untimely letter, the parties held their meet and confer on April 23rd. The parties discussed their respective positions on the 24 documents Dasagroup refused to de-designate but the meeting ended in an impasse. Accordingly, per the PO, Dasagroup was required to make a motion to retain confidentiality of same by April 29th. Having heard nothing further, on May 9th, we advised Dasagroup that these designations were waived.

On May 19th, the parties held another meet and confer, where Dasagroup's confidentiality designations were discussed in two respects. <u>First</u>, we restated the Buyers' position that Dasagroup had waived confidentiality for the 24 documents. Dasagroup claimed that it had not waived anything because the parties had supposedly not exhausted the meet and confer process. <u>Second</u>, we reiterated our concern that Dasagroup's vast over-use of the AEO designation was persisting at an unmanageable scale, *e.g.*, of the 3,582 documents Dasagroup had produced, 1,477 were marked AEO. We noted that the vast majority of the designations were based on a handful of (in

---

[1] Because lead trial counsel for Jefferies and Silo is not located within the geographic region of the Northern District of California and counsel was not otherwise located within 100 miles of each other, the parties held their meet and confer(s) (with lead trial counsel) via video conference.

[2] This production was in response to discovery requests Jefferies served on January 9, 2025. Also, Dasagroup did not serve the Buyers with any discovery requests until April 17, 2025. *See infra* fn. 5. Since then Jefferies and Silo have responded to voluminous requests for admissions and interrogatories, and Silo produced its first production of documents today, May 29, 2025. *Id.*

our view, misplaced) theories—e.g., that AEO is an appropriate designation for (i) entire documents when a customer's name is merely mentioned, (ii) emails exchanged between the parties prior to the litigation. Therefore, we suggested that the parties confer about efficient ways to resolve the overarching confidentiality disputes (e.g., we suggested providing Your Honor with exemplar documents and agreeing to apply the reasoning of Your Honor's decision on them to similar documents). Dasagroup insisted that any challenge needed to be on an individualized basis and rejected the notion that a decision on one document could affect its designation on any other document.

On May 27th, the parties held a final meet and confer on the two issues above. The parties remained unable to resolve their differences and agreed to file this letter.

### I. *Dasagroup Waived Challenged Confidentiality Designations*.

The April 8 Letter provided Dasagroup with written notice of each confidentiality designation challenged. *See* PO ¶ 6.2. For example, the Buyers' challenged, *inter alia*, AEO designations for (i) pre-litigation communications between Dasagroup and Silo, and between counsel for the parties, and (ii) documents that appear to be stand-alone email signatures from another entity. In response, Dasagroup refused to de-designate these documents as AEO, claiming they were properly AEO because they contained customer names.

As the party seeking protection, it is Dasagroup's burden to show "good cause" for the challenged designations. *Collateral Analytics, LLC v. Nationstar Mortg., LLC*, No. 18-CV-00019-RS (JSC), 2019 WL 2288042, at *2 (N.D. Cal. May 29, 2019). Specifically, Dasagroup is required to "show that disclosure [of the alleged materials] would cause significant harm to its competitive and financial position" via "specific demonstrations of fact, supported where possible by affidavits and concrete examples." *Contratto v. Ethicon, Inc*., 227 F.R.D. 304, 307 (N.D. Cal. 2005). Dasagroup's "broad, conclusory allegations of harm" in its April 22 Letter are insufficient. *Id.*

Regardless, Dasagroup has waived its confidentiality designations on the 24 documents because it failed to timely move to retain the designations. The parties met and conferred via video conference on April 16th—eight days after the April 8 Letter was served. *See* PO ¶ 6.2 (requiring parties to confer directly "in voice to voice dialogue . . . within 14 days of the date of service of notice"). During the call, we again explained the basis for the challenges and Dasagroup was given an opportunity to review the designated material, reconsider the circumstances, and explain the basis for the designations. Dasagroup then provided a written response to the April 8 Letter on April 22nd. On April 23rd, the parties discussed their positions and agreed they were at an impasse. We memorialized this in an email to Dasagroup: "We maintain the designation challenges we noticed in our April 8, 2025 letter. The parties have met and conferred in accordance with ¶ 6.2 of the Protective Order but are at an impasse." Tellingly, we heard nothing further from Dasagroup on the designations until we raised the issue of waiver on or around May 9th.

Under the Protective Order, Dasagroup, as the Designating Party, was required to "file and serve a motion to retain confidentiality under Civil Local Rule 7 . . . within 21 days of the initial notice of challenge or within 14 days of the parties agreeing that they remained at an impasse, whichever is earlier." PO ¶ 6.3. Jefferies served its letter on April 8th, so Dasagroup's motion deadline was April 29th. Jefferies maintains that Dasagroup's failure to file such motion, "automatically waive[ed] the confidentiality designation for each challenged designation." *Id*. Thus, Jefferies requests that the Court affirm the waiver of the confidentiality designations for the 24 documents Dasagroup refused to de-designate.

### II. *Dasagroup's Continuing Vast Over-Use of the AEO Designation.*

"AEO designations should be rare and reserved for those circumstances where 'there is no other effective alternative.'" *See, e.g., Mardiros v. City of Hope*, 2019 WL 13164174, at *8 (C.D. Cal. Oct. 2, 2019); *see also* PO, ¶ 2.8 (AEO available only where disclosure would create a substantial risk of serious harm that "could not be avoided by less restrictive means"). When litigants follow

that basic instruction, the PO's procedure for challenging AEO designations on an individualized basis makes sense. Unfortunately, Dasagroup has abused this process, marking nearly half of its production to date, *over 1,400 documents*, as AEO. In doing so, Dasagroup has hamstrung the Buyers' ability to litigate this action, while also making individualized challenges on any meaningful scale impracticable and cost-prohibitive.

Nonetheless, Buyers are hopeful that, with the Court's guidance, the vast majority of designation disputes can be resolved. For example, among the documents marked AEO are emails and documents exchanged between the parties prior to litigation. *See, e.g.,* DASAGROUP005253 – 5279 (documents exchanged between Dasagroup, Jefferies, and Silo marked AEO). The Buyers believe this is inappropriate. *See, e.g.*, *Collateral Analytics v. Nationstar Mortg., LLC*, No. 18-CV-00019-RS (JSC), 2019 WL 2288042, at *2 (N.D. Cal. May 29, 2019) 2288042, at *3 ("Defendants do not dispute that Plaintiff 'has sent or received these exact documents' prior to the litigation. . . Thus, the material is not covered under the Protective Order because it constitutes 'information known to the Receiving Party prior to the disclosure.'").

More fundamentally, Dasagroup's bases for marking documents AEO, instead of "Confidential," remains unclear. Dasagroup contends that customer names and invoices with "data concerning the sizes, quantities and prices charged for produce" (even if years old) are "proprietary business information" such that *all* invoices are justifiably marked AEO[3] and even the slightest reference to a customer in a lengthy email chain justifies an AEO designation.[4] But even accepting that for the sake of argument, it is remains unclear why a "Confidential" designation—which limits use of the document to this litigation—would be insufficient when there is no dispute that neither Silo or Jefferies are competitors of Dasagroup. In short, Dasagroup has failed to explain how any risk of serious harm could not "be avoided by less restrictive means." *See* PO ¶ 2.8.

The parties are at an impasse on the fundamental issue of what justifies an AEO designation and individualized challenges are no longer realistic given Dasagroup's vast over-designations and the quickly-approaching depositions the designations could disrupt. As such, Jefferies respectfully requests that this Court (i) schedule a hearing to discuss this dispute, and/or (ii) order the parties to provide additional briefing on this issue.

**Dasagroup's Position**

Jefferies and Silo's letter brief is premature, unnecessary and, at times, gratuitous. It also seems curiously timed to substantially interfere with Dasagroup's ability (i) to file forthcoming motions to amend its cross-complaint and to extend the time for discovery and other deadlines; (ii) to produce certain documents in specified formats; (iii) to further review and produce voluminous materials being produced on a rolling basis; and (iv) to meet and confer about Jefferies and Silo's parsimonious responses to substantial written discovery, which were served two days ago.[5] Regardless, Dasagroup responds as follows:

---

[3] Even the invoices underlying the receivables that Dasagroup sold to Silo (and that a Jefferies subsidiary now owns)—invoices at the very heart of this dispute—are marked AEO.

[4] Attempting to narrow the dispute, the Buyers proposed that the parties could agree that instead of marking such documents AEO, Dasagroup could redact the customer names (which the Buyers have little interest in). Dasagroup dismissively rejected the proposed compromise.

[5] There is an irony in Jefferies and Silo's demands to nitpick over Dasagroup's confidentiality designations when they have yet to produce *a single document* in the litigation or even disclose the existence of key recorded statements of the parties with their initial disclosures. In written discovery responses just received this week, Jefferies and Silo refused to respond to almost half of Dasagroup's discovery served, including key RFAs intended to establish the confidentiality of materials exchanged between Dasagroup and Silo (and, later, with Jefferies), in addition to RFAs concerning the existence of a special/confidential relationship between the parties as borrower

### A.   This Dispute Is Premature and Not Ripe.

Dasagroup's position is that Jefferies and Silo's unilateral, "gotcha" challenge to Dasagroup's confidentiality designations for just 33 specific documents[6] is premature, especially before the parties had determined if they could "resolve a challenge without court intervention" as to the specific materials identified in Jefferies and Silo's initial correspondence. See Protective Order (Dkt. 84) § 6.3 (allowing judicial intervention only when "the Parties cannot resolve a challenge without court intervention"); § 6.2 (indicating that judicial intervention, the "next stage of the challenge process" is available "only if [the Challenging Party] has engaged in this meet and confer process first").

Dasagroup's position is that, to avoid unripe disputes and seriatim motions filed with the Court on challenges to documents being produced on a rolling basis, Section 6.3 should be read in harmony with Sections 6.1 and 6.2 of the Protective Order so that time begins to run on a motion to retain confidentiality under Section 6.3 when the parties finally determine if a "challenge" remains after a meaningful attempt to meet and confer and after a party's attempt cure any issues.  Here, the parties finally exhausted their meet and confer about the 33 documents no earlier than May 18, 2024, which is when they held a final meet and confer call on the challenges to determine if they could reach agreement on all issues and when Dasagroup re-produced and re-designated 11 of the challenged materials on May 21, 2025.[7]  Jefferies did not indicate whether this was sufficient to cure all of their concerns on initial challenge until just two days ago, Tuesday May 27, 2025.  *See Walkme Ltd. v. Whatfix, Inc.*, No. 23-cv-03991-JSW (TSH), 2024 U.S. Dist. LEXIS 139587, at *7-8 (N.D. Cal. Aug. 6, 2024) ("When your opponent is obviously trying to compromise to resolve a dispute, if you don't express an opinion on whether the effort was good enough, you didn't meet and confer about it.").

Here, after receiving notice of the challenge, Dasagroup appropriately responded to Jefferies's letter and even provided an accounting of each Bates number Jefferies had referenced.  Dasagroup's response indicated that it would be de-designating certain documents from an "AEO" designation to "Confidential" and also explained why certain other "Confidential" and "AEO" designations were justified.  Dasagroup also explained to Jefferies/Silo that nothing in the Protective Order suggests that the designation of a document as confidential prevents the producing party from also redacting limited information like an account number that is worthy of special protection as AEO material and/or as simply beyond the scope of discovery.  *See, e.g., Sanchez v. Master Prot., LP*, No. CV 20-08472 VAP (RAOx), 2021 U.S. Dist. LEXIS 245766, at *11 (C.D. Cal. Oct. 7, 2021) (ordering that certain documents to be produced "will be marked 'Confidential,' in accordance with the parties' stipulated protective order . . . and will be redacted by Defendants to remove . . . social security number, bank account number, and other sensitive personal information.").

---

(Dasagroup), lender (Silo), and outsider/later-purported assignee (Jefferies).

[6] The parties still have some misalignment about what remains at issue.  Dasagroup believes that time has not run on any of the 33 documents, but Jefferies appears to believe that the time has run on a lesser number, which explains why it references 24 unspecified documents in its letter

[7] That opposing counsel strategically declares an "impasse" in email before an attempt to cure is complete should not be the touchstone of whether there is truly an impasse under Section 6.2 if it is to be read in harmony with Section 6.3.  A rule otherwise invites a staggered flood of motions.

Despite that considerable effort, Jefferies hastily expressed its disagreement with all of it and abruptly declared "impasse," even though Dasagroup continued to cure any deficiencies identified in the parties' prior correspondence to see if it resolved concerns. Meanwhile, Jefferies remained mum, apparently waiting for time to run on what it believed to be the deadline for Dasagroup to file a motion to preserve the confidentiality of the 33 documents that Jefferies had identified in its letter. Rather than provide a meaningful response to Dasagroup's position letter or await the revised production of materials that were to be subject to re-designation, Jefferies lied in wait, stopwatch in hand. The Protective Order's 21-day deadline for filing a motion to preserve a confidentiality designation applies only "[i]f the Parties cannot resolve a challenge without court intervention," Protective Order at § 6.3, and time remains for Dasagroup to bring any motion it intends to bring.

### B. Jefferies/Silo Cannot Seek an Advisory Opinion To Circumvent the Protective Order.

While most of Jefferies/Silo's challenges in its April 8 letter were particularized and cited the 33 documents by Bates number, the other broad, sweeping categories of documents referenced in Jefferies and Silo's letter to the Court — e.g.,"documents when a customer's name is merely mentioned," "emails exchanged between the parties prior to litigation," "documents exchanged between Dasagroup, Jefferies, and Silo" — are overbroad and are not sufficiently particularized across the whole universe of materials being produced to raise a confidentiality challenge under section 6 of the Protective Order. They are also taken out of context and presented in a misleading manner. London Fruit, a defaulted party, was also named as a defendant in this lawsuit, but is omitted from the movants' analysis. More importantly, if documents and correspondence were exchanged between the parties in anticipation of, or in the course of, a special relationship or confidential relationship existing between, Dasagroup, on one hand as borrower, and Silo, on the other as lender, then Dasagroup still retains the right to designate any such materials as appropriately confidential as against the outside world and to prohibit their improper use outside of the litigation. The same is true with respect to any silent lender like Jefferies, whose presence and involvement in the lending arrangement was not disclosed to Dasagroup until after debt collection efforts began. In any event, such an analysis is best left for another time when a ripe dispute arises, and not now, in what appears to be the challenging parties' request for a preemptive advisory opinion.

At this juncture, it is not reasonable or appropriate for Dasagroup to bring an unripe motion to maintain the confidentiality of a complete class of materials it has yet to designate and fully produce (especially when its deadline for completing its document production is June 15). It is also not procedurally appropriate for Jefferies and Silo to jump the gun and try to obtain a preemptive declaration of waiver over broad categories of documents. That is not procedurally correct, and it is not the specificity that the Protective Order requires.

Finally, if Jefferies and Silo intend to make a motion to amend the Protective Order, they may do so, but they cannot backdoor such an amendment by raising a procedurally-defective request that the Court make a preemptive declaration of waiver for an entire class of materials. They also should not be permitted to raise new matters and new documents that were never raised before in a specific challenge like DASAGROUP005253-79, which was only produced on May 10, 2025 and is not at issue.

We appreciate the Court's consideration of this matter.

Respectfully submitted,

| | |
|---|---|
| */s/ Rebecca G. Durham*_____ | */s/ Mario A. Moya* |
| By: Rebecca G. Durham | Mario A. Moya |

_____
By: Stosh M. Silivos

HOLLAND & KNIGHT LLP
Michael T. Jones (SBN 290660)
Rebecca G. Durham (SBN 319403)
560 Mission Street, Suite 1900
San Francisco, CA 94105
Telephone: (415) 743-6900
m.jones@hklaw.com
rebecca.durham@hklaw.com

Stosh M. Silivos (pro hac vice admission)
Martin L. Seidel (pro hac vice admission)
787 Seventh Avenue, 31st Floor
New York, NY 10019
Telephone: (212) 513-3200

Mario A. Moya (State Bar No. 262059)
Rebecca M. Hoberg (State Bar No. 224086)
MOYA LAW FIRM
1300 Clay Street, Suite 600
Oakland, California 94612
Tel:  510.926.6521 | Fax: 510.340.9055
mmoya@moyalawfirm.com
rhoberg@moyalawfirm.com

*Attorneys for Jefferies Funding LLC
and Silo Technologies, Inc.*

## FILER'S ATTESTATION

Pursuant to Civil L.R. 5-1(i)(3), regarding signatures, I, Rebecca G. Durham , attest that all other signatories to this document have concurred in the filing of this document and have authorized their signature(s) above.

/s/ Rebecca G. Durham_____

By: Rebecca G. Durham