MARIO A. MOYA (State Bar No. 262059)
REBECCA M. HOBERG (State Bar No. 224086)
MOYA LAW FIRM
1300 Clay Street, Suite 600
Oakland, California 94612
Tel: 510.926.6521
Fax: 510.340.9055
Email: mmoya@moyalawfirm.com
       rhoberg@moyalawfirm.com

Attorneys for Defendant/Counterclaimant
DASAGROUP HOLDINGS CORP.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFERIES FUNDING, LLC,<br><br>        Plaintiff,<br><br>v.<br><br>DASAGROUP HOLDINGS CORP. (d/b/a KICKHASS AVOCADOS) and LONDON FRUIT, INC.,<br><br>        Defendants. | Case No. 3:24-cv-05639-TLT<br><br>**CASE MANAGEMENT STATEMENT OF DEFENDANT / COUNTER-CLAIMANT DASAGROUP HOLDINGS CORP.** |
| DASAGROUP HOLDINGS CORP. (d/b/a KICKHASS AVOCADOS),<br><br>    Counter- and Cross-Claimant/<br>      & Third-Party Plaintiff,<br><br>v.<br><br>JEFFERIES FUNDING, LLC,<br><br>        Counter-Defendant,<br><br>LONDON FRUIT, INC., and<br><br>        Cross-Defendant,<br><br>SILO TECHNOLOGIES, INC.,<br><br>        Third-Party Defendant. | Date: Aug. 21, 2025 (CMC)<br>Time: 2:00 p.m.<br>Court: Courtroom C – 15th Floor<br>Judge: Hon. Trina L. Thompson |

Due to Plaintiff Jefferies and Third-Party Silo's abrupt filing of what was essentially a separate CMC statement this afternoon — just hours after their production of their *first* privilege logs in this case and their production of an additional 1.65 GB of new documents produced by Jefferies in a third production (which were the subject of Dasagroup's further ongoing revisions to its separate statement) — Defendant/Crossclaimant Dasagroup Holdings Corp. hereby files this separate CMC statement in this unusually complex case involving claims, counter claims, cross-claims, and third-party claims in interpleader.[1]

**1.  Jurisdiction & Service**

Dasagroup's Statement:

Jefferies filed a diversity case, and subject matter jurisdiction on Jefferies's lawsuit is proper under 28 U.S.C. §§ 1132 & 1367.  It is unclear if Jefferies has personal jurisdiction over defaulted defendant London Fruit, Inc., but that is not Dasagroup's issue.  Jefferies has yet to serve Dasagroup's CEO, who has been recently named as a new defendant in its most-recent amended complaint.

As for Dasagroup's counterclaim against Jefferies, third party claim against Silo, and cross-claim against London Fruit, subject matter jurisdiction is also proper under diversity jurisdiction.  All parties have been served.  But based on new evidence produced on June 24, 2025, Dasagroup has been preparing a further amended complaint and will be filing a motion seeking leave to file that complaint before the CMC.

**2.  Facts**

Dasagroup's Statement:

Dasagroup disputes the revisionist spin offered by Jefferies and Silo.  Facts disclosed in Jefferies' first production of documents — not disclosed to Dasagroup until June 27, 2025 — reveal the underlying truth about the Silo Instant Pay Program and the havoc it has caused to the perishable produce industry.  At trial, Dasagroup intends to show that this lawsuit is about a purchase-order financing scheme orchestrated by Jefferies and Silo to securitize payment obligations that were owed to

---

[1] Counsel for Jefferies and Silo also knew that both of the undersigned counsel and their household were also recovering from COVID last week, in addition to negotiating the terms of a letter brief to Magistrate Judge Kang that was filed yesterday.

Dasagroup so that they could be collateralized and sold to investors on Jefferies's side, earning fees and other income to Jefferies. Dasagroup's identity was immaterial and was not the focus of Silo's evaluation for participation in the program; rather, all that mattered to Silo and its silent lender, Jefferies, was the credit risk of Dasagroup's counterparty, London Fruit, which could be bundled into a structured credit product. When London Fruit stopped paying Dasagroup, Jefferies and Silo refused to fund Dasagroup any further, even though it allowed other participants in the Silo Instant Pay program to keep receiving funding (even one notable participant who, Silo and Jefferies claimed, owed over $9 million under the program, which was three times the amount that they then-claimed was owed by Dasagroup. Unlike Dasagroup, this participant was allowed to keep factoring receivables to pay-down its invoices.)

As the silent lender for the entire lending program, Jefferies stood in dual capacity as an originator of funds to Silo and a servicer of those credit facilities, earning interest and fees on both ends. And Jefferies did so with other backup servicers in tow, including one pernicious servicer, Carmel Solutions (claim and amendment forthcoming)), who encouraged Jefferies and Silo to put improper pressure on Dasagroup by contacting its other clients and making false assertions that Silo had a secured interest in "all" of the company's receivables. Holland & Knight also earned fees on the collateralized investment facilities, as did JFUN AR I LLC (the apparent investment vehicle for third-party investors), which Dasagroup is intending to add as one of several new parties — a necessary party — in a forthcoming proposed amendment to its counterclaim. Not only did JFUN AR I file an improper amendment to an overbroad UCC-1 financing statement in Washington state — so to perfect an improper security interest, as a purported *secured lender*, in "all" of Dasagroup's accounts receivable on Oct. 24, 2024 (see Washington UCC File No. 2024-298-6680-3) — it also has been acting as an enforcer for Jefferies and Silo with respect to the Instant Pay Program.

Dasagroup does not know why Silo and Jefferies have not joined JFUN AR I as a necessary party to this lawsuit, especially when, after this case was filed, JFUN AR I filed the improper UCC-1 financing statement referenced above, which claimed interests that are flatly contrary to Silo and Jefferies's own documents and party admissions. In addition to several lawsuits filed by Silo, there are no less than eight current lawsuits currently underway, nationwide, in which JFUN AR I LLC is

pursuing other hapless victims of the Silo Instant Pay unlicensed lending scheme, the only object of which was for Jefferies to accumulate purchase orders it could collateralize and sell as investments to others. *See, e.g., JFUN AR I LLC v. LA Produce Distributors LLC*, No. 4:25-cv-04451 (N.D. Cal.) (filed May 27, 2025); *JFUN AR I LLC et al. v. Farm House Fruits and Vegetables, LLC* et al. No. 236-367656-25 (Tex. 236th Dist. Ct. - Tarrant Co.) (filed Aug 08, 2025); *JFUN AR I LLC v. Iguana Coo Corp*, No. 2024-020827-CA-01 (Fla. Cir. Ct.) (filed Oct 30, 2024); *JFUN AR I LLC v. Global Fresh Produce et al.*, No. 24-BC04A-0004 (Tex. Bus. Ct. - 4th Div. San Antonio) (filed Jan. 16, 2025); *Silo Technologies Inc. et al v. Price International Trading LLC et al.*, No. 2024-023273-CA-01 (Fla. Cir. Ct.) (filed Dec 05, 2024); *JFUN AR I LLC v. Ecua-Mall Trade, LLC et al.*, No. 2025-007478-CA-01 (Fla. Cir. Ct.) (filed Apr 23, 2025); *In re Yasmin-Katerine Molina-Loor*, No. 0:25-bk-10080 (Bankr. S.D. Fla. Jan 06, 2025) (creditor's claim); *In re Del Valle Import LLC*, No. 0:25-bk-10078 (Bankr. S.D. Fla. Jan 06, 2025) (creditor's claim). Even worse, information Dasagroup has obtained during discovery indicates that when those credit facilities appeared to face difficulties, delayed payments by participants, or other delayed collections, Jefferies and Silo orchestrated a scheme to "recycle" receivables by demanding that participants like Dasagroup submit *even more invoices* for factoring in order to "pay-down" the alleged debt owed, which had the practical effect of only worsening Dasagroup's phantom indebtedness and providing it no further working capital for those receivables. And Jefferies and Silo urged this because doing so would allow their credit facilities to appear more solvent than what they really were. (But, to whom they were reporting this cooked data has yet to be disclosed in discovery, but certainly should be taken into account for Dasagroup's counterclaims, affirmative defenses, and proof at trial.).

At trial, Dasagroup intends to show that both Silo and Jefferies were well aware that Dasagroup did not "factor" all of its purchase orders or accounts receivables through the Instant Pay Program; they knew that they were financing Dasagroup's future harvests, purchases and deliveries of produce to London Fruit (i.e., offering loans of working capital to finance future deliveries as opposed to purchases of receivables already made); and it will also show that the amounts charged to Dasagroup under the lending program were usurious, excessive, and improper. Dasagroup intends to show that, indeed, all

avocados ordered by London Fruit and "factored" (for lack of a better term) under the Silo Instant Pay program were delivered.

### 3. Legal Issues

Dasagroup's Statement:

While Jefferies and Silo wish to paint this case as a simple case of breach of contract and theft/conversion, the reality is much more nuanced. The key issues in dispute include:

A. Whether the Silo Instant Pay Agreement (a/k/a Supplier Receivables Sales agreement ("SRA")) contemplates a true "purchase of receivables" under California law as Silo claims, or is it effectively a "loan" to finance Dasagroup's sales, sourcing, and operations — i.e., a loan of working capital to fund future purchase orders as opposed to a true purchase of a receivable — because, among other things, it fails to shift credit risk to Silo because the Supplier/"seller" of the receivable retains the obligation to pay the receivable in full if the customer fails to do so.

B. Whether the Silo Instant Pay Agreement (a/k/a Supplier Receivables Sales agreement ("SRA")) is invalid or unenforceable under PACA as an attempt to encumber assets of a statutory trust.

C. Whether Plaintiff Jefferies knew that its secured credit facility (which is believed to be $100 million based on other press releases not mentioning the Instant Pay Program) was to be used by Silo to extend short-term loans to participants in the perishable produce industry like Dasagroup.

D. How the phrase "account receivable" under the SRA is to be interpreted under California law in light of existing parol evidence and the parties' legitimate expectations and course of dealing.

E. Whether Silo's status as an unlicensed commercial lender under California law rendered the Instant Pay Program subject to the state constitutional prohibition on usury and also whether the transaction fees, late fees, and other assessments to be charged under the terms of the SRA are invalid penalties or otherwise unenforceable under applicable law, including Civil Code § 1671(b).

F. Whether Jefferies is precluded from attempting to enforce the terms of the SRA based upon an invalid lien or assignment.

G.  Whether Dasagroup breached the SRA when, if as alleged by Silo, it failed to disburse funds paid by London Fruit to Dasagroup on its receivables; or, alternatively, whether Silo knew of this practice and was in agreement with those funds being utilized to continue to grow Dasagroup's business.

H.  Whether Dasagroup has the ability to rescind its consent to the terms of the Instant Pay Program based on material misrepresentations and omissions made to it about the terms and conditions of the program (including any negligent misrepresentations and/or omissions), in addition to false promises of how the funds for the program could be used and how it could rely on the program as a reliable source of funding.

I.  Whether Dasagroup has absolute defenses and affirmative defenses to Jefferies and Silo's claims of fraud, including, but not limited to, defenses on elements of falsity, materiality, justifiable reliance, and intention to deceive, in addition to affirmative defenses of consent, acquiesce, fraud, entrapment, *in pari delicto*, illegality, failure to mitigate, and usury.

J.  Whether Dasagroup was coerced into signing the Forbearance Agreement under severe economic duress and concerted acts of civil extortion.

K.  Whether, as shown by documentary evidence, key executives at Silo and Jefferies — including Silo's CEO (Ashton Braun) and CFO/VP of Finance (Reid Bartlett) and Jefferies's Head of Securitized Markets Group (Sasan Soleimani) and the Managing Director of its Securitized Market Group (Joseph McMahon) — knew via contemporaneous reporting and other financial analyses (i) that the lending program charged usurious rates of interest on factored receivables (i.e., effective interest rates well in excess of 10% per annum (or 0.83% per month) and (ii) that the Instant Pay Program was structured in a manner that would lead to excessive charges, late fees, and effective interest rates that would earn Silo more than double the constitutional maximum for a usurious transaction under California law.

L.  Whether Dasagroup was charged and paid excessive and usurious fees under the Instant Pay Agreement, the calculation of those amounts, and which amounts are subject to trebling in an action to recover usurious amounts paid.

M.  Whether Dasagroup has an absolute defense to conversion because Silo accommodated Dasagroup's early decision that it did not want to arrange for London Fruit to make direct payment to Silo for fear of commingling funds on factored vs. non-factored receivables and for fear of not receiving payment on non-factored receivables.

N.  Whether Silo informed Jefferies of its early accommodation to Dasagroup to allow the company to pay Silo directly as opposed to demanding direct payments from London Fruit.

O.  Whether Silo committed a breach of confidence by disclosing to Jefferies and other third parties confidential business information about Dasagroup that Dasagroup shared with it under an expectation of confidentiality, which information was then used against Dasagroup's interests.

P.  Whether Jefferies and Silo orchestrated a scheme to "recycle" receivables and make their credit facilities to appear more solvent than what they really were by demanding that participants like Dasagroup submit even more invoices for factoring in order to "pay-down" alleged debts owed, which had the practical effect of only worsening Dasagroup and other participants' phantom indebtedness and providing it no further working capital for those receivables.

Q.  Whether tortious acts by Jefferies and Silo were not privileged and created independent liability for acts of tortious interference that destroyed Dasagroup's business.

R.  How Dasagroup's re-payment of millions of dollars over the course of the program should be applied with respect to its claim for rescission and any available offsetting liabilities of Jefferies and Silo to Dasagroup for the destruction of its business.

S.  The amount of attorneys' fees Dasagroup will be able to recover under Civil Code § 1717 for rescission of the SRA as per *Wong v. Stoler*, 237 Cal.App.4th 1375, 1388 (2015).

**4. Motions**

Dasagroup's Statement:

**A. Pending Motions**

No party has any pending motion before the Court.

**B. Anticipated Future Motions**

*Pleadings*: Dasagroup will have its motion to amend — and its considerably re-pleaded and amplified proposed Fourth Amended Answer and Counterclaim — on file with the Court in advance of the CMC. Dasagroup is evaluating whether it will be filing a motion to dismiss one or more claims asserted in Jefferies' First Amended Complaint.

*Discovery*. Dasagroup anticipates filing various discovery motions, as necessary, in addition to dispositive motions at a later time. Dasagroup continues to review and evaluate the substantial productions by Defendants made within the prior few weeks, including materials produced in Jefferies' first production of documents on June 27, 2025, and additional documents produced on a rolling basis. Just today, Dasagroup received Silo and Jefferies's first privilege logs, in addition to a production of 1.65 GB of data from Jefferies and 86.7 MB of data from Silo. These efforts may yield motion practice, including motions to compel, motions to challenge privilege claims, and the adequacy of responses to written discovery. Dasagroup is not an endlessly-resourced party, but it does intend to defend itself in this action on a fully-developed record as contemplated by the Federal Rules.

## 5. Amendment of Pleadings

Dasagroup's Statement:

See statement above regarding motions. Dasagroup will have its motion to amend — and its considerably re-pleaded, amplified, and revised proposed Fourth Amended answer and cross-complaint — on file with the Court in advance of the CMC.

## 6. Evidence Preservation

Dasagroup's Statement:

Dasagroup concurs with Jefferies's statement.

## 7. Disclosures

Dasagroup's Statement: Dasagroup served its initial disclosures on November 18, 2024. (Incidentally, Jefferies and Silo's amended disclosures were only prompted by Dasagroup's threats to immediately move to compel the production of substantial recorded statements, recorded Zoom conferences, and transcripts involving Dassgroup's CEO, which had not previously been disclosed but were eventually produced.)

**8.    Discovery**

Dasagroup's Statement:

The parties are currently in the midst of written discovery, exchanges of documents, and preparing for depositions. As noted previously, Dasagroup continues to review and evaluate the substantial productions by Defendants made within the prior few weeks, including materials produced in Jefferies' first production of documents on June 27, 2025, and additional documents produced on a rolling basis. Just today, Dasagroup received Silo and Jefferies's first privilege logs, in addition to a production of 1.65 GB of data from Jefferies and 86.7 MB of data from Silo. These efforts may yield motion practice, including motions to compel, motions to challenge privilege claims, and the adequacy of responses to written discovery. Dasagroup is not an endlessly-resourced party, but it does intend to defend itself in this action on a fully-developed record as contemplated by the Federal Rules.

Dasagroup anticipates further disputes with Jefferies about the scope of discovery. Jefferies and Silo have refused to respond to a substantial portion of Dasagroup's discovery while their motions to dismiss were pending. Both Jefferies and Silo appear unwilling to answer the bulk of discovery served by Dasagroup, and Dasagroup anticipates moving to compel if its meet-and-confer efforts are unsuccessful. For example, Jefferies has refused to comply entirely with 18 of 41 RPDs, 5 of 24 interrogatories, and 34 out of 68 RFAs. Similarly, Silo has refused to respond to 33 of 51 RPDs, 8 of 23 interrogatories, and 14 of 56 RFAs. Dasagroup anticipates bringing motions to compel before Magistrate Judge Kang if agreements cannot be reached for further amended responses and productions. Dasagroup intends to ensure that its counterparties comply with their duties to supplement under the Federal Rules, which extends to information not only in the possession of the entities and their employees, but also to their attorneys, who have been intimately involved with Jefferies and Silo's work with this credit program and its related structured credit facility(ies).

As for depositions, a deposition of London Fruit was noticed for later this month. Also, Jefferies has just filed a First Amended Complaint, adding Mr. Ward, Dasagroup's CEO, as an individual defendant, which will undoubtedly impact discovery in this case. They have also indicated that they intend to depose his wife and challenge assertions of marital communications privilege.

The parties continue to meet and confer regarding outstanding discovery issues, with the goal of resolving issues without Court intervention.

**9. Class Action**

Not applicable.

**10. Related Cases**

The Parties are not currently aware of any cases or proceedings that are "related" within the meaning of Civil Local Rule 3-12(a).

**11. Relief**

Dasagroup's Statement:

Dasagroup believes that the total difference between money it received under the program and the more than $5 million it repaid under the program is approximately $2.4 million, but without any offsets for usurious charges or offsetting liabilities by Jefferies and Silo for the destruction of Dasagroup's business. In seeking rescission, Dasagroup will also seek attorneys fees and appropriate offsets for Jefferies and Silo's liabilities.

Dasagroup seeks a determination that the forbearance agreement is invalid, and that any late fees, interest, finance charges, or other penalties relating to the usurious debt at issue are unenforceable; Dasagroup is also entitled to an offset in the amounts owed on the underlying debt. While Dasagroup reserves its right to assert all available damages, it does disclose that — according to Silo's own internal accounting (which was first produced by Silo in discovery on June 26, 2025 and was not previously available to Dasagroup) — Dasagroup made the following payments of usurious interest to Silo under the Instant Pay Program since Aug. 21, 2023, which is one year before Jefferies filed this lawsuit:

- 8/31/23 - Total usurious charges paid: $13,917.88
- 9/8/23 - Total usurious charges paid: $5,297.20
- 9/18/23 - Total usurious charges paid: $16,207.48
- 9/25/23 - Total usurious charges paid: $6,284.08
- 10/3/23 - Total usurious charges paid: $6,240.01
- 10/10/23 - Total usurious charges paid: $7,781.16

- 10/18/23 - Total usurious charges paid: $4,358.34
- 10/31/23 - Total usurious charges paid: $8,029.71
- 11/29/23 - Total usurious charges paid: $32,285.61
- 11/30/23 - Total usurious charges paid: $26,944.55
- 12/7/23 - Total usurious charges paid: $5,634.55
- 12/19/23 - Total usurious charges paid: $5,631.67
- 1/2/24 - Total usurious charges paid: $10,805.69
- 1/19/24 - Total usurious charges paid: $34,994.83
- 2/2/24 - Total usurious charges paid: $24,484.04
- 2/5/24 - Total usurious charges paid: $7,893.73
- 2/15/24 - Total usurious charges paid: $7,699.16
- 2/21/24 - Total usurious charges paid: $13,553.22
- 2/26/24 - Total usurious charges paid: $14,304.59
- 3/6/24 - Total usurious charges paid: $4,419.85
- 3/18/24 - Total usurious charges paid: $6,454.84
- 3/22/24 - Total usurious charges paid: $13,586.17
- 4/30/24 - Total usurious charges paid: $6,512.15
- 5/6/24 - Total usurious charges paid: $4,730.15
- 5/8/24 - Total usurious charges paid: $9,016.11

These payments, which totaled at least $286,261.08, were in excess of the maximum rate of interest allowed by the California Constitution, Article XV, Section 1, and Dasagroup is entitled to recover treble the amount paid pursuant to Section 3(a) of the Statutes of 1919, page lxxxiii, as amended by Section 1 of Chapter 784 of the Statutes of 1970. For these payments, Dasagroup seeks appropriate treble damages in the amount of no less than $858,783.24.

Because Jefferies also attempted to obtain payments of these usurious amounts from Dasagroup through the Forbearance Agreement, Dasagroup is also entitled to receive treble damages on additional usurious amounts paid to Silo and Jefferies on the following additional dates, which Silo and/or Jefferies

used to pay yet-to-be-determined charges, transaction fees, and late fees that it had separately charged to Dasagroup based on the prior underlying debt:

- 05/24/24: $100,000
- 05/29/24: $100,000
- 06/07/24: $100,000
- 06/24/24: $150,000
- 07/03/24: $150,000

Because Dasagroup paid these amounts involuntarily and under threats of improper late fees accruing, these amounts should be restored to Dasagroup and/or added to the balance stated above that is subject to trebling.

In addition to the foregoing, on and after Aug. 21, 2022, but before Aug. 21, 2023, Dasagroup made the following payments of usurious interest to Silo under the Instant Pay Program:

- 10/10/22 - Total usurious charges paid: $968
- 10/21/22 - Total usurious charges paid: $1078.40
- 11/2/22 - Total usurious charges paid: $886.40
- 11/6/22 - Total usurious charges paid: $835.20
- 11/16/22 - Total usurious charges paid: $859.20
- 11/20/22 - Total usurious charges paid: $928
- 11/25/22 - Total usurious charges paid: $916.80
- 12/14/22 - Total usurious charges paid: $830.40
- 12/29/22 - Total usurious charges paid: $1,617.60
- 12/31/22 - Total usurious charges paid: $7,700.80
- 2/27/23 - Total usurious charges paid: $166.40
- 3/3/23 - Total usurious charges paid: $2,513.40
- 3/10/23 - Total usurious charges paid: $2992.00
- 3/27/23 - Total usurious charges paid: $1,536
- 3/28/23 - Total usurious charges paid: $4,034.10

CMC STATEMENT OF DEFENDANT/COUNTERCLAIMANT DASAGROUP HOLDINGS CORP.

12

Jefferies Funding v. Dasagroup Holdings et al.
No. 3:24-cv-05639-TLT

- 4/11/23 - Total usurious charges paid: $4,352.00
- 4/28/23 - Total usurious charges paid: $1,984.00
- 5/5/23 - Total usurious charges paid: $1,932.80
- 6/20/23 - Total usurious charges paid: $13,014.40
- 6/29/23 - Total usurious charges paid: $13,555.36
- 7/7/23 - Total usurious charges paid: $12,550.16
- 7/18/23 - Total usurious charges paid: $31,554,10
- 8/4/23 - Total usurious charges paid: $6,164.40
- 8/16/23 - Total usurious charges paid: $10,640.75

These payments, which totaled no less than $92,056.57, were in excess of the maximum rate of interest allowed by the California Constitution, Article XV, Section 1, and plaintiff is entitled to recover the amount paid under the usury statute and applicable principles of money had and received.

Dasagroup also has an affirmative claim against London Fruit, a defaulted party, for amounts owed by London Fruit to Dasagroup for unpaid invoices that were not the subject of "factoring" through Silo. Dasagroup estimates that the total amount owed to it by London Fruit on unpaid receivables exceeds $660,000. Dasagroup is still evaluating potential other claims against London Fruit and/or its parent company, but is not prepared to disclose these theories at this time because depositions of London Fruit representative(s) are scheduled for later this month.

**12. Settlement & ADR**

Dasagroup's Statement:

Dasagroup conveyed an earnest settlement proposal to Jefferies and Silo during pre-ADR discussions with Magistrate Judge Ryu, but Jefferies and Silo rejected the offer outright with no meaningful concessions or recognition of Dasagroup's current financial position. Jefferies and Silo are under the substantial misimpression that they have no liability exposure in this case. They would rather risk their chances for a pyrrhic victory (with cascading ramifications for their other proceedings and business operations) instead of the assurance of a reasonable settlement in this case. Dasagroup cannot make its counterparties settle this case, but Jefferies and Silo cannot draw blood from a stone either,

especially when they destroyed Dasagroup's business. Dasagroup is open to reasonable settlement discussions, and it looks forward to further discussions with Magistrate Judge Ryu. Dasagroup is confident that Jefferies — with its self-touted experience in creating complex structured credit instruments — can evaluate the present value of any proposed settlement proposals sent to it, in addition to calculating the expected value of a range of potential outcomes at trial.

### 13. Other References

Dasagroup agrees that this case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

### 14. Narrowing of Issues

Dasagroup concurs with Jefferies and Silo's statement.

### 15. Scheduling

Dasagroup's Statement:

Dasagroup respectfully asks that, in light of Jefferies and Silo's delayed, production of documents and its production of its first privilege logs *just today*, the prior joint proposed schedule it proposed in the prior administrative motion be extended by an additional two months, with no effect on the trial date already set by the Court. Dasagroup would propose the following revised schedule:

- Dispositive Motions (filing):  July 15, 2026
- Dispositive Motions (hearing):  Nov. 15, 2026
- Expert Discovery Cut-off:  April 16, 2026
- Expert Reports (Opening):  January 30, 2026
- Expert Reports (Rebuttal):  Feb. 16, 2026
- Fact Discovery Cut-off: January 30, 2026

### 16. Trial

Dasagroup concurs with Jefferies and Silo's statement.

### 17. Disclosure of Non-Parties Interested Entities of Persons

Dasagroup's Statement:  Dasagroup filed its Certification of Interested Entities or Persons as required by L.R. 3-15. ECF No. 17. At the time of filing, Dasagroup was not aware of any interested

entities or persons with a financial interest in the subject matter in controversy other than the named parties and Silo Technologies, Inc. (who had not yet been added to the lawsuit at that time). Dasagroup has since learned that, *after* Jefferies filed this lawsuit against it, an entity named JFUN AR I LLC filed a UCC-1 amended financing statement in Washington State, which claimed a secured interest in all of Dasagroup's accounts receivable. As a result, it appears that another entity may have a financial interest in the litigation that was not previously disclosed by Jefferies.

**18. Professional Conduct**

Counsel for Dasagroup has reviewed the Guidelines for Professional Conduct for the Northern District of California.

**19. Other**

Not applicable.

Dated: Aug. 14, 2025

Respectfully submitted,

MOYA LAW FIRM

*/s/ Mario A. Moya*
_____
Mario A. Moya / Rebecca M. Hoberg

Attorneys for Defendant/Counterclaimant
DASAGROUP HOLDINGS CORP.