HOLLAND & KNIGHT LLP
Michael T. Jones (SBN 290660)
Rebecca G. Durham (SBN 319403)
560 Mission Street, Suite 1900
San Francisco, CA 94105
Telephone: (415) 743-6900
m.jones@hklaw.com
rebecca.durham@hklaw.com

*Attorneys for Plaintiff/Counter Defendant Jefferies Funding LLC and Third-Party Defendant Silo Technologies*

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| JEFFERIES FUNDING LLC,<br><br>Plaintiff,<br><br>v.<br><br>DASAGROUP HOLDINGS CORP. (d/b/a KICKHASS AVOCADOS) and LONDON FRUIT, INC,<br><br>Defendants. | Case No.: 3:24-cv-05639-TLT-PHK<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>CMC Hearing Date: August 21, 2025<br>Time: 2:00 p.m.<br>Court: Courtroom C – 15th Floor<br>Judge: Hon. Trina L. Thompson<br><br>Complaint Filed: August 21, 2024<br><br>FAC Filed: August 6, 2025<br><br>Trial Date: January 4 -7, 2027 |
| DASAGROUP HOLDINGS CORP. (d/b/a KICKHASS AVOCADOS),<br><br>Counter- and Cross-Claimant,<br><br>v.<br><br>JEFFERIES FUNDING LLC,<br><br>Counter-Defendant<br><br>and LONDON FRUIT, INC,<br><br>Cross-Defendant. | |
| DASAGROUP HOLDINGS CORP. (d/b/a KICKHASS AVOCADOS),<br><br>Defendant/Third-Party Plaintiff,<br><br>v.<br><br>SILO TECHNOLOGIES, INC.,<br><br>Third-Party Defendant. | |

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

Jefferies Funding LLC ("Jefferies"), Silo Technologies, Inc. ("Silo"), and Dasagroup Holdings Corp. ("Dasagroup") (collectively the "Parties") jointly submit this Joint Case Management Statement for the above-captioned action (the "Action") in accordance with the Standing Order for All Judges of the Northern District of California (effective January 17, 2023), Civil Local Rule 16-9, and the Court's Order entered on August 15, 2025, ECF No. 126.[1]

**1. Jurisdiction & Service**

Jefferies's Amended Complaint (ECF No. 122): On August 5, 2025, the Court granted Jefferies's Motion for Leave to File an Amended Complaint (ECF No. 107) and instructed Jefferies to file its First Amended Complaint ("FAC") by August 8, 2025. *See* ECF No. 121. Jefferies filed its FAC and proposed summons for defendant on August 6, 2025. The FAC has been served on Dasagroup, and the clerk issued Jefferies's proposed summons (ECF No. 123) for defendant Philip A. Ward (a/k/a Felipe Ward) (hereinafter "Ward") on August 12, 2025. *See* ECF No. 124. Jefferies anticipates that service for Mr. Ward will be complete within the next few days.

Jefferies alleges that the Court has subject matter jurisdiction under 28 U.S.C. § 1332 because diversity of citizenship exists between Jefferies, Dasagroup Holdings Corp. ("Dasagroup"), and London Fruit, Inc. ("London Fruit") and the amount in controversy exceeds $75,000. There are no issues pending regarding personal jurisdiction. Venue in this District is proper under 28 U.S.C. 1391(b)(2) because a substantial part of the events of omissions giving rise to the claims occurred in this District.

Dasagroup's Statement: Jefferies filed a diversity case, and subject matter jurisdiction on Jefferies's lawsuit is proper under 28 U.S.C. §§ 1132 & 1367. It is unclear if Jefferies has personal jurisdiction over defaulted defendant London Fruit, Inc., but that is not Dasagroup's issue. Jefferies has yet to serve Dasagroup's CEO, who has been recently named as a new defendant in its most-recent amended complaint.

[1] The parties recognize that the Standing Order for All Judges of the Northern District of California (Contents of Joint Case Management Statement) provides a presumptive ten page limit for joint case management statements. The parties believe that the number of parties and claims in this case, and the number and complexity of the issues involved make this an unusually complex case under the Standing Order.

As for Dasagroup's counterclaim against Jefferies, third party claim against Silo, and cross-claim against London Fruit, subject matter jurisdiction is also proper under diversity jurisdiction. All parties have been served. But based on new evidence produced on June 24, 2025, Dasagroup has been preparing a further amended complaint and will be filing a motion seeking leave to file that complaint before the CMC

**2. <u>Facts</u>**

<u>Jefferies's & Silo's Statement</u>: Jefferies initiated this Action asserting claims of (1) breach of contract, (2) fraud, and (3) conversion against Dasagroup, as well as a claim for breach of contract against London Fruit. However, Jefferies's diligent discovery efforts recently revealed that Ward—acting both individually and through his alter ego, Dasagroup—knowingly induced Jefferies's predecessor-in-interest, Silo, to purchase millions of dollars' worth of fraudulent receivables. Based on this new information, Jefferies filed a Motion for Leave to Amend its Complaint (ECF No. 107), which the Court granted on August 5, 2025. *See* ECF No. 121. Jefferies filed its FAC on August 6, 2025 (ECF No. 122) and asserts claims of (1) breach of contract, (2) fraud, (3) receipt of stolen property under California Penal Code § 496, and (4) conversion against both Dasagroup and Ward, as well as a claim for breach of contract against London Fruit.

Through its Instant Pay Program, Silo provide factoring services to sellers of produce, like Dasagroup, by purchasing their open receivables (provided for in invoices) and then collecting payment on those receivables. On or about June 5, 2022, Dasagroup joined Silo's Instant Pay Program and agreed to be governed by Silo's Supplier Receivable Sales Agreement ("Sales Agreement"). However, Ward, acting both individually and through Dasagroup, engineered a fraudulent scheme to induce Silo to purchase millions of dollars' worth of receivables that Ward and Dasagroup knew were either entirely fictitious or grossly inflated. To execute his scheme, Ward caused Dasagroup to create and submit false invoices to Silo, including (a) invoices that were entirely fictitious, representing sham sales that never occurred; and (b) invoices that materially overstated the amounts London Fruit actually owed for legitimate transactions. Ward's intent was clear: to extract maximum funds from Silo by misrepresenting the validity and value of the receivables.

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

But the scheme did not stop with the sale of phony and inflated receivables. After Silo had advanced Dasagroup millions of dollars for the right to collect payment on 34 (largely, but not entirely, fraudulent) receivables on which London Fruit was the purported obligor (the "Affected Receivables", which correspond to Dasagroup Invoice Numbers 10751 to 10784), Ward doubled down by brazenly diverting, concealing, and retaining—i.e. stealing—London Fruit's payments on the Affected Receivables. This was not a mistake or misunderstanding; it was a calculated shell game, orchestrated and personally directed by Ward to keep Dasagroup afloat and enrich himself at Plaintiff's expense. When Silo failed to receive payment on the Affected Receivables, it reached out to Ward, Dasagroup, and London Fruit for an explanation. On multiple occasions, Ward personally misled Silo and Jefferies by falsely representing that London Fruit had not made payments on the Affected Receivables. In fact, Ward and Dasagroup received at least $1.7 million in payments on the Affected Receivables from London Fruit between March and May 2024. Ward's misrepresentations were deliberate, designed to conceal his ongoing misappropriation and to pad his pockets with this $1.7 million in addition to the nearly $3 million advance Dasagroup received from Silo.

After Jefferies and Silo became aware of this misappropriation (they were not then aware of the fraudulent invoices), they acted in good faith by negotiating a forbearance agreement with Ward—represented by experienced counsel—that gave Dasagroup the opportunity to remedy its misconduct and pay back the money it owed (at that point, nearly $3.1 million) (the "Forbearance Agreement", collectively with the Sales Agreement the "Agreements"). Ward, however, promptly caused Dasagroup to breach that agreement, further demonstrating his intent to evade, or at least delay, accountability. Left with no other choice, Jefferies initiated this Action.

Dasagroup's Statement: Dasagroup disputes the revisionist spin offered by Jefferies and Silo. Facts disclosed in Jefferies' first production of documents — not disclosed to Dasagroup until June 27, 2025 — reveal the underlying truth about the Silo Instant Pay Program and the havoc it has caused to the perishable produce industry. At trial, Dasagroup intends to show that this lawsuit is about a purchase-order financing scheme orchestrated by Jefferies and Silo to securitize payment obligations that were owed to Dasagroup so that they could be collateralized and sold to investors on Jefferies's

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

side, earning fees and other income to Jefferies. Dasagroup's identity was immaterial and was not the focus of Silo's evaluation for participation in the program; rather, all that mattered to Silo and its silent lender, Jefferies, was the credit risk of Dasagroup's counterparty, London Fruit, which could be bundled into a structured credit product. When London Fruit stopped paying Dasagroup, Jefferies and Silo refused to fund Dasagroup any further, even though it allowed other participants in the Silo Instant Pay program to keep receiving funding (even one notable participant who, Silo and Jefferies claimed, owed over $9 million under the program, which was three times the amount that they then-claimed was owed by Dasagroup. Unlike Dasagroup, this participant was allowed to keep factoring receivables to pay-down its invoices.)

As the silent lender for the entire lending program, Jefferies stood in dual capacity as an originator of funds to Silo and a servicer of those credit facilities, earning interest and fees on both ends. And Jefferies did so with other backup servicers in tow, including one pernicious servicer, Carmel Solutions (claim and amendment forthcoming)), who encouraged Jefferies and Silo to put improper pressure on Dasagroup by contacting its other clients and making false assertions that Silo had a secured interest in "all" of the company's receivables. Holland & Knight also earned fees on the collateralized investment facilities, as did JFUN AR I LLC (the apparent investment vehicle for third-party investors), which Dasagroup is intending to add as one of several new parties — a necessary party — in a forthcoming proposed amendment to its counterclaim. Not only did JFUN AR I file an improper amendment to an overbroad UCC-1 financing statement in Washington state — so to perfect an improper security interest, as a purported *secured lender*, in "all" of Dasagroup's accounts receivable on Oct. 24, 2024 (see Washington UCC File No. 2024-298-6680-3) — it also has been acting as an enforcer for Jefferies and Silo with respect to the Instant Pay Program.

Dasagroup does not know why Silo and Jefferies have not joined JFUN AR I as a necessary party to this lawsuit, especially when, after this case was filed, JFUN AR I filed the improper UCC-1 financing statement referenced above, which claimed interests that are flatly contrary to Silo and Jefferies's own documents and party admissions. In addition to several lawsuits filed by Silo, there are no less than eight current lawsuits currently underway, nationwide, in which JFUN AR I LLC is

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

pursuing other hapless victims of the Silo Instant Pay unlicensed lending scheme, the only object of which was for Jefferies to accumulate purchase orders it could collateralize and sell as investments to others. *See, e.g., JFUN AR I LLC v. LA Produce Distributors LLC*, No. 4:25-cv-04451 (N.D. Cal.) (filed May 27, 2025); *JFUN AR I LLC et al. v. Farm House Fruits and Vegetables, LLC* et al. No. 236-367656-25 (Tex. 236th Dist. Ct. - Tarrant Co.) (filed Aug 08, 2025); *JFUN AR I LLC v. Iguana Coo Corp*, No. 2024-020827-CA-01 (Fla. Cir. Ct.) (filed Oct 30, 2024); *JFUN AR I LLC v. Global Fresh Produce et al.*, No. 24-BC04A-0004 (Tex. Bus. Ct. - 4th Div. San Antonio) (filed Jan. 16, 2025); *Silo Technologies Inc. et al v. Price International Trading LLC et al.*, No. 2024-023273-CA-01 (Fla. Cir. Ct.) (filed Dec 05, 2024); *JFUN AR I LLC v. Ecua-Mall Trade, LLC et al.*, No. 2025-007478-CA-01 (Fla. Cir. Ct.) (filed Apr 23, 2025); *In re Yasmin-Katerine Molina-Loor*, No. 0:25-bk-10080 (Bankr. S.D. Fla. Jan 06, 2025) (creditor's claim); *In re Del Valle Import LLC*, No. 0:25-bk-10078 (Bankr. S.D. Fla. Jan 06, 2025) (creditor's claim). Even worse, information Dasagroup has obtained during discovery indicates that when those credit facilities appeared to face difficulties, delayed payments by participants, or other delayed collections, Jefferies and Silo orchestrated a scheme to "recycle" receivables by demanding that participants like Dasagroup submit *even more invoices* for factoring in order to "pay-down" the alleged debt owed, which had the practical effect of only worsening Dasagroup's phantom indebtedness and providing it no further working capital for those receivables. And Jefferies and Silo urged this because doing so would allow their credit facilities to appear more solvent than what they really were. (But, to whom they were reporting this cooked data has yet to be disclosed in discovery, but certainly should be taken into account for Dasagroup's counterclaims, affirmative defenses, and proof at trial.).

At trial, Dasagroup intends to show that both Silo and Jefferies were well aware that Dasagroup did not "factor" all of its purchase orders or accounts receivables through the Instant Pay Program; they knew that they were financing Dasagroup's future harvests, purchases and deliveries of produce to London Fruit (i.e., offering loans of working capital to finance future deliveries as opposed to purchases of receivables already made); and it will also show that the amounts charged to Dasagroup under the lending program were usurious, excessive, and improper. Dasagroup intends to

show that, indeed, all avocados ordered by London Fruit and "factored" (for lack of a better term) under the Silo Instant Pay program were delivered.

**3. Legal Issues**

Jefferies's and Silo's Statement: The principal legal issues in dispute are (1) whether Ward and Dasagroup are alter egos of one another; (2) whether the Sales Agreement is a valid, binding, and enforceable contract between Silo and Dasagroup; (3) whether Ward and Dasagroup knowingly induced Silo to pay Dasagroup millions of dollars for fraudulent receivables (the "Affected Receivables Purchase Price") through the creation and submission of invoices that were (i) entirely fictitious, and/or (ii) materially overstated the amounts actually owed by London Fruit; (4) whether Dasagroup breached the Sales Agreement by *inter alia* retaining payments that London Fruit made on the Affected Receivables—payments to which Ward and Dasagroup knew they had no legal right, title, or interest ("Wrongful Retention"); (5) whether Ward, acting through Dasagroup, made false statements that London Fruit had not made payments on the Affected Receivables ("False Representations"); (6) whether Ward and Dasagroup's conduct constitutes theft under California law, including theft by false pretenses and theft by misappropriation; (7) whether Ward and Dasagroup knew that the Affected Receivables Purchase Price and London Fruit's payments on the Affected Receivables were obtained in a manner constituting theft; (8) whether the Wrongful Retention constitutes conversion of the payments London Fruit made; (9) whether the Forbearance Agreement is a valid, binding, and enforceable contract between Silo, Dasagroup, and Jefferies, (10) whether Dasagroup breached the Forbearance Agreement by failing to pay the existing payment deficiency (defined in the Forbearance Agreement, *see* Ex. C to ECF No. 122) as agreed.

Jefferies denies all surviving allegations (*see* ECF No. 99) raised in Dasagroup's Third Amended Counterclaim (ECF No. 101) and maintains that all requested relief under this amended pleading should be denied. Jefferies also incorporates all affirmative defenses raised in its answer. *See* ECF No. 111.

Silo denies all surviving allegations (*see* ECF No. 99) raised in Dasagroup's Second Amended Third-Party Complaint (ECF No. 102) and maintains that all requested relief under this amended

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

pleading should be denied. Silo also incorporates all affirmative defenses raised in its answer. *See* ECF No. 112.

Dasagroup's Statement:

While Jefferies and Silo wish to paint this case as a simple case of breach of contract and theft/conversion, the reality is much more nuanced. The key issues in dispute include:

A. Whether the Silo Instant Pay Agreement (a/k/a Supplier Receivables Sales agreement ("SRA")) contemplates a true "purchase of receivables" under California law as Silo claims, or is it effectively a "loan" to finance Dasagroup's sales, sourcing, and operations — i.e., a loan of working capital to fund future purchase orders as opposed to a true purchase of a receivable — because, among other things, it fails to shift credit risk to Silo because the Supplier/"seller" of the receivable retains the obligation to pay the receivable in full if the customer fails to do so.

B. Whether the Silo Instant Pay Agreement (a/k/a Supplier Receivables Sales agreement ("SRA")) is invalid or unenforceable under PACA as an attempt to encumber assets of a statutory trust.

C. Whether Plaintiff Jefferies knew that its secured credit facility (which is believed to be $100 million based on other press releases not mentioning the Instant Pay Program) was to be used by Silo to extend short-term loans to participants in the perishable produce industry like Dasagroup.

D. How the phrase "account receivable" under the SRA is to be interpreted under California law in light of existing parole evidence and the parties' legitimate expectations and course of dealing.

E. Whether Silo's status as an unlicensed commercial lender under California law rendered the Instant Pay Program subject to the state constitutional prohibition on usury and also whether the transaction fees, late fees, and other assessments to be charged under the terms of the SRA are invalid penalties or otherwise unenforceable under applicable law, including Civil Code § 1671(b).

F. Whether Jefferies is precluded from attempting to enforce the terms of the SRA based upon an invalid lien or assignment.

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

G. Whether Dasagroup breached the SRA when, if as alleged by Silo, it failed to disburse funds paid by London Fruit to Dasagroup on its receivables; or, alternatively, whether Silo knew of this practice and was in agreement with those funds being utilized to continue to grow Dasagroup's business.

H. Whether Dasagroup has the ability to rescind its consent to the terms of the Instant Pay Program based on material misrepresentations and omissions made to it about the terms and conditions of the program (including any negligent misrepresentations and/or omissions), in addition to false promises of how the funds for the program could be used and how it could rely on the program as a reliable source of funding.

I. Whether Dasagroup has absolute defenses and affirmative defenses to Jefferies and Silo's claims of fraud, including, but not limited to, defenses on elements of falsity, materiality, justifiable reliance, and intention to deceive, in addition to affirmative defenses of consent, acquiesce, fraud, entrapment, in pari delicto, illegality, failure to mitigate, and usury.

J. Whether Dasagroup was coerced into signing the Forbearance Agreement under severe economic duress and concerted acts of civil extortion.

K. Whether, as shown by documentary evidence, key executives at Silo and Jefferies — including Silo's CEO (Ashton Braun) and CFO/VP of Finance (Reid Bartlett) and Jefferies's Head of Securitized Markets Group (Sasan Soleimani) and the Managing Director of its Securitized Market Group (Joseph McMahon) — knew via contemporaneous reporting and other financial analyses (i) that the lending program charged usurious rates of interest on factored receivables (i.e., effective interest rates well in excess of 10% per annum (or 0.83% per month) and (ii) that the Instant Pay Program was structured in a manner that would lead to excessive charges, late fees, and effective interest rates that would earn Silo more than double the constitutional maximum for a usurious transaction under California law.

L. Whether Dasagroup was charged and paid excessive and usurious fees under the Instant Pay Agreement, the calculation of those amounts, and which amounts are subject to trebling in an action to recover usurious amounts paid.

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

M. Whether Dasagroup has an absolute defense to conversion because Silo accommodated Dasagroup's early decision that it did not want to arrange for London Fruit to make direct payment to Silo for fear of commingling funds on factored vs. non-factored receivables and for fear of not receiving payment on non-factored receivables.

N. Whether Silo informed Jefferies of its early accommodation to Dasagroup to allow the company to pay Silo directly as opposed to demanding direct payments from London Fruit.

O. Whether Silo committed a breach of confidence by disclosing to Jefferies and other third parties confidential business information about Dasagroup that Dasagroup shared with it under an expectation of confidentiality, which information was then used against Dasagroup's interests.

P. Whether Jefferies and Silo orchestrated a scheme to "recycle" receivables and make their credit facilities to appear more solvent than what they really were by demanding that participants like Dasagroup submit even more invoices for factoring in order to "pay-down" alleged debts owed, which had the practical effect of only worsening Dasagroup and other participants' phantom indebtedness and providing it no further working capital for those receivables.

Q. Whether tortious acts by Jefferies and Silo were not privileged and created independent liability for acts of tortious interference that destroyed Dasagroup's business.

R. How Dasagroup's re-payment of millions of dollars over the course of the program should be applied with respect to its claim for rescission and any available offsetting liabilities of Jefferies and Silo to Dasagroup for the destruction of its business.

S. The amount of attorneys' fees Dasagroup will be able to recover under Civil Code § 1717 for rescission of the SRA as per *Wong v. Stoler*, 237 Cal.App.4th 1375, 1388 (2015).

## 4. Motions

### A. Pending Motions

The Parties currently have no motions pending before the Court.

### B. Anticipated Future Motions

Jefferies's Statement: Jefferies anticipates filing various discovery motions, including motions to compel responses to Jefferies's first set of requests for production, interrogatories, and

requests for admission and challenging the sufficiency of Dasagroup's privilege logs and privilege designations. Jefferies also anticipates filing a motion for summary judgment on the claims alleged in Dasagroup's Third Amended Counterclaim (ECF No. 101). Additionally, as Dasagroup has expressed an intention for file amended pleadings with additional claims since at least March of this year, Jefferies anticipates it will oppose any such motion (if filed).

Silo's Statement: Silo anticipates filing a motion for summary judgment on the claims alleged in Dasagroup's Second Amended Third-Party Complaint (ECF No. 102). Additionally, as Dasagroup has expressed an intention for file amended pleadings with additional claims since at least March of this year, Silo anticipates it will oppose any such motion (if filed).

Dasagroup's Statement:

*Pleadings*: Dasagroup will have its motion to amend — and its considerably re-pleaded and amplified proposed Fourth Amended Answer and Counterclaim — on file with the Court in advance of the CMC. Dasagroup is evaluating whether it will be filing a motion to dismiss one or more claims asserted in Jefferies' First Amended Complaint.

*Discovery*. Dasagroup anticipates filing various discovery motions, as necessary, in addition to dispositive motions at a later time. Dasagroup continues to review and evaluate the substantial productions by Defendants made within the prior few weeks, including materials produced in Jefferies' first production of documents on June 27, 2025, and additional documents produced on a rolling basis. Just last Thursday, August 14, Dasagroup received Silo and Jefferies's first privilege logs, in addition to a production of 1.65 GB of data from Jefferies and 86.7 MB of data from Silo. These efforts may yield motion practice, including motions to compel, motions to challenge privilege claims, and the adequacy of responses to written discovery. Dasagroup is not an endlessly-resourced party, but it does intend to defend itself in this action on a fully-developed record as contemplated by the Federal Rules.

**5. Amendment of Pleadings**

Jefferies's Statement: Jefferies's diligent discovery efforts recently revealed that Ward—acting both individually and through his alter ego, Dasagroup—knowingly induced Jefferies's

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

predecessor-in-interest, Silo, to purchase millions of dollars' worth of fraudulent receivables. Based on this new information, Jefferies filed a Motion for Leave to Amend its Complaint (ECF No. 107), which the Court granted on August 5, 2025. *See* ECF No. 121. Jefferies timely filed its FAC on August 6, 2025 (ECF No. 122) and asserts claims of (1) breach of contract, (2) fraud, (3) receipt of stolen property under California Penal Code § 496, and (4) conversion against both Dasagroup and Ward, as well as a claim for breach of contract against London Fruit. Jefferies does not anticipate filing further amended pleadings at this time, but reserves its right to do so as discovery is still open.

Silo's Statement: Silo has filed no pleadings in this litigation.

Dasagroup's Statement: See statement above regarding motions. Dasagroup will have its motion to amend — and its considerably re-pleaded, amplified, and revised proposed Fourth Amended answer and cross-complaint — on file with the Court in advance of the CMC.

**6. Evidence Preservation**

The Parties have agreed to preserve all evidence that may be relevant to this Action, and have revised the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), as well as the Northern District of California's Checklist for ESI Meet and Confer. The Parties have also discussed the preservation of evidence as required under Rule 26(f) of the Federal Rules of Civil Procedure.

**7. Disclosures**

Jefferies's Statement: Jefferies served its initial disclosures on November 18, 2024, as well as amended disclosures on June 6, 2025. Jefferies amended its disclosures to account for the discovery it had received from Dasagroup, which included identifying additional individuals that are likely to have knowledge of discoverable facts that Jefferies may use to support it claims against Dasagroup and London Fruit.

Silo's Statement: Silo served its initial disclosures on January 31, 2025, as well as amended disclosures on June 6, 2025. Silo amended its disclosures to account for discovery produced by Dasagroup, which included identifying additional individuals that are likely to have knowledge of discoverable facts that Silo may use to defend itself against Dasagroup's claims. Silo's amended

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

disclosures also clarified that the communications between Jefferies, Dasagroup, London Fruit, and Silo included "any recordings and/or transcripts of such communications." Dasagroup's counsel first inquired whether such documents existed on May 9, 2025. We informed counsel that we were unaware of such records but would check and get back to Dasagroup on May 12, 2025. On May 12, 2025, we informed Dasagroup that we were continuing our review and committed to producing any such documents by no later than June 20, 2025, and well before Silo or Jefferies took the deposition of Dasagroup's CEO. Dasagroup's counsel did not indicate any problem with this timeline, but then on May 25, 2025 Dasagroup threatened to file a motion to compel the documents Silo had already agreed to produce. In an effort to avoid unnecessary motion practice, Silo accelerated its production timeline and produced the recordings and transcripts in question on May 29, 2025. The production included two audio files and one video file that, in total, translated into approximately 24 transcript pages.

Dasagroup's Statement: Dasagroup served its initial disclosures on November 18, 2024. (Incidentally, Jefferies and Silo's amended disclosures were only prompted by Dasagroup's threats to immediately move to compel the production of substantial recorded statements, recorded Zoom conferences, and transcripts involving Dasagroup's CEO, which had not previously been disclosed but were eventually produced.)

**8. Discovery**

Jefferies's Statement: Jefferies served its First Requests for Document Production on Dasagroup on January 9, 2025 (the "January RFPs"). Dasagroup made its first production on March 29, 2025, but it was not until May 10, 2025 that Dasagroup first produced documents relevant to the Affected Receivables at issue in this Action. Dasagroup made its most recent production to the January RFPs on June 23, 2025. Despite multiple requests from Jefferies, at the time of this filing Dasagroup has yet to confirm whether its production to the January RFPs is complete.

Jefferies served its First Set of Interrogatories and Requests for Admission on April 18, 2025 ("April Discovery Requests"). Dasagroup served its objections to the April Discovery Requests on May 27, 2025, but did not provide substantive responses until June 23, 2025. On July 15, 2025,

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

Jefferies sent Dasagroup a letter challenging the sufficiency of certain responses to the April Discovery Requests. After three requests from Jefferies, lead trial counsel for Jefferies and Dasagroup met and conferred on August 1, 2025, and Dasagroup's counsel agreed to provide Jefferies with written confirmation as to whether it would amend its challenged discovery responses. As of August 17, 2025, Jefferies has received no such written confirmation, and Jefferies anticipates the Parties will likely submit a joint discovery dispute letter to Magistrate Judge Kang on any unresolved matters.

Dasagroup did not issue its first set of discovery requests to Jefferies and Silo until mid-April—almost two-weeks after the Parties' then-current deadline to amend. *See* ECF No. 58. Based on the Parties' agreed upon extension of the response deadline for written discovery, Jefferies and Silo served their respective responses to Dasagroup's discovery requests on May 27, 2025. As Jefferies's and Silo noted in their objections, many of Dasagroup's requests are not relevant to any party's claims or defenses actually alleged in their respective pleadings. Jefferies and Silo remain open to meet and confer with Dasagroup regarding their respective responses; however, as of August 17, 2025 Dasagroup has yet to issue a deficiency letter, raise specific concerns regarding Jefferies's and Silo's discovery responses, or request a meet and confer on any such issues.

Additionally Jefferies and Silo began a rolling production of documents to the respective requests for production served by Dasagroup To date, Silo has produced 4,295 pages of documents in a total of five (5) productions, the first of which was made on May 29, 2025 and the most recent made on August 14, 2025. Given the nature of this dispute, many of the documents in the possession of Silo are also in Jefferies's possession; however, to avoid unnecessary duplication, we are producing the documents only under a Silo bates-number with metadata for additional custodians where appropriate. Accordingly, Jefferies first official production of documents did not occur until June 26, 2025. Since then, Jefferies has produced 5,787 pages of documents in a total of three (3) productions—the last of which was made on August 14, 2025.

The Parties continue to meet and confer regarding outstanding discovery disputes and have already attended a discovery hearing with Magistrate Judge Kang on June 10, 2025 to address

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

Dasagroup's over-designation of documents as Attorney's Eyes Only. *See* ECF Nos. 95-98. Jefferies anticipates another hearing shortly before Judge Kang regarding the Parties' joint discovery letter filed on August 13, 2025, which addresses the Parties' disputes surrounding the adequacy of Dasagroup's privilege logs.

Silo's Statement: Silo served its First Set of Interrogatories on Dasagroup on August 1, 2025. Dasagroup's responses are due September 2, 2025. Silo served its Second Set of Interrogatories on August 8, 2025, as well as its First Set of Requests for Production and Requests for Admission. Dasagroup's responses to these discovery requests are due September 8, 2025. *See also* Jefferies's statement above.

Dasagroup's Statement: The parties are currently in the midst of written discovery, exchanges of documents, and preparing for depositions. As noted previously, Dasagroup continues to review and evaluate the substantial productions by Defendants made within the prior few weeks, including materials produced in Jefferies' first production of documents on June 27, 2025, and additional documents produced on a rolling basis. Just last Thursday, August 14, Dasagroup received Silo and Jefferies's first privilege logs, in addition to a production of 1.65 GB of data from Jefferies and 86.7 MB of data from Silo. These efforts may yield motion practice, including motions to compel, motions to challenge privilege claims, and the adequacy of responses to written discovery. Dasagroup is not an endlessly-resourced party, but it does intend to defend itself in this action on a fully-developed record as contemplated by the Federal Rules.

Dasagroup anticipates further disputes with Jefferies about the scope of discovery. Jefferies and Silo have refused to respond to a substantial portion of Dasagroup's discovery while their motions to dismiss were pending. Both Jefferies and Silo appear unwilling to answer the bulk of discovery served by Dasagroup, and Dasagroup anticipates moving to compel if its meet-and-confer efforts are unsuccessful. For example, Jefferies has refused to comply entirely with 18 of 41 RPDs, 5 of 24 interrogatories, and 34 out of 68 RFAs. Similarly, Silo has refused to respond to 33 of 51 RPDs, 8 of 23 interrogatories, and 14 of 56 RFAs. Dasagroup anticipates bringing motions to compel before Magistrate Judge Kang if agreements cannot be reached for further amended responses and

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

productions. Dasagroup intends to ensure that its counterparties comply with their duties to supplement under the Federal Rules, which extends to information not only in the possession of the entities and their employees, but also to their attorneys, who have been intimately involved with Jefferies and Silo's work with this credit program and its related structured credit facility(ies).

As for depositions, a deposition of London Fruit was noticed for later this month. Also, Jefferies has just filed a First Amended Complaint, adding Mr. Ward, Dasagroup's CEO, as an individual defendant, which will undoubtedly impact discovery in this case. They have also indicated that they intend to depose his wife and challenge assertions of marital communications privilege.

The parties continue to meet and confer regarding outstanding discovery issues, with the goal of resolving issues without Court intervention.

**9. Class Action**

Not applicable.

**10. Related Cases**

The Parties are not currently aware of any cases or proceedings that are "related" within the meaning of Civil Local Rule 3-12(a).

**11. Relief**

Jefferies's Statement: A complete computation of all categories of damages (which continue to accrue) is premature at this stage of litigation and Jefferies reserves the right to supplement its damages categories and calculations. At a minimum, as of August 6, 2025, Jefferies is entitled to at least $3,729,257.94 of compensatory damages, which is the amount outstanding on the Affected Receivables including any late fees accrued as of that date. Jefferies is also entitled to recover any additional interest, finance charges, and/or penalties incurred to the fullest extent permitted by law. Jefferies is further entitled to recover costs of collection, including attorneys' fees, court costs, and expenses. Because such fees and expenses are still accruing, a computation is not currently possible. Finally, Jefferies is entitled to punitive damages from Dasagroup, as well as treble damages under California Penal Code § 496(c).

With regards to Dasagroup's claims in its Third Amended Counterclaims, Jefferies maintains that all requested relief should be denied.

Silo's Statement: Silo concurs with Jefferies's statement above, on the relief to which Jefferies is entitled on its claims. Additionally, Silo is entitled to recover its attorneys' fees, court costs, and expenses. With regards to Dasagroup's claims in its Second Amended Third-Party Complaint, Silo maintains that all requested relief should be denied.

Dasagroup's Statement: Dasagroup believes that the total difference between money it received under the program and the more than $5 million it repaid under the program is approximately $2.4 million, but without any offsets for usurious charges or offsetting liabilities by Jefferies and Silo for the destruction of Dasagroup's business. In seeking rescission, Dasagroup will also seek attorney's fees and appropriate offsets for Jefferies and Silo's liabilities.

Dasagroup seeks a determination that the forbearance agreement is invalid, and that any late fees, interest, finance charges, or other penalties relating to the usurious debt at issue are unenforceable; Dasagroup is also entitled to an offset in the amounts owed on the underlying debt. While Dasagroup reserves its right to assert all available damages, it does disclose that — according to Silo's own internal accounting (which was first produced by Silo in discovery on June 26, 2025 and was not previously available to Dasagroup) — Dasagroup made the following payments of usurious interest to Silo under the Instant Pay Program since Aug. 21, 2023, which is one year before Jefferies filed this lawsuit:

- 8/31/23 - Total usurious charges paid: $13,917.88
- 9/8/23 - Total usurious charges paid: $5,297.20
- 9/18/23 - Total usurious charges paid: $16,207.48
- 9/25/23 - Total usurious charges paid: $6,284.08
- 10/3/23 - Total usurious charges paid: $6,240.01
- 10/10/23 - Total usurious charges paid: $7,781.16
- 10/18/23 - Total usurious charges paid: $4,358.34
- 10/31/23 - Total usurious charges paid: $8,029.71

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

- 11/29/23 - Total usurious charges paid: $32,285.61
- 11/30/23 - Total usurious charges paid: $26,944.55
- 12/7/23 - Total usurious charges paid: $5,634.55
- 12/19/23 - Total usurious charges paid: $5,631.67
- 1/2/24 - Total usurious charges paid: $10,805.69
- 1/19/24 - Total usurious charges paid: $34,994.83
- 2/2/24 - Total usurious charges paid: $24,484.04
- 2/5/24 - Total usurious charges paid: $7,893.73
- 2/15/24 - Total usurious charges paid: $7,699.16
- 2/21/24 - Total usurious charges paid: $13,553.22
- 2/26/24 - Total usurious charges paid: $14,304.59
- 3/6/24 - Total usurious charges paid: $4,419.85
- 3/18/24 - Total usurious charges paid: $6,454.84
- 3/22/24 - Total usurious charges paid: $13,586.17
- 4/30/24 - Total usurious charges paid: $6,512.15
- 5/6/24 - Total usurious charges paid: $4,730.15
- 5/8/24 - Total usurious charges paid: $9,016.11

These payments, which totaled at least $286,261.08, were in excess of the maximum rate of interest allowed by the California Constitution, Article XV, Section 1, and Dasagroup is entitled to recover treble the amount paid pursuant to Section 3(a) of the Statutes of 1919, page lxxxiii, as amended by Section 1 of Chapter 784 of the Statutes of 1970. For these payments, Dasagroup seeks appropriate treble damages in the amount of no less than $858,783.24.

Because Jefferies also attempted to obtain payments of these usurious amounts from Dasagroup through the Forbearance Agreement, Dasagroup is also entitled to receive treble damages on additional usurious amounts paid to Silo and Jefferies on the following additional dates, which Silo and/or Jefferies used to pay yet-to-be-determined charges, transaction fees, and late fees that it had separately charged to Dasagroup based on the prior underlying debt:

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

- 05/24/24: $100,000
- 05/29/24: $100,000
- 06/07/24: $100,000
- 06/24/24: $150,000
- 07/03/24: $150,000

Because Dasagroup paid these amounts involuntarily and under threats of improper late fees accruing, these amounts should be restored to Dasagroup and/or added to the balance stated above that is subject to trebling.

In addition to the foregoing, on and after Aug. 21, 2022, but before Aug. 21, 2023, Dasagroup made the following payments of usurious interest to Silo under the Instant Pay Program:

- 10/10/22 - Total usurious charges paid: $968
- 10/21/22 - Total usurious charges paid: $1078.40
- 11/2/22 - Total usurious charges paid: $886.40
- 11/6/22 - Total usurious charges paid: $835.20
- 11/16/22 - Total usurious charges paid: $859.20
- 11/20/22 - Total usurious charges paid: $928
- 11/25/22 - Total usurious charges paid: $916.80
- 12/14/22 - Total usurious charges paid: $830.40
- 12/29/22 - Total usurious charges paid: $1,617.60
- 12/31/22 - Total usurious charges paid: $7,700.80
- 2/27/23 - Total usurious charges paid: $166.40
- 3/3/23 - Total usurious charges paid: $2,513.40
- 3/10/23 - Total usurious charges paid: $2992.00
- 3/27/23 - Total usurious charges paid: $1,536
- 3/28/23 - Total usurious charges paid: $4,034.10
- 4/11/23 - Total usurious charges paid: $4,352.00
- 4/28/23 - Total usurious charges paid: $1,984.00

- 5/5/23 - Total usurious charges paid: $1,932.80
- 6/20/23 - Total usurious charges paid: $13,014.40
- 6/29/23 - Total usurious charges paid: $13,555.36
- 7/7/23 - Total usurious charges paid: $12,550.16
- 7/18/23 - Total usurious charges paid: $31,554,10
- 8/4/23 - Total usurious charges paid: $6,164.40
- 8/16/23 - Total usurious charges paid: $10,640.75

These payments, which totaled no less than $92,056.57, were in excess of the maximum rate of interest allowed by the California Constitution, Article XV, Section 1, and plaintiff is entitled to recover the amount paid under the usury statute and applicable principles of money had and received.

Dasagroup also has an affirmative claim against London Fruit, a defaulted party, for amounts owed by London Fruit to Dasagroup for unpaid invoices that were not the subject of "factoring" through Silo. Dasagroup estimates that the total amount owed to it by London Fruit on unpaid receivables exceeds $660,000. Dasagroup is still evaluating potential other claims against London Fruit and/or its parent company, but is not prepared to disclose these theories at this time because depositions of London Fruit representative(s) are scheduled for later this month.

**12. Settlement & ADR**

Jefferies's and Silo's Statement: On January 1, 2025, Chief Magistrate Judge Ryu set an in-person settlement conference for May 9, 2025. *See* ECF No. 49. Jefferies and Silo timely submitted their required settlement offer and supporting brief. However, due to the "late submission of both of Dasagroup's mandatory settlement papers" (*see* Judge Ryu's email from May 2, 2025) as well as the wide gap between the Parties' stated settlement postures, Judge Ryu vacated this conference and converted it into a Further Settlement Planning Call via Zoom. *See* ECF Nos. 90-91. After the call, Judge Ryu ordered the Parties to exchange information discussed during the call and send a joint email by June 30, 2025. *See* ECF 93. The Parties provided the joint email to Judge Ryu on June 30, 2025, and a Further Settlement Planning Call has been set for September 12, 2025 via Zoom. *See* ECF No. 104. In the meantime, Jefferies and Silo remain open to settlement, have identified

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

documents that would facilitate settlement, and continue to engage in Federal Rule of Evidence ("FRE") 408 communications. In fact, on August 1, 2025 Dasagroup's counsel indicated he would provide an official settlement offer based on the Parties' FRE 408 communications; however, as of August 17, 2025 neither Dasagroup nor Jefferies have received such an offer.

Dasagroup's Statement: Dasagroup conveyed an earnest settlement proposal to Jefferies and Silo during pre-ADR discussions with Magistrate Judge Ryu, but Jefferies and Silo rejected the offer outright with no meaningful concessions or recognition of Dasagroup's current financial position. Jefferies and Silo are under the substantial misimpression that they have no liability exposure in this case. They would rather risk their chances for a pyrrhic victory (with cascading ramifications for their other proceedings and business operations) instead of the assurance of a reasonable settlement in this case. Dasagroup cannot make its counterparties settle this case, but Jefferies and Silo cannot draw blood from a stone either, especially when they destroyed Dasagroup's business. Dasagroup is open to reasonable settlement discussions, and it looks forward to further discussions with Magistrate Judge Ryu. Dasagroup is confident that Jefferies — with its self-touted experience in creating complex structured credit instruments — can evaluate the present value of any proposed settlement proposals sent to it, in addition to calculating the expected value of a range of potential outcomes at trial.

**13. Other References**

The Parties do not believe that this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**14. Narrowing of Issues**

The Parties will consider issues that can be narrowed by agreement or by motion, as well as potential means to expedite the presentation of evidence at trial.

**15. Scheduling**

The Parties incorporate the Court's Final Case Management and Scheduling Order entered on August 15, 2025. *See* ECF No. 129.

**16. Trial**

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

The Parties demand a trial by jury, and incorporate the final pretrial conference deadlines (objections, motions in limine, and jury instructions submitted by October 30, 2026, conference on December 3, 2026) and trial date (January 4, 2027) provided in the Court's Final Case Management and Scheduling Order entered on August 15, 2025. *See* ECF No. 129.

**17. Disclosure of Non-Parties Interested Entities of Persons**

Jefferies' Statement: Jefferies filed its Certification of Interested Entities or Persons as required by L.R. 3-15. ECF No. 7. As stated in its filing, Jefferies is not aware of any interested entities or persons with a financial interest in the subject matter in controversy other than Jefferies Financial Group Inc. Jefferies's FAC also explains that JFUN's interest in the Affected Receivables was transferred to Jefferies. *See* ECF No. 122 ¶ 30.

Silo Technologies' Statement: Silo Technologies filed its Certification of Interested Entities or Persons as required by L.R. 3-15. ECF No. 52. As stated in its filing Silo Technologies is not aware of any interested entities or persons with a financial interest in the subject matter in controversy other than AgTech Buyer Inc. and Ag Tech Topco, LP.

Dasagroup's Statement: Dasagroup filed its Certification of Interested Entities or Persons as required by L.R. 3-15. ECF No. 17. At the time of filing, Dasagroup was not aware of any interested entities or persons with a financial interest in the subject matter in controversy other than the named parties and Silo Technologies, Inc. (who had not yet been added to the lawsuit at that time). Dasagroup has since learned that, after Jefferies filed this lawsuit against it, an entity named JFUN AR I LLC filed a UCC-1 amended financing statement in Washington State, which claimed a secured interest in all of Dasagroup's accounts receivable. As a result, it appears that another entity may have a financial interest in the litigation that was not previously disclosed by Jefferies.

**18. Professional Conduct**

The attorneys of record for the Parties have reviewed the Guidelines for Professional Conduct for the Norther District of California.

**19. Other**

Not applicable.

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

Dated: August 18, 2025

*Rebecca G. Durham*_____________
By: Rebecca G. Durham

HOLLAND & KNIGHT LLP
Michael T. Jones (SBN 290660)
Rebecca G. Durham (SBN 319403)
560 Mission Street, Suite 1900
San Francisco, CA 94105
Telephone: (415) 743-6900
m.jones@hklaw.com
rebecca.durham@hklaw.com

Stosh M. Silivos (pro hac vice admission)
Martin L. Seidel (pro hac vice admission)
787 Seventh Avenue, 31st Floor
New York, NY 10019
Telephone: (212) 513-3200

*Attorneys for Jefferies Funding LLC and Silo Technologies, Inc.*

Respectfully Submitted,

*/s/ Mario A. Moya*
Mario A. Moya

MOYA LAW FIRM
Mario A. Moya (State Bar No. 262059)
Rebecca M. Hoberg (State Bar No. 224086)
1300 Clay Street, Suite 600
Oakland, California 94612
Tel: 510.926.6521 | Fax: 510.340.9055
mmoya@moyalawfirm.com
rhoberg@moyalawfirm.com

*Attorneys for Dasagroup Holdings Corp*

**FILER'S ATTESTATION**

Pursuant to Civil L.R. 5-1(i)(3), regarding signatures, I, Rebecca G. Durham , attest that all other signatories to this document have concurred in the filing of this document and have authorized their signature(s) above.

/s/ *Rebecca G. Durham*_____________

By: Rebecca G. Durham

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910