HOLLAND & KNIGHT LLP
Michael T. Jones (SBN 290660)
Rebecca G. Durham (SBN 319403)
560 Mission Street, Suite 1900
San Francisco, CA 94105
(415) 743-6900
m.jones@hklaw.com
rebecca.durham@hklaw.com

*Attorneys for Plaintiff/Counter-Defendant Jefferies Funding LLC and Third-Party Defendant Silo Technologies, LLC*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| JEFFERIES FUNDING LLC,<br><br>Plaintiff,<br><br>v.<br><br>DASAGROUP HOLDINGS CORP. (d/b/a KICKHASS AVOCADOS) and LONDON FRUIT, INC,<br><br>Defendants. | Case No.: 3:24-cv-05639-TLT<br><br>**JEFFERIES FUNDING LLC'S OPPOSITION TO DASAGROUP HOLDINGS CORP.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date: December 2, 2025<br>Time: 2:00 pm<br>Courtroom: 9<br>Judge: Hon. Trina L. Thompson |
| DASAGROUP HOLDINGS CORP. (d/b/a KICKHASS AVOCADOS),<br><br>    Counter- and Cross-Claimant,<br>v.<br><br>JEFFERIES FUNDING, LLC,<br><br>    Counter-Defendant,<br><br>and LONDON FRUIT, INC.,<br><br>    Cross-Defendant | |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii
PRELIMINARY STATEMENT ........................................................................................................... 1
FACTUAL & PROCEDURAL BACKGROUND ................................................................................ 2
   A. The Underlying Transactions and the Allegations in the Original Pleadings. ...................... 2
   B. Jefferies's Discovery of Fraudulent and Inflated Invoices, and the Resulting First Amended Complaint. ............................................................................................................. 4
   C. Jefferies's Continuous Interest in the Claims at Issue. ........................................................... 7
LEGAL STANDARD ........................................................................................................................... 8
ARGUMENT ......................................................................................................................................... 8
I. JEFFERIES'S CLAIM UNDER CALIFORNIA PENAL CODE § 496(C) IS TIMELY. ............................................................................................................................ 8
   A. The Core of Jefferies's § 496(c) Claim Accrued Upon Jefferies's Recent Discovery of Dasagroup's Fraudulent Receivables. .......................................................... 9
   B. Jefferies's § 496(c) Claim Relates Back to the Complaint Under Rule 15(c). ................. 11
   C. The Weight of Authority Applies a Three-Year Statute of Limitations to § 496(c) ......... 12
II. DASAGROUP'S STANDING AND MOOTNESS ARGUMENTS ARE PROCEDURALLY BARRED AND FACTUALLY BASELESS. ................................... 13
CONCLUSION .................................................................................................................................... 14

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Agape Fam. Worship Ctr., Inc. v. Gridiron*,
  No. 5:15-CV-1465-ODW-SPX, 2016 WL 3003207, at *5 (C.D. Cal. May 24, 2016)............12

*Aryeh v. Canon Business Solutions, Inc.*,
  55 Cal. 4th 1185 (2013) ................................................................................................9

*ASARCO, LLC v. Union Pac. R. Co.*,
  765 F.3d 999 (9th Cir. 2014) ......................................................................................11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................................................8

*Bell Atlantic Corporation v. Twombly*,
  550 U.S. 544 (2007)...................................................................................................8

*In re Brocade Commc'ns Sys., Inc. Derivative Litig.*,
  615 F. Supp. 2d 1018 (N.D. Cal. 2009) .....................................................................12

*E-Fab, Inc. v. Accts., Inc. Servs.*,
  153 Cal. App. 4th 1308 (2007) ...................................................................................9

*Evans v. ZB, N.A.*,
  No. 2:17-CV-01123 WBS DB, 2019 WL 6918278 (E.D. Cal. Dec. 19, 2019).......................13

*Fox v. Ethicon Endo-Surgery, Inc.*,
  35 Cal. 4th 797 (2005) ................................................................................................9

*GTE Mobilnet of California Ltd. P'ship v. City of Berkeley*,
  No. 20-CV-05460-DMR, 2021 WL 4442650 (N.D. Cal. Sept. 28, 2021).............................11

*John Beaudette, Inc. v. Sentry Ins. A Mut. Co.*,
  94 F. Supp. 2d 77 (D. Mass. 1999) ............................................................................12

*McCraner v. Wells Fargo & Co.*,
  No. 21-CV-1246-LAB-WVG, 2023 WL 2728719, at *3 (S.D. Cal. Mar. 30, 2023) ..............12

*Pareto v. F.D.I.C.*,
  139 F.3d 696 (9th Cir. 1998) .......................................................................................8

*Price v. Oberman, Tivoli & Pickert, Inc.*,
  No. BC616556, 2020 WL 8365570 (Cal. Super. Dec. 22, 2020) .........................................13

*Ross v. Williams*,
  950 F.3d 1160 (9th Cir. 2020) ...................................................................................11

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA  94105
Tel: 415.743.6900
Fax: 415.743.6910

*Scosche Indus., Inc. v. S & T Montgomery Distrib., Inc.*,
   No. 2:22-CV-09030-SVW-MAA, 2024 WL 4003894 (C.D. Cal. June 5, 2024) ..............10, 13

*Sec. Ins. Co. of New Haven, Conn. v. U.S. for Use of Haydis*,
   338 F.2d 444 (9th Cir. 1964) ................................................................................................11

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ..................................................................................................8

*Tu Le v. Prestige Cmty. Credit Union*,
   No. 8:22-CV-00259-JVS, 2023 WL 9689133 (C.D. Cal. Nov. 6, 2023) ................................13

*United States for Use of Wulff v. CMA, Inc.*,
   890 F.2d 1070 (9th Cir. 1989) ..............................................................................................12

*Viale v. Air & Liquid Sys. Corp*,
   No. 19-CV-00038-MMC, 2019 WL 2191809 (N.D. Cal. May 21, 2019) ...............................11

*Weiner v. Superior Court*,
   58 Cal. App. 3d 525 (1976) ..................................................................................................11

**Statutes and Court Rules**

California Penal Code § 496 ........................................................................................... *passim*

Fed. R. Civ. Pro. 12(b)(1) ..............................................................................................................13

Fed. R. Civ. P. 12(b)(6) ............................................................................................................8, 13

Fed. R. Civ. P. 15(c) ........................................................................................................1, 11, 12

Fed. R. Civ. P. 15(d) .....................................................................................................................11

Uniform Commerical Code § 9-607 ........................................................................................4, 7

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

**PRELIMINARY STATEMENT**

Dasagroup's Motion to Dismiss rests on fundamental misstatements of both fact and law and should be denied in its entirety. The motion's central premise—that Jefferies transferred away its interest in this lawsuit—is blatantly false. Jefferies initiated this action a year ago to address Dasagroup's wrongful diversion and theft. In the course of discovery, Jefferies uncovered a multi-layered fraudulent scheme conceived, orchestrated, and executed by Defendant Philip Ward (a/k/a Felipe Ward and Philip Perez)) (hereinafter referred to as "**Ward**"), who dominates and controls Dasagroup. At all times, Jefferies has maintained a justiciable interest in this action, both as a secured party and as a signatory to the Forbearance Agreement. The assignments referenced by Dasagroup did not divest Jefferies of its interests; rather, they transferred <u>additional</u> interests from Silo <u>to</u> Jefferies.

Dasagroup's argument that the claim under California Penal Code § 496(c) is time-barred fails on multiple independent grounds. First, notwithstanding Dasagroup's mischaracterization of the claim, the principal conduct underlying Jefferies's § 496(c) claim—Dasagroup's theft through the submission of inflated and fabricated invoices—was only recently uncovered after diligent post-complaint discovery. Even under the most conservative calculation, Jefferies's § 496(c) claim accrued no earlier than January 2025. Second, because the § 496(c) claim arises out of the precise transactions set forth in the original Complaint (i.e., Dasagroup's sales of the Affected Receivables) and relies on a common core of operative facts, the claim relates back to Jefferies's original Complaint under the "liberally applied" Rule 15(c). Dasagroup's only argument opposing relation back is its erroneous and nonsensical assertion that Jefferies transferred away its interest in this litigation. Finally, while ultimately immaterial, Dasagroup's reliance on a one-year limitations period is misplaced, as a majority of courts addressing the issue have applied a three-year statute of limitations to § 496(c) claims. Even the authority on which Dasagroup relies applied a three-year statute of limitation to § 496(c) claims seeking attorneys' fees and costs.

Dasagroup's strained attempt to attack other claims is improper and should be disregarded. The Court's August 21, 2025 Order (ECF No. 134) expressly limits the scope of Dasagroup's motion to dismiss to the new claims in the First Amended Complaint, and the only new claim asserted against

Dasagroup is under § 496(c). In any event, Dasagroup's arguments as to the other claims are again premised solely on the baseless assertion that Jefferies transferred away its interest in this litigation.

In sum, Dasagroup's motion is the latest in a series of attempts to distract from and avoid redressing its clear misconduct. Rather than addressing the substance of Jefferies's well-founded claims, Dasagroup resorts to mischaracterizations of both the facts and the law. Jefferies's claims are properly before this Court, and the only new claim against Dasagroup is timely and well-pled. The motion should be denied.

## FACTUAL & PROCEDURAL BACKGROUND

### A.   The Underlying Transactions and the Allegations in the Original Pleadings.

This action arises out of the Dasagroup's sale of receivables to Silo. Dasagroup is an avocado distributor that is entirely dominated and controlled by Defendant Ward, its founder, owner, President, Chief Executive, and alter ego. *See* First Amended Complaint (ECF No. 122) ("**FAC**"), ¶ 10. At one time, Silo provided "factoring" services, purchasing agricultural receivables (provided for in invoices) from sellers of produce like Dasagroup and then collecting payment on those invoices. *Id*. ¶¶ 2, 9. Ward enrolled Dasagroup in the Instant Pay Program in June of 2022, via his execution of the Instant Pay Program Order Form and Supplier Receivable Sales Agreement (together, the "**Sales Agreement**"). *Id*. ¶¶ 19-20; *see also id*. Ex. A, B. Under the Sales Agreement, Dasagroup offered for sale, and Silo purchased, certain of Dasagroup's receivables. *Id*. ¶¶ 19-22, 27.

In February and March of 2024, Dasagroup sold Silo 34 receivables—corresponding to Dasagroup Invoice Numbers 10751 to 10784—on which London Fruit was the purported obligor (the "**Affected Receivables**"). *Id*. ¶¶ 27, 31. Ward and Dasagroup represented that the Affected Receivables had a total face value of $3,284,419.00, and they provided invoices appearing to confirm that fact. *Id*. ¶¶ 33-35. In exchange for "all right, title, and interest" in the Affected Receivables (*id*. ¶¶ 22, 24), Silo paid Dasagroup a total upfront payment price of approximately $2.9 million. *Id*. ¶ 53. Jefferies, as a secured creditor of Silo, held a security interest in the Affected Receivables. *Id*. ¶¶ 28-30.[1]

---

[1] As explained below, Jefferies now owns the Affected Receivables outright. *Id*. ¶ 30.

Dasagroup expressly acknowledged that it had "no legal right" to any payments on the Affected Receivables. *Id.* ¶ 22, 24, 56. Yet, rather than directing London Fruit's payments on the purchased receivables to Silo as contractually and legally required, Ward, acting through Dasagroup, brazenly diverted, concealed, and retained (i.e. stole) those payments—effectively treating Silo and Jefferies as a personal ATM. *Id.* ¶¶ 4, 56.

When Silo failed to receive payments on the Affected Receivables, Silo and Jefferies reached out to Ward, Dasagroup, and London Fruit for an explanation. *Id.* ¶ 5. On multiple occasions in April and May 2024, Ward personally misled Silo and Jefferies by falsely representing that London Fruit had not made payments on the Affected Receivables. *Id.* ¶¶ 5, 57-59. Eventually, however, Ward admitted to retaining (an unspecified amount of) London Fruit payments that should have gone to Silo and diverting them to Dasagroup's own business operations. *Id.* ¶ 71.

After Jefferies and Silo learned of this misappropriation, they acted in good faith by proposing a forbearance agreement that would give Dasagroup an opportunity to rectify that misconduct. *Id.* ¶¶ 6, 61. Ward, as CEO of Dasagroup and the individual in control of its operations, personally negotiated the forbearance agreement, with the assistance of experienced counsel. *Id.* ¶ 62. The extensive negotiations resulted in Jefferies, Silo, and Dasagroup entering into a forbearance agreement on June 19, 2024 (the "**Forbearance Agreement**"). *Id.* ¶¶ 6; 61-63; *see also id.* Ex. C.

The Forbearance Agreement, which was executed by Ward as President of Dasagroup, amended the Sales Agreement. *Id.* ¶ 64. In it, Dasagroup acknowledged that as of June 19, 2024, the total outstanding payments on the Affected Receivables were $3,076,444.56 (the "**Existing Payment Deficiency**"). *Id.* ¶ 65. Jefferies and Silo agreed to forbear from exercising their respective rights and remedies against Dasagroup with respect to the Existing Payment Deficiency for a period. *Id.* ¶ 66. In exchange, Dasagroup agreed to pay Jefferies the Existing Payment Deficiency in weekly installments, with the full amount (less specified credits for timely payments) due by no later September 18, 2024. *Id.* ¶ 67.

Within just eight days of signing the Forbearance Agreement, Ward caused Dasagroup to breach it by failing to timely make the second installment payment to Jefferies. *Id.* ¶ 70. By August

21, 2024, Dasagroup had missed eight payments under the Forbearance Agreement, leaving Jefferies no choice but to commence this action. *Id*. ¶ 72.

Jefferies filed its initial Complaint on August 21, 2024. ECF No. 1 ("**Compl.**"). Jefferies sued both in its capacity as a secured party on the Affected Receivables (under UCC § 9-607) and its capacity as a party to the Forbearance Agreement. *See, id.* ¶¶ 7, 11. The Complaint asserted the following claims against Dasagroup:

- <u>Breach of Contract</u>: Alleging, *inter alia*, that Dasagroup failed to make payments required by the Sales Agreement (as amended by the Forbearance Agreement). *Id.* ¶¶ 47-57.
- <u>Fraud</u>: Alleging that Dasagroup made knowingly false statements to Jefferies and Silo, in April and May of 2024, that London Fruit had not made payment on the Affected Receivables. *Id.* ¶¶ 58-63.
- <u>Conversion</u>: Alleging that Dasagroup wrongfully retained payments on the Affected Receivables that belonged to Silo and Jefferies. *Id.* ¶¶ 64-71.

In other words, at the time of the original Complaint, Jefferies's claims were premised on the belief that the receivables Dasagroup sold to Silo were valid and that Dasagroup's misconduct consisted of breaching its contractual obligations and retaining payments that should have been remitted to Silo and Jefferies.

Dasagroup responded to the initial Complaint with counterclaims against Jefferies (*see, e.g.*, ECF No. 11, 28, 78, 101) and materially identical third-party claims against Silo (*see* ECF No. 23, 79, 102).

**B.     Jefferies's Discovery of Fraudulent and Inflated Invoices, and the Resulting First Amended Complaint.**

Through diligent discovery efforts in this action, Jefferies and Silo uncovered substantial evidence that Dasagroup's misconduct extended well beyond the misappropriation of London Fruit's payments. *See e.g.*, ECF No. 120-1 ¶¶ 4, 29-34.

In early January 2025, Jefferies and Silo first became suspicious of potential invoice fraud through communications with London Fruit. On January 8, London Fruit stated it had no record of seven of the Affected Receivables; and on January 16, it noted that the invoices Dasagroup provided to Silo for those receivables differed in format and content from legitimate invoices London Fruit had

received from Dasagroup. These communications raised serious concerns about the authenticity of the invoices and prompted Jefferies to immediately and repeatedly seek relevant documents from Dasagroup—including serving Requests for Production on January 9, 2025—to confirm whether those seven invoices were fraudulent. *Id*. ¶¶ 5, 7. In addition to formal discovery, Jefferies also reached out to Dasagroup's counsel by phone and email in early February 2025, explaining the allegation and specifically requesting that Dasagroup prioritize the production of documents related to the disputed receivables (e.g., purchase orders, proofs of delivery, and records showing transmission of the invoices). Despite numerous further requests, Dasagroup did not begin producing the critical internal records until May 2025. *Id*. ¶¶ 7, 29.

It was only after Dasagroup's delayed document productions in May 2025, and subsequent amended interrogatory responses, that Jefferies was able to uncover the full scope of the invoice fraud. *Id*. ¶¶ 29-34. The newly disclosed evidence included internal communications, invoice records, and accounting files that revealed the systematic fabrication and inflation of receivables by Dasagroup and Ward. *Id*. Upon receiving and analyzing this new evidence, Jefferies promptly sought leave to amend its complaint on July 8, 2025. *See* ECF No. 107. Notably, the Court granted Jefferies's motion for leave to amend without objection from Dasagroup (ECF No. 117), further confirming the propriety and timeliness of Jefferies's investigation and amendment. *See* ECF No. 121.

As explained in the First Amended Complaint, the newly-obtained discovery demonstrated that many of the receivables that Dasagroup sold to Silo—including most, if not all, of the Affected Receivables—were fraudulent, in whole or part. *See generally* FAC ¶¶ 31-53. To induce Silo to purchase those fraudulent receivables, Ward used Dasagroup as his instrumentality to habitually create and submit false invoices to Silo, including (a) invoices that were entirely fictitious, representing sales that never occurred; and (b) invoices that materially overstated the amounts actually owed by London Fruit for legitimate transactions. *Id.* ¶¶ 36-37.

With respect to category (a), at least seven of the Affected Receivables were wholly fabricated by Ward (the "**Fictitious Invoices**"). *Id.* ¶ 38; *see also id.* ¶¶ 48-51. These invoices did not correspond to any actual delivery of goods, were never sent to London Fruit, and were omitted from

Dasagroup's (recently-produced) internal accounting records. *Id.* ¶ 38. Nevertheless, Ward, who was assisted by his wife (*id.* ¶ 10), submitted these Fictitious Invoices to Silo as if they were valid receivables with a face value of $715,000.00, seeking to line his pockets from the sale of worthless, fictitious receivables. *Id.* ¶ 38.

As to category (b), Dasagroup, again acting through Ward, routinely manipulated legitimate invoices by inflating the amounts due. *Id.* ¶ 39. For example, Ward grossly exaggerated the value of eighteen of the remaining twenty-seven Affected Receivables (the "**Falsified Invoices**"). *Id.* ¶ 40. For each of the Falsified Invoices, Dasagroup sent Silo a version of the invoice that materially differed from the (recently produced) invoice it sent to London Fruit. *Id.*; *see also id.* ¶ 47 (example of different invoices sent to London Fruit and Silo). In total, the "Balance Due" on the Falsified Invoices was nearly $500,000 more than the amount actually invoiced to London Fruit and recorded in Dasagroup's (recently produced) internal accounting documents. *Id.* ¶¶ 40, 47.

Compounding the deception, Ward and Dasagroup failed to disclose to Silo that, pursuant to a separate verbal arrangement and course of conduct with London Fruit, the actual amount London Fruit owed on each legitimate shipment was contingent on the resale price London Fruit obtained for the avocados, rather than the face amount stated on the invoice. *Id.* ¶ 41. This undisclosed arrangement—first disclosed in Dasagroup's May 27, 2025 responses to Jefferies's Requests for Admission (ECF No. 120-1 ¶ 33)—meant that, even putting aside the other issues with the Fictitious Invoices and the Falsified Invoices, the receivables sold to Silo were not, in fact, fixed and liquidated obligations as represented, but were subject to post-sale adjustments and reductions unknown and undisclosed to Silo. FAC ¶ 41. On information and belief, the amount London Fruit actually owed on the Affected Receivables under this arrangement was over $365,000.00 less than the amount reflected on the invoices sent to London Fruit. *Id.*

As a result of Ward's fraudulent scheme and in reliance on Ward's and Dasagroup's fraudulent misrepresentations regarding the validity and value of the Affected Receivables, Silo purchased the Affected Receivables from Dasagroup for approximately $2.9 million. *Id.* ¶ 53. Whereas Dasagroup represented that the face value of the Affected Receivables was $3,284,419.00 (*id.* ¶ 35), the true "face value" of the Affected Receivables, on information and belief, was closer to

$1,700,000.00—the amount that Dasagroup collected from London Fruit and unlawfully retained. *Id.* ¶ 55.

Among other things, the First Amended Complaint asserted a new claim against Dasagroup under California Penal Code § 496(c). FAC ¶¶ 95-104. Notably, there are two separate thefts underlying the § 496(c) claim: (1) Dasagroup's theft, by false pretenses, of the purchase price it received for the fabricated and inflated receivables (*id.* ¶ 96); and (2) Dasagroup's theft, by misappropriation, of the payments London Fruit made on the legitimate portions of the Affected Receivables (*id.* ¶ 97). As explained above, the first theft—which forms the core of Jefferies's § 496(c) claim—was only uncovered this year, through diligent discovery efforts. *See e.g.*, ECF No. 120-1 ¶¶ 4, 29-34.

### C. Jefferies's Continuous Interest in the Claims at Issue.

Dasagroup's oft-repeated claim that Jefferies transferred away its interests in this litigation reflects either profound confusion or deliberate misstatement. In reality, Jefferies has maintained a clear justiciable interest in this lawsuit at all times.

Jefferies initially held a security interest in the Affected Receivables. *See, e.g.,* FAC at ¶¶ 8, 28-29; *accord* Compl. ¶¶ 1-3; 36-38. It was in that capacity that Jefferies first became involved in this dispute. FAC ¶ 29; *accord* Compl. ¶¶ 39-42; *see also* UCC § 9-607.

After Jefferies and Silo learned that Dasagroup had misappropriated London Fruit's payments on the Affected Receivables (at that time, they were not aware of the fraudulent invoices), they acted in good faith by negotiating the Forbearance Agreement. FAC ¶ 6. As noted, Jefferies was a party to the Forbearance Agreement, which expressly amended the Sales Agreement to provide *inter alia* that Dasagroup would pay <u>Jefferies</u> the Existing Payment Deficiency by no later September 18, 2024. *Id.* ¶¶ 63, 67; *see also id.* Ex. C.

Critically, Jefferies <u>never</u> transferred away its security interest or its rights under the Forbearance Agreement. Jefferies has always maintained its interests in the claims at issue. In erroneously contending otherwise, Dasagroup cites to the October 7, 2024 transaction involving Jefferies's wholly-owned subsidiary, JFUN AR I LLC ("**JFUN**"), as referenced in paragraph 30 of the First Amended Complaint. *See* Dasagroup Br. (ECF No. 133), *passim*. However, as clearly stated

7    Case No.: 3:24-CV-05639-TLT
JEFFERIES'S OPPOSITION TO DASAGROUP'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

in the First Amended Complaint, that transaction involved <u>Silo's interests</u> in the Affected Receivables. FAC ¶ 30.[2] Specifically, "Silo transferred all of its right, title, and interest in and to the Affected Receivables to a Jefferies subsidiary, [JFUN]." *Id.* That transfer of Silo's interests did not affect Jefferies's interests as a secured party or its status as a party to the Forbearance Agreement. Silo's interests were ultimately consolidated with Jefferies's interests when, on July 3, 2025, JFUN transferred all of its right, title, and interest in the Affected Receivables (i.e., the interest it has acquired from Silo) to Jefferies. *Id.*. In short, there has never been a gap in Jefferies's standing or justiciable interest in this case.

## LEGAL STANDARD

In considering a motion pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). To survive a motion to dismiss, a plaintiff need only plead facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

**I.     Jefferies's Claim Under California Penal Code § 496(c) Is Timely.**

Dasagroup's statute of limitations argument is legally and factually unsupported. Dasagroup relies on a single case to assert that a one-year limitations period applies to all claims under § 496(c), ignoring the weight of authority holding that a three-year statute governs such claims. But the length of the limitations period is irrelevant: as explained below, Jefferies's § 496(c) claim is timely under

---

[2] Dasagroup also wrongly suggests that the JFUN transaction was not disclosed until Jefferies filed its First Amended Complaint; however, Jefferies and Silo have previously described the JFUN transaction on multiple occasions, including in Silo's January 17, 2025 motion to dismiss Dasagroup's Third-Party Complaint and in written discovery responses. *See* ECF No. 51, p. 6 n.2 ("[O]n October 7, 2024, Silo Technologies transferred all of its right, title, and interest in and to the Affected Receivables to a Jefferies subsidiary, which also assumed Silo Technologies' obligations under the Silo Note."). JFUN also provide public notice of the assignment through a standard UCC-3 assignment filing (ECF No. 133 at p. 14), which Dasagroup nonsensically characterizes as "shenanigans."

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

either period, because (1) the claim accrued upon Jefferies's recent discovery of Dasagroup's fraudulent receivables, and (2) the claim relates back to Jefferies's original August 21, 2024 Complaint. These arguments are dispositive; however for completeness, Jefferies also addresses the length of the limitations period in the final subsection below.

### A. The Core of Jefferies's § 496(c) Claim Accrued Upon Jefferies's Recent Discovery of Dasagroup's Fraudulent Receivables.

The principal basis for Jefferies's § 496(c) claim—Dasagroup's theft by false pretenses through fraudulent invoices—was only recently uncovered after diligent discovery, and thus the claim as to this conduct is timely under the discovery rule.

Both parties agree that the "discovery rule" governs when Jefferies's § 496(c) claim accrued. *See* Dasagroup Br. (ECF No. 133), p. 12; *see also E-Fab, Inc. v. Accts., Inc. Servs.*, 153 Cal. App. 4th 1308, 1318 (2007). California's discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807–09 (2005). Applying these principles to the facts here demonstrates that Jefferies's § 496(c) claim is timely.

The First Amended Complaint alleges two distinct forms of theft and receipt of stolen property: (1) theft by false pretenses, i.e., Dasagroup's fraudulent procurement of millions of dollars through the submission of fictitious and inflated receivables, and (2) theft by misappropriation, i.e., Dasagroup's retention of London Fruit payments. FAC ¶¶ 96-97. Dasagroup's motion to dismiss focuses exclusively on the second category, ignoring the principal—and newly discovered—basis for liability under § 496(c).

California law is clear that, where liability arises out of multiple wrongful acts, each act may have its own accrual date and limitations period. *See Aryeh v. Canon Business Solutions, Inc.*, 55 Cal. 4th 1185, 1199 (2013) ("When an obligation or liability arises on a recurring basis, a cause of action accrues each time a wrongful act occurs, triggering a new limitations period for that act") (internal citation omitted). The discovery rule likewise applies to each distinct act of fraud or theft. *See Fox*, 35 Cal. 4th at 813 ("[I]f a plaintiff's reasonable and diligent investigation discloses only one kind of wrongdoing when the injury was actually caused by tortious conduct of a wholly different

sort, the discovery rule postpones accrual of the statute of limitations on the newly discovered claim.").

Applying these principles, Jefferies's § 496(c) claim as to the fraudulent receivables did not accrue until well after the filing of the original complaint. As described above, Jefferies first became suspicious of potential invoice fraud in early January 2025 and promptly initiated both formal and informal efforts to obtain probative evidence. *See* ECF No. 120-1 ¶¶ 5, 7. However, Dasagroup did not even <u>begin</u> producing critical internal accounting records and communications with London Fruit until May 2025, after months of persistent demands. *Id*. ¶¶ 7, 29. These documents, which were not otherwise available to Jefferies or Silo, revealed that many of the receivables Dasagroup sold to Silo were either entirely fictitious or grossly overstated, and that the amounts ultimately owed were subject to undisclosed post-sale adjustments. *See e.g.*, *id*. ¶¶ 29-34. After reviewing this new evidence and piecing together the fraud, Jefferies promptly sought leave to amend its complaint. Accordingly, even under the most conservative calculation, Jefferies's § 496(c) claim accrued no earlier than January 2025, and the First Amended Complaint was filed well within any potentially applicable limitations period.[3]

Jefferies acknowledges that Dasagroup's <u>other</u> theft—misappropriation of London Fruit's payments on the Affected Receivables—was pled in the original Complaint and the § 496(c) claim as to that conduct likely accrued around a year ago.[4] However, as discussed in the next section, the

---

[3] In addition to the delayed discovery rule, the statute of limitations is also subject to tolling for fraudulent concealment where, as here, Dasagroup actively concealed the true nature of the receivables by submitting fraudulent invoices and repeatedly misrepresenting their validity, thereby preventing Jefferies from discovering the underlying theft. *See, e.g.,* FAC¶¶ 3, 5, 36-52, 57-59, 71, 86-90, 96; *see also Scosche Industries, Inc. v. S&T Montgomery Distributing, Inc.*, No. 2:22-cv-09030-SVW-MAA 2024 WL 4003894, at *3 (C.D. Cal. June 5, 2024) ("To the extent that Defendants continuously concealed that they were in possession of funds obtained via theft from Plaintiff, the alleged crime continued to occur."). If necessary, Jefferies is prepared to add factual allegations to the First Amended Complaint that further detail both Dasagroup's fraudulent concealment and Jefferies diligence in pursuing the facts underlying Dasagroup's theft by false pretenses.

[4] Dasagroup, however, repeatedly mischaracterizes Jefferies's pleadings in asserting that Jefferies admitted "that 'by May 2024,' it knew from a 'review of [Dasagroup's] bank statements'" that Dasagroup had received and retained London Fruit payments that should have been sent to Silo. Dasagroup Br. (ECF No. 133), pp. 5, 6, 9, 12. Dasagroup misleadingly relies on paragraph 9 of Jefferies's Complaint, which states that Dasagroup's bank statements (<u>which Jefferies received in August 2024</u>) reveal that Dasagroup received at least $3.57 million from London Fruit between May - July 2024. Compl., ¶ 9.

§ 496(c) claim as to this conduct—and, indeed, the § 496(c) claim as a whole—relates back to the original Complaint and is therefore timely.

### B. Jefferies's § 496(c) Claim Relates Back to the Complaint Under Rule 15(c).

Jefferies's § 496(c) claim is timely under Rule 15(c)'s liberal relation-back doctrine because it and the claims in Jefferies's original Complaint rely on a common core of operative facts. Thus, although the First Amended Complaint is deemed filed as of July 8, 2025,[5] the § 496(c) claim therein relates back to Jefferies's August 21, 2024 complaint.

Under Rule 15(c), "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).[6] Claims arise out of the same conduct, transaction, or occurrence if they "rely on a common core of operative facts." *Ross v. Williams*, 950 F.3d 1160, 1167 (9th Cir. 2020). The relation back doctrine is "liberally applied." *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014).

Here, Jefferies's § 496(c) claim arises out of the same core transactions set forth in the original Complaint—namely, Dasagroup's sale of the Affected Receivables to Silo. While the original Complaint focused on breach of contract, conversion, and fraud based on Dasagroup's retention of London Fruit's payments on those receivables, the First Amended Complaint builds upon these same transactions by adding a § 496(c) claim predicated on two separate bases: (i) the invoice fraud that was only recently uncovered through diligent post-complaint discovery, and (ii) the misappropriation theory that was pled in the original Complaint. FAC ¶¶ 96-97. The original Complaint thus put

---

[5] *See, e.g., Viale v. Air & Liquid Sys. Corp*, No. 19-CV-00038-MMC, 2019 WL 2191809, at *1 (N.D. Cal. May 21, 2019) ("Where a court grants a motion for leave to amend, . . . the proposed amended pleading is 'deemed filed' on the date the plaintiff files the motion."); *accord Weiner v. Superior Court*, 58 Cal. App. 3d 525, 529-31 (1976).

[6] Dasagroup's suggestion that Rule 15(d) (supplemental pleadings) applies (*see* Dasagroup Br. (ECF No. 133), p. 5) is a red herring. The First Amended Complaint is appropriately characterized as an amended complaint because the Dasagroup conduct on which the pleading's claims are based predates the original Complaint. *See generally* 1 Motions in Federal Court § 5:240 (3d ed.). Regardless, the relation-back standard applies to both amended and supplemental complaints, so long as the new claim shares a common core of operative facts with the original pleading. *See, e.g., GTE Mobilnet of California Ltd. P'ship v. City of Berkeley*, No. 20-CV-05460-DMR, 2021 WL 4442650, at *6 (N.D. Cal. Sept. 28, 2021) ("'[A] pleading filed according to Rule 15(d) can relate back' if it meets the test for relation back under Rule 15(c).") (internal citation omitted); *accord Sec. Ins. Co. of New Haven, Conn. v. U.S. for Use of Haydis*, 338 F.2d 444, 449 (9th Cir. 1964).

Dasagroup on notice of the core transactions and the general nature of the alleged wrongdoing, but it was only through discovery that Jefferies learned the full scope and deviousness of Dasagroup's scheme—including the fabrication and inflation of invoices, which was not and could not have been known at the time of the original pleading. *See* ECF No. 120-1 ¶¶ 4, 29-34. This is precisely the scenario for which Rule 15(c) was designed: where the original pleading gives fair notice of the general fact situation out of which the claim arises, an amendment that asserts a related legal theory or remedy—so long as it is tied to the same transaction or occurrence—relates back to the date of the original Complaint. *See In re Brocade Commc'ns Sys., Inc. Derivative Litig.*, 615 F. Supp. 2d 1018, 1038-39 (N.D. Cal. 2009) (fraud claims in amended complaint related back because they arose "out of the same stock option transactions").

Dasagroup's <u>only</u> substantive argument against relation back is its erroneous assertion that Jefferies transferred away its interest in the claims during the pendency of the action. As detailed above, Jefferies never transferred away any interest related to this litigation; rather, through fully disclosed transactions, Jefferies acquired <u>additional</u> interests relevant to its claims.[7]

Jefferies § 496(c) claim therefore relates back to the original Complaint.

### C.    The Weight of Authority Applies a Three-Year Statute of Limitations to § 496(c).

Although the length of the limitations period is ultimately irrelevant, Jefferies's claim is timely under either standard because the majority of courts addressing § 496(c) have applied a three-year statute of limitations, particularly where the underlying theft involves fraud or the claim seeks attorneys' fees. For example, in *McCraner v. Wells Fargo & Co.*, the court expressly determined "the statute of limitations for a claim for violation of California Penal Code § 496 is three years." No. 21-CV-1246-LAB-WVG, 2023 WL 2728719, at *3 (S.D. Cal. Mar. 30, 2023) (citing Cal. Code Civ. Proc. §§ 338(c), (d) (three-year limitations period for actions for taking or detaining goods or chattel and for actions on the ground of fraud)). The court in *Agape Fam. Worship Ctr., Inc. v.*

---

[7] Where assigned claims rely on the same conduct, transactions, or occurrences set forth in an initial pleading, they relate back to that pleading, even where the assignment of claims took place after the action was commenced. *John Beaudette, Inc. v. Sentry Ins. A Mut. Co.*, 94 F. Supp. 2d 77, 97 (D. Mass. 1999). The decision in *United States for Use of Wulff v. CMA, Inc.*, 890 F.2d 1070 (9th Cir. 1989), is not to the contrary. There, the court found no relation back because "[t]he supplemental complaint alleges a cause of action arising out of a completely different transaction." *Id.*, at 1073-74. Additionally, unlike *Wulff*, this is not "a situation where a party with no cause of action file[d] a lawsuit to toll the statute of limitations." *Id.* at 1075. Jefferies has maintained its own interests in the claims throughout the pendency of the action.

*Gridiron*, reached the same conclusion, noting that the criminal offense outlined in § 496 also has a three-year statute of limitations. No. 5:15-CV-1465-ODW-SPx, 2016 WL 3003207, at *5 (C.D. Cal. May 24, 2016) (citing Cal. Penal Code § 801).[8]  Dasagroup cites a single decision that applied a one-year statute of limitations period to the treble damages component of a § 496(c) claim, but even there the court recognized (in a passage that Dasagroup omits) that "the civil claim under California Penal Code § 496(c) regarding recovery for costs of suit and reasonable attorney's fees is subject to a three-year statute of limitations." *Tu Le v. Prestige Cmty. Credit Union*, No. 8:22-CV-00259-JVS (KESx), 2023 WL 9689133, at *10 (C.D. Cal. Nov. 6, 2023).  Thus, <u>at least</u> to the extent that Jefferies's § 496(c) claims seek actual damages, court costs, and attorneys' fees, the statute of limitations is three years, not one.

## II.    Dasagroup's Standing and Mootness Arguments Are Procedurally Barred and Factually Baseless.

Dasagroup's final argument—that the First Amended Complaint should be dismissed in its entirety because Jefferies purportedly "has not maintained a justiciable interest in its lawsuit since it was first filed" (*see* Dasagroup Br. (ECF No. 133), pp. 13-15)—is both procedurally foreclosed and factually flawed.[9]

As a threshold matter, the Court's August 21, 2025 order expressly limits the scope of any motion to dismiss to "Jefferies' new claims in the first amended complaint," and precludes the parties from "re-litigat[ing] claims already waived or addressed by the Court." ECF No. 134.  Accordingly, Dasagroup's arguments directed at claims other than the new § 496(c) claim are improper and should be disregarded.

Even if the Court were to consider Dasagroup's standing and mootness arguments, they decisively fail on the merits because Jefferies has continuously maintained a justiciable interest in this lawsuit throughout its pendency.  Dasagroup's repeated assertion that Jefferies transferred away

---

[8] *See also Evans v. ZB, N.A.*, No. 2:17-CV-01123-WBS-DB, 2019 WL 6918278, at *6 (E.D. Cal. Dec. 19, 2019) (applying three-year statute of limitation); *Scosche*, 2024 WL 4003894, at *3 (same); *Price v. Oberman, Tivoli & Pickert, Inc.*, No. BC616556, 2020 WL 8365570, at *2 (Cal. Super. Dec. 22, 2020) (same).

[9] We note that while Dasagroup purports to move under Rule 12(b)(6) (*see* Dasagroup Br. (ECF No. 133), pp. 1, 10-11), this argument is predicated on concepts of Article III subject matter jurisdiction, like justiciability, standing, and mootness.  *See* Fed. R. Civ. Pro. 12(b)(1).

interests is a material misstatement, whether inadvertent or intentional. Jefferies commenced this action in its capacity as both a secured party to the Affected Receivables and party to the Forbearance Agreement. It never transferred away those interests. Rather, additional interests were transferred *to* Jefferies. Specifically, after the original Complaint was filed Silo transferred its remaining interests (not Jefferies's interests) in the Affected Receivables to Jefferies's subsidiary, JFUN. Then, once Dasagroup's invoice fraud was uncovered, the interests that Silo had assigned to JFUN were transferred to Jefferies to consolidate all relevant interests. These assignments were disclosed on the record (*see* n. 2, *supra*; *see also* ECF No. 51, p. 6 n.2; FAC ¶ 30), and did not prejudice Dasagroup or alter the operative facts at issue. In short, there was never a lapse in standing, nor did the case become moot at any point. Jefferies's justiciable interests in this action have been continuous.

## CONCLUSION

For all the reasons above, Jefferies respectfully requests that the Court deny Dasagroup's Motion to Dismiss the First Amended Complaint.

DATED THIS 3rd day of September, 2025.

HOLLAND & KNIGHT LLP

s/    *Rebecca G. Durham*
Michael T. Jones (SBN 290660)
Rebecca G. Durham (SBN 319403)
560 Mission Street, Suite 1900
San Francisco, CA 94105
(415) 743-6900
m.jones@hklaw.com
rebecca.durham@hklaw.com

Stosh M. Silivos
Martin L. Seidel
Kelly McNeill
787 Seventh Ave., 31st Floor
New York, NY 10019
(212) 513-3200
stosh.silivos@hklaw.com
martin.seidel@hklaw.com
kelly.mcneill@hklaw.com

*Attorneys for Plaintiff Jefferies Funding LLC*