MARIO A. MOYA (SBN 262059)
REBECCA M. HOBERG (SBN 224086)
MOYA LAW FIRM
1300 Clay Street, Suite 600
Oakland, California 94612
Tel: 510 926-6521
Email: mmoya@moyalawfirm.com
        rhoberg@moyalawfirm.com

Attorneys for Defendant/Counter-Claimant
DASAGROUP HOLDINGS CORP.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFERIES FUNDING, LLC,<br>Plaintiff,<br><br>v.<br><br>DASAGROUP HOLDINGS CORP. (d/b/a KICKHASS AVOCADOS) and LONDON FRUIT, INC.,<br><br>Defendants. | Case No. 3:24-cv-05639-TLT<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>[Fed. R. Civ. P. 12(b)(1) & 12(b)(6)] |
| DASAGROUP HOLDINGS CORP. (d/b/a KICKHASS AVOCADOS),<br><br>Counter- and Cross-Claimant/<br>& Third-Party Plaintiff,<br><br>v.<br><br>JEFFERIES FUNDING, LLC,<br><br>Counter-Defendant,<br><br>LONDON FRUIT, INC., and<br><br>Cross-Defendant,<br><br>SILO TECHNOLOGIES, INC.,<br><br>Third-Party Defendant. | Date: Nov. 11, 2025<br>Time: 2:00 p.m.<br>Courtroom: 9<br>Judge: Hon. Trina L. Thompson |

REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AM. COMPLAINT

*Jefferies Funding v. Dasagroup Holdings et al.*
No. 3:24-cv-05639-TLT

Defendant Dasagroup Holdings Corp. hereby replies to the opposition filed by Plaintiff Jefferies Funding, LLC in response to Dasagroup's motion to dismiss the First Amended Complaint ("FAC"):

## I.   PLAINTIFF HAS NOT MET ITS BURDEN TO SHOW THAT THE COURT HAS HAD SUBJECT MATTER JURISDICTION THROUGHOUT THIS LAWSUIT.

Jefferies's opposition does not meaningfully respond to the considerable defects in justiciability caused by the intervening assignments of rights in tort and contract that had purportedly given it standing to assert tort and contract claims arising out of the Silo Instant Pay Agreement.  Rather than meet its burden in response to Dasagroup's factual challenge to subject matter jurisdiction, it instead feigns disbelief and makes the baseless suggestion that any challenge has been waived or is "foreclosed," which is preposterous and contrary to binding precedent from the U.S. Supreme Court.  Jefferies also tries to hide behind Silo, arguing, without any authority, that while it maintained this lawsuit based on a purported assignment of rights from Silo and/or a right to collect under UCC 9-607 — i.e., Cal. Comm. Code § 9607 — it and/or Silo were apparently free to assign-away those rights to other entities to pursue other efforts against Dasagroup while this case was pending.

### A.   Issues of Subject Matter Jurisdiction Can Never Be Forfeited or Waived.

Contrary to what Plaintiffs argue (at Opp. pp. 13:13-21), there is no bar or waiver for challenge to subject matter jurisdiction.  See Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").  "Subject matter jurisdiction can never be forfeited or waived and federal courts have a continuing independent obligation to determine whether subject-matter jurisdiction exists." *Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 975 n.12 (9th Cir. 2012) (internal quotation marks and citations omitted).  This is a clear, repeated directive from the Supreme Court.  *See, e.g., United States v. Cotton*, 535 U.S. 625, 630 (2002) (subject matter jurisdiction "can never be forfeited or waived"); *United States v. Hays*, 515 U.S. 737, 742 (1995) ("The question of standing is not subject to waiver . . .").  As one federal court has put it: "It is never too late in the progression of an action for a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(h)(3) and Fed. R. Civ. P. 12(b)(1)." *Hu v. Skadden*, 76 F.Supp.2d 476, 478 (S.D.N.Y. 1999).

**B.**    **Jefferies Has Failed to Meet Its Burden to Produce Affidavits or Other Evidence of Its Standing and Key Aspects of Subject Matter Jurisdiction.**

For unknown reasons, Jefferies's opposition does not offer any evidence to substantiate its claim of subject matter jurisdiction over the original case that it filed, which is why the jurisdictional challenge should be granted.  "On a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), it is the plaintiff's burden to establish the existence of subject matter jurisdiction." *Center for Biological Diversity v. EPA*, 316 F. Supp. 3d 1156, 1163 (N.D.Cal. 2018) (quoting *Kingman Reef Atoll Invs., LLC v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008)).

A party challenging the court's subject matter jurisdiction under Rule 12(b)(1) may do so via a facial challenge or a factual challenge.  *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In evaluating a facial challenge to subject matter jurisdiction, the court accepts the factual allegations in the complaint as true. *See Miranda v. Reno*, 238 F.3d 1156, 1157 n.1 (9th Cir. 2001). If, however, a defendant brings a factual challenge, then "a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment." *White*, 227 F.3d at 1242 (citation omitted).

When, as here, a moving party has made a factual challenge to subject matter jurisdiction by offering affidavits or other evidence to dispute the allegations in the complaint — like, for instance, the Washington state UCC filings offered by Dasagroup that were filed *after* Jefferies filed this lawsuit —  the party opposing the motion must "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009) (quoting *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989)).

Here, Jefferies offers nothing but rote citations to the pleadings and feigned annoyance and incredulity about the jurisdictional challenge.  It offers nothing in the way of evidence other than a reference to its prior pleadings.  See Opp. at 13-14 (arguing, with no evidentiary support, that "Jefferies has continuously maintained a justiciable interest in this lawsuit throughout its pendency").  But arguments and statements of counsel are not evidence, and are not sufficient for Jefferies to meet its burden to produce evidence to withstand a fact-based jurisdictional challenge.  *See, e.g., Barcamerica Int'l USA Tr. v. Tyfield Importers, Inc.*, 289 F.3d 589, 593 n.4

(9th Cir. 2002) (arguments of counsel are not evidence); *Moran v. Selig*, 447 F.3d 748, 759-60 (9th Cir. 2006) (unverified pleadings are not evidence).

**C.      By Its Own Admission, Jefferies Did Not Have Article III Standing To Sue on Behalf of Silo for Harms to Silo When This Lawsuit Was First Filed.**

The Supreme Court has held that "when standing is questioned by a court or an opposing party, the litigant invoking the court's jurisdiction must do more than simply allege a nonobvious harm. . . . [T]o cross the standing threshold, the litigant must explain how the elements essential to standing are met." *Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 663 (2019).  To establish standing to sue, a plaintiff bears the burden of showing (1) an injury in fact, meaning an injury that is concrete and particularized, and actual or imminent; (2) a causal connection between the injury and the causal conduct; and (3) a likelihood that the injury will be redressed by a favorable decision.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). "Standing . . . is to be determined as of the commencement of suit," *Lujan*, 504 U.S. at 570 n. 5, and a court may not permit an action to continue, even where the jurisdictional deficiencies have been subsequently cured if jurisdiction was lacking at commencement.  *See Cortlandt St. Recovery Corp. v. Hellas Telecomms*, 790 F.3d 411, 422 (2d Cir. 2015); see also, *Utah Ass'n of Ctys. v. Bush*, 455 F.3d 1094, 1101 & n.6 (10th Cir. 2006) ("[b]ecause standing is determined as of the time of the filing of the complaint," an alleged subsequent injury could not serve as a basis for plaintiff's standing).

By its rambling opposition, Jeffeires digs a bigger hole for itself that it cannot escape. Instead of producing evidence of the underlying chain of assignments, documentation, and/or security agreements that allegedly provided it with a legal basis to pursue Dasagroup when this case was filed, Jefferies effectively concedes that it did not have standing to sue on behalf of Silo and was exclusively suing on its purported rights as a secured party under UCC 9-607.  *See* Opp. at 7:15-17 (stating, *inter alia*, that "Jefferies initially held a security interest in the Affected Receivables," but only citing Compl. [Dkt 1] ¶¶ 1-3, 36-42 as proof of such interest).

Without more, none of those averments demonstrate that Jefferies had a right to bring a direct action against Dasagroup on behalf of Silo for harms that were uniquely pleaded in the original complaint as *harms to Silo*, not Jefferies.  It is beyond dispute that a party lacking privity of contract does not have standing to enforce an agreement and certainly has no basis to

claim fraud or conversion with respect to other conduct related to such contract. *See, e.g., Hatchwell v. Blue Shield of California*, 198 Cal. App. 3d 1027, 1034 (1988). Perhaps recognizing its error, Jefferies's opposition attempts to hide behind the Forbearance Agreement, suggesting that it was the original basis for its claims and has been a continual interest maintained by Jefferies since the litigation began. *See* Opp. at 7:18-25. But that mischaracterizes the original complaint, which speaks for itself.

The three claims Jefferies originally pleaded against Dasagroup when this case was filed all arose from Dasagroup's participation and course of performance *toward Silo* in connection with the Instant Pay Program, not the Forbearance Agreement. These claims were pleaded separate and apart from any of Jefferies's rights under the Forbearance Agreement, and the conduct at issue pertained to events that occurred *before* Jefferies had announced its presence to Dasagroup and before the later Forbearance Agreement between Jefferies and Dasagroup was executed or allegedly breached. *See* Dkt. 1 (Original Complaint) at ¶¶ 47-57 (pleading Count I, breach of contract, arising from Silo-Dasagroup Instant Pay contract, not the Jefferies-Dasagroup Forbearance Agreement); ¶¶ 58-63 (pleading Count II, fraud, arising from representations made by Dasagroup/Kickhass in "April and May of 2024 . . . that London Fruit had not made payments on the Affected Receivables"); and ¶¶ 64-71 (pleading Count III, conversion, based upon discovery that "[f]rom review of Kickhass's bank statements," Kickhass had received considerable payments "from London Fruit in May 2024, . . . in June 2024[,] and . . . in July 2024"). None of these allegations establish Jefferies's standing to sue on behalf of Silo on the claims originally pleaded.

Jefferies's reliance on its purported status as a "secured party" under UCC 9-607 is also not convincing and does not establish its Article III standing with respect to the lawsuit it originally filed. Jefferies's pleading is rather misleading because the "secured party" status it refers to is a status conferred by a different agreement — the "Silo Forbearance Agreement" — that Jeffereies entered into with Silo Capital, not Dasagroup. Section 9607(e) of the California Commercial Code is clear that the statute "does not determine whether an account debtor, bank, or other person obligated on collateral *owes a duty to a secured party*." Cal. Comm. Code§ 9607(e) (emphasis added). The commentary to section 9607 also states, with

emphasis, that "*[n]either this section nor former section 9-502 should be understood to regulate the duties of an account debtor or other person obligated on collateral.* Subsection (e) makes this explicit." Cal. Comm. Code § 9607, com 6.

Accordingly, UCC 9-607 does not impose any obligations upon, or provide any recourse against, account debtors like Dasagroup; instead, it merely governs the rights and liabilities as to collateral only existing between the secured party [i.e., Jefferies] and borrower [i.e., Silo/Silo Capital] under any pertinent instrument [the "Silo Forbearance Agreement"]. *See* Dkt. 1 (Orig. Complaint) ¶¶ 3, 11. The statute says nothing, and confers no Article III standing for Jefferies to sue Dasagroup for injuries to parties like Silo. *See Western Alliance Bank v. Nat'l Union Fire Ins. Co.*, 2016 U.S. Dist. LEXIS 19936, at *9, n.43 (N.D.Cal. Feb. 18, 2016) (holding that Cal. Comm. Code § 9607 [i.e., UCC 9-607] "does not determine whether an account debtor . . . or other person obligated on collateral owes a duty to a secured party") (citing Cal. Com. Code § 9607(e) and *BNY Midwest Trust Co. v. Nat'l Union Fire Ins. Co of Pittsburgh*, 213 F. App'x 563, 567 (9th Cir. 2006)). In *BNY Midwest Trust*, the Ninth Circuit held a security interest in "proceeds" of an instrument like a fidelity bond "does not confer standing to bring a claim for losses suffered by parties other than the insured" on the bond. This is indistinguishable from Jefferies's suggestion that it had rights to sue Dasagroup on behalf of Silo under the opaque, unsubstantiated, and un-produced "Silo Forbearance Agreement" that, it claims, gave it the right to claim an interest in any amounts due from Dasagroup to Silo.

The law is clear: "[I]n order to be able to sue in his or her own name, [an] assignee must obtain *ownership* of the claim, as opposed to merely a power of attorney regarding the claim." *Lasala v. Needham & Co.*, 2006 U.S. Dist. LEXIS 7388, at *23 (S.D.N.Y. Feb. 24, 2006) (citing *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 17 (2d Cir. 1997)) (emphasis in original). Nothing in the' original complaint states that Jefferies had received an assigned ownership interest in the claims it asserted in the original lawsuit it filed. And, as shown above, all of the claims it asserted were premised upon its standing to sue for harms to Silo with respect to the Instant Pay Program. It was not until later, before the FAC was filed, when Jefferies purports to have received a "assign[ment]" of the affected receivables "and all claims in any way related to the Affected Receivables." *See, e.g.*, FAC ¶¶ 91, 102, 108.

Jefferies's failure to substantiate its standing to have filed the lawsuit it originally filed warrants immediate dismissal under Rules 12(b)(1) and 12(h)(3) of the Federal Rules of Civil Procedure. Article III standing is a threshold jurisdictional prerequisite central to subject matter jurisdiction, and any such defects at the outset of a lawsuit are incurable and warrant dismissal. *See Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (en banc)

**D.**  **Even If the Court Were to Find Standing At Commencement, The Claims Jefferies Originally Filed Were No Longer Redressible When They Were Later Assigned to JFUN, Which Destroyed Article III Jurisdiction.**

Even if the Court were to find a basis for standing at commencement (which it should not), Jefferies's opposition makes a clear admission that, after this case was filed, Silo assigned-away any rights that Jefferies purported to have at the outset of this case to a Jefferies subsidiary, which would have impaired the rights that Jefferies claimed to have in such claims that were already asserted:

> [A]fter the original Complaint was filed Silo transferred its remaining interests (not Jefferies's interests) in the Affected Receivables to Jefferies's subsidiary, JFUN. Then, once Dasagroup's invoice fraud was uncovered, the interests that Silo had assigned to JFUN were transferred to Jefferies to consolidate all relevant interests.

Opp. at 14:4-7.

Apart from stating that the assignment to JFUN AR was disclosed in prior filings, Jeferies does little to explain why that assignment by Silo to a third party (which is referenced as occurring before the FAC was filed) would not have been fatal to the Article III standing it vigorously defends. After all, a "Jefferies subsidiary" like JFUN AR is still treated as a legally distinct and separate entity from Jefferies; otherwise, why would it have filed a UCC amendment against Dasagroup in Washington state as JFUN AR and not as Jefferies? Jefferies has done little to illuminate the shell game it is playing in the dark, beyond everyone's scrutiny (i.e., the parties, the public, and even this Court), and it has failed to meet its burden in response to Dasagroup's jurisdictional challenge.

The law is clear that even when a plaintiff can show that it could meet the requirements for standing when a case was initially filed, a plaintiff will lose such standing when it sells its claims or causes of action to a third party. *See, e.g., Sanford Inv. Co. v. Ahlstrom Mach.*

---

REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AM. COMPLAINT

*Jefferies Funding v. Dasagroup Holdings et al.*
No. 3:24-cv-05639-TLT

*Holdings, Inc.*. 198 F.3d 415, 420 (3d Cir. 1999); *AtlantiGas Corp. v. Columbia Gas Transmission Corp.*, 210 Fed. App'x 244, 250 (4th Cir. 2006). This is because by selling its claim, the plaintiff's injury can no longer be "redressed by a favorable decision." *See Lujan*, 504 U.S. at 561; *see also, Valdin Invs. Corp. v. Oxbridge Capital Mgmt., LLC*, 651 F.App'x 5, 7 (2d Cir. 2016) ("Valdin's assignment of its rights extinguished its claims against Oxbridge and deprived it of any interest in this litigation. Valdin therefore lacks standing.") (citing *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat'l Ass'n*, 731 F.2d 112, 125 (2d Cir. 1984)).

Because Jefferies's briefing and averments of a prior assignment in the FAC demonstrate that any standing would have been lost by an intervening assignment of rights from Silo to JFUN AR, the Court should again dismiss this action for Jefferies's failure to maintain Article III standing on the original complaint it filed during the pendency of this action, before its latest amendment, which cannot resurrect subject matter jurisdiction that has been lost by an intervening assignment

## II.    THE THIRD CLAIM IS TIME-BARRED.

### A.    The Third Claim Seeks Treble Damages and Is Governed By a One-Year Statute; The Opposition Does Not Dispute This.

Jefferies does not dispute that it makes a claim for treble damages under Cal. Penal Code section 496 in its First Amended Complaint. See FAC ¶ 103. Specifically, FAC ¶ 103 states: "Accordingly, Ward and Dasagroup are liable to Jefferies under Cal. Penal Code § 496(c), **and Jefferies is entitled to three times the amount** of Jefferies's and Silo's actual damages, costs of suit, and reasonable attorney's fees." This claim for treble damages is the only claim for damages made in the Third Claim for relief under Penal Code section 496. Such a claim is punitive in nature, and is thus governed by a one year statute of limitations. *See Le v. Prestige Cmty. Credit Union*, 2023 U.S.Dist.LEXIS 232717, at *25 (C.D.Cal. Nov. 6, 2023); *Prudential Home Mortg. Co*., 66 Cal. App. 4th 1242 (1998).

The cases cited by Jefferies do not address the punitive nature of the damages under Cal. Penal Code 496. The court in *Le v. Prestige Cmty. Credit Union* addressed many of those same cases in its opinion and found them unpersuasive. See *Le v. Prestige Cmty. Credit Union,* 2023 U.S.Dist.LEXIS 232717 at *24-25 (collecting and distinguishing several cases finding three years based upon improper presumption that the longer limitations period of C.C.P. § 338

applied).  The Court was clear that this was a faulty analysis, which is the same error made by
Jefferies here:

> A civil claim under California Penal Code § 496(c) may be brought for "three times the
> amount of actual damages," which constitute treble damages. "[T]he settled rule in
> California is that statutes which provide for recovery of damages additional to actual
> losses incurred, such as double or treble damages, are considered penal in nature [], and
> thus governed by the one-year period of limitations stated [*26]  in section 340,
> subdivision (1)." Prudential Home Mortg. Co. v. Superior Court, 66 Cal. App. 4th 1236,
> 1242, 78 Cal. Rptr. 2d 566 (1998) (quoting G.H.I.I. v. MTS, Inc., 147 Cal. App. 3d 256,
> 278, 195 Cal. Rptr. 211 (1983)).

*Le v. Prestige Cmty. Credit Union,* 2023 U.S.Dist.LEXIS 232717 at *25–26.  Jefferies's
self-serving analysis is incorrect for the same reasons.

**B.    Plaintiff Was Already on Inquiry Notice of the Harm Underlying Its Third
Claim, Which Is Indistinguishable From What Jefferies Originally Pleaded
In Its Original Conversion Claim.**

Jefferies's argument that there were "two distinct forms of theft and receipt of stolen
property" components of its section 496(c) claim (at Opp. pp. 9) is a red herring.  Jefferies
original complaint shows that it was already on inquiry notice of the harm underlying its Third
Claim for theft before it filed its original complaint.

Te original Complaint alleges, "On multiple occasions in April and May of 2024,
Kickhass falsely represented to Silo and Jefferies that London Fruit had not made payments on
the Affected Receivables;" "[a]t Kickhass's direction, London Fruit made partial payments on
the Affected Receivables directly to Kickhass. Kickhass improperly retained these payments and
did not re-direct them to Silo;" "[t]hese statements constitute affirmative misrepresentations and
concealment with knowledge of their falsity;" and [d]espite having received the money and then
some it owed to Silo and Jefferies, Kickhass repeatedly defaulted on the required progress
payments, keeping the money that belonged to Silo and Jefferies for Kickhass'own purpose."
Dkt. 1 (Orig. Compl.). ¶¶ 27, 30, 31, 60.   These allegations were the basis of Jefferies's claims
for conversion (*id*. ¶¶ 64-71) and fraud (*id*. ¶¶ 58-63), and they were also incorporated in the
**June 19, 2024** Forbearance Agreement.  That document references Jefferies's belief that
Dasagroup fraudulently withheld payments due to Silo from Silo on the same basis as the

complaint filed shortly thereafter; thus, the misrepresentations alleged were known to Jefferies at the time it drafted that agreement in June 2024. See id. (Exh. C).

In short, Jefferies has alleged notice of facts as early as **June 19, 2024,** that it claims show that Dasagroup fraudulently misrepresented the receivables it received from London Fruit and the fact that it had kept that money instead of transmitting it to Silo. Thus, Jefferies was on notice (or at least inquiry notice) of the same harm underlying its Cal. Penal Code section 496(a) claim since no later than that date. Once "a plaintiff is on notice of a potential claim, the doctrine of fraudulent concealment does not come into play." *MGA Ent., Inc. v. Mattel, Inc*., 41 Cal. App. 5th 554, 565 (2019); *see also Rustico v. Intuitive Surgical, Inc*., 424 F. Supp. 3d 720, 737 (explaining that "[t]he discovery rule and fraudulent concealment are 'close cousin[s]' under California law" and invocation of "both doctrines is foreclosed by the same fact: Plaintiffs were on inquiry notice of the instant claims as of January 12, 2012") (quoting *Bernson v. Browning-Ferris Indus*., 7 Cal. 4th 926, 931 (1994)).

Jefferies filed its Motion for Leave to File an Amended Complaint more than one year later, on July 8, 2025. ECF 107. Even though they claim that they learned of new facts revealing new culpable conduct, the inescapable truth is that these new allegations are irrelevant because they plead the same injury — i.e., the wrongful taking and/or retention of funds loaned to Dasagroup. The cases cited by Jefferies are distinguishable.[1] Thus, Jefferies' treble damages claim under Cal. Penal Code section 496(c) is untimely and should be dismissed.

Respectfully submitted,

Dated: Sept. 10, 2025

MOYA LAW FIRM

*/s/ Mario A. Moya*

_____

Mario A. Moya / Rebecca M. Hoberg

Attorneys for Defendant Dasagroup

---

[1] *Aryeh v. Canon Business Solutions, Inc*., 55 Cal. 4th 1185, 1199 (2013) involved a case in which the court applied the theory of continuous accrual because the plaintiff had alleged a recurring unfair act, some instances of which fell within the limitations period. That analysis is inapplicable to the theft allegations here, which are alleged to have occurred at a particular point in time. *Fox v. Ethicon Endo-Surgery, Inc*. 35 Cal. 4th 797 (2005) similarly did not address a case where there were two alleged, similar, factual allegations underpinning the same claim for the same cause of action. Medical malpractice and products liability — distinct harms and injuries — are far more dissimilar than the near identical twins of conversion and theft/larceny.

REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AM. COMPLAINT