United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

JEFFERIES FUNDING LLC,
Plaintiff,
v.
DASAGROUP HOLDINGS CORP., et al.,
Defendants.

Case No. 24-cv-05639-TLT (PHK)

**ORDER RE: MOTION FOR SANCTIONS AND ATTORNEYS' FEES**

Re: Dkt. No. 205

**INTRODUCTION**

Before the Court is Plaintiff Jefferies Funding LLC's ("Jefferies") Motion for Sanctions pursuant to Local Rules 7-8 and 37-4 and Fed. R. Civ. P. 37. [Dkt. 205]. Plaintiff seeks monetary sanctions against Defendant Dasagroup Holdings Corp. ("Dasagroup") to compensate Plaintiff for fees incurred in relation to the 30(b)(6) deposition of Dasagroup's corporate representative Mr. Philip Ward noticed for November 24, 2025. [Dkt. 205]. The requested sanctions include travel costs, court reporter fees and the videographer cancellation fees incurred as a result of Dasagroup's conduct. *Id.* Additionally, Plaintiff seeks fees associated with bringing the Motion for Sanctions. *Id.* The Court held a hearing on the instant motion on April 9, 2026, during which the disputes here were narrowed as discussed below. [Dkt. 222].

**BACKGROUND**

Jefferies is a Delaware limited liability company specializing in investment banking and capital markets firm. [Dkt. 1 (Complaint) at ¶ 12]. Dasagroup is a Washington corporation specializing in avocado buying and selling. [Dkt. 28 (Amended Counterclaim) at ¶¶ 2, 8]. Mr. Philip Ward is Dasagroup's President and a named individual co-defendant who was added to the

case as a named defendant by the First Amended Complaint filed on August 6, 2025. *See* Dkt. 1; Dkt. 122.

On September 17, 2025, Dasagroup's then counsel, the Moya Law Firm, moved to withdraw as Dasagroup's counsel. [Dkt. 147]. Because a corporate entity cannot proceed *pro* se, on November 4, 2025, Judge Thompson ordered Dasagroup "to secure counsel no later than November 21, 2025." [Dkt. 178].

Individually, Defendant Ward failed to promptly retain counsel to represent him and proceeded *pro se* for several months. After a Case Management Conference held on October 23, 2025, the presiding District Judge's Minute Order directed "Mr. Ward to find new counsel no later than 11/12/2025. All previously ordered dates are maintained." [Dkt. 172]. In that regard, the case scheduling order set November 30, 2025 as the deadline for fact discovery. *See* Dkt. 136.

Plaintiff had served the original 30(b)(6) deposition notice on Dasagroup on May 16, 2025. [Dkt. 205-1 at ¶ 7]. By agreement of the Parties, the deposition was postponed and Plaintiff served an amended deposition notice on October 27, 2025, setting the deposition for November 24, 2025. *Id.* at ¶ 8. Defendants did not object to this deposition date. *Id.* On October 30, 2025 (during Defendant Ward's deposition as an individual), both Defendant Ward and Dasagroup's then-counsel confirmed they would appear at the 30(b)(6) deposition on November 24. *Id.* On November 4, 2025, Plaintiff served a second amended 30(b)(6) deposition notice which narrowed the topics for Dasagroup's deposition in light of Mr. Ward's individual deposition, but did not change the date. *Id.* at ¶ 9.

Defendants repeatedly sought to stay this case. On October 8, 2025, Dasagroup filed an *ex parte* application to stay the proceedings pending resolution of Defendants' challenge to subject matter jurisdiction. [Dkt. 162]. Judge Thompson denied that motion on October 20, 2025. [Dkt. 171]. On October 27, 2025, Mr. Ward filed an *ex parte* motion directed to Judge Thompson seeking a protective order to stay or postpone his then-pending deposition. [Dkt. 174]. Judge Thompson denied that motion and reiterated that "[a]ll prior orders remain in full force and effect." [Dkt. 176]. On November 21, 2025, Dasagroup's then counsel filed a Notice with the Court reporting that Dasagroup "expects to retain new counsel imminently in this case." [Dkt. 181 at 2]. In that same

Notice, Dasagroup's counsel renewed the prior request that the Court stay the action and grant a continuance of all deadlines for new counsel to get up to speed on the matter. *Id.* Facially, that Notice failed to comply with the Civil Local Rules regarding motions for reconsideration and for *ex parte* applications, and no such stay or continuance was granted.

By November 23, 2025, Mr. Ward and Dasagroup failed to retain counsel by the Court-ordered deadlines. On the noticed date of the deposition, Jefferies's counsel, who had traveled from out-of-state, and Mr. Ward (as 30(b)(6) representative) were present at the deposition location in Seattle. [Dkt. 205-1 at ¶¶ 11-13]. That morning, Dasagroup's then-counsel informed Plaintiff's counsel that new counsel for Dasagroup had been retained, Attorney Dosa. *Id*. at ¶ 11. As of the date of the deposition, Dasagroup's then-counsel (Mr. Moya) was still counsel of record for Dasagroup and the new counsel, Attorney Dosa, had not yet entered appearance. *Id.* Attorney Dosa contacted Plaintiff's counsel at the time the deposition was set to start, stating that he would not proceed because he was not prepared. *Id.* at ¶ 12. Because Attorney Dosa was not present, Mr. Ward refused to testify at the deposition. *Id*. at ¶ 13.

Separately, the Parties had stipulated, and the Court ordered, that Mr. Ward would serve substantive amended responses to Jefferies' First Set of Interrogatories by January 23, 2026. [Dkt. 202]. Additionally, this Stipulation and Order required Dasagroup to provide its amended responses to Jefferies' Requests for Admissions Nos. 1 and 2 by January 23, 2026. *Id*.

On February 5, 2026, Jefferies moved for sanctions arising from Defendants' failures to provide written discovery responses and Dasagroup's counsel's failure to appear at the November 24 deposition. *See* Dkt. 205. As of the filing date of the instant motion, neither Mr. Ward nor Dasagroup had served responses to Jefferies's and Third-Party Defendant Silo Technologies' written discovery requests. *Id*. By the date of the hearing on the instant motion (April 9, 2026), however, Dasagroup and Mr. Ward had provided responses to the discovery requests.

**<u>LEGAL STANDARD</u>**

"The district court has great latitude in imposing sanctions under Fed.R.Civ.P. 37." *Lew v. Kona Hosp.*, 754 F.2d 1420, 1425 (9th Cir. 1985). Courts "may impose sanctions, including payment of expenses, on a party who fails to appear for his own deposition after receiving proper notice." *Id.*

at 1426; *see* Fed. R. Civ. P. 37(d). "[T]he court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3).

The "customary method" for awarding fees is the lodestar method, calculated by multiplying the number of hours reasonably expended by the prevailing party in the litigation by a "reasonable hourly rate." *Hiken v. Dep't of Defense*, 836 F.3d 1037, 1044 (9th Cir. 2016) (quoting *Morales v. City of San Rafael,* 96 F.3d 359, 363 (9th Cir. 1996)). "There is a 'strong presumption' that the lodestar figure represents a reasonable award." *Id*. (citation omitted). "It is axiomatic that 'trial courts need not, and indeed should not, become green-eyeshade accountants' in examining fee requests since '[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.'" *Elec. Priv. Info. Ctr. v. Nat'l Sec. Agency*, 87 F. Supp. 3d 223, 235 (D.D.C. Apr. 8, 2015) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)). A lodestar figure should only be departed from "if certain factors relating to the nature and difficulty of the case overcome this strong presumption and indicate that such an adjustment is necessary." *Hiken,* 836 F.3d at 1044 (citing *Long v. U.S. I.R.S.*, 932 F.2d 1309, 1314 (9th Cir. 1991)).

The district court must "provide a . . . detailed account of how it arrives at appropriate figures for 'the number of hours reasonably expended' and 'a reasonable hourly rate.'" *Hiken*, 836 F.3d at 1044 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). "Though the district court generally possesses a 'superior understanding of the litigation,' '[i]t remains important . . . for the district court to provide a concise but clear explanation of its reasons for the fee award.'" *Id*. (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

Once a lodestar figure is determined, it is "presumed to be [a] reasonable fee." *Blum*, 465 U.S. at 897. "The district court may nonetheless consider other factors in determining whether to adjust the fee award upward or downward," but it "should explain why the adjustment was appropriate." *Hiken*, 836 F.3d at 1044.

## DISCUSSION

### I. WITHDRAWAL OF REQUEST FOR EVIDENTIARY SANCTIONS

As noted, Plaintiff's motion for sanctions originally sought both evidentiary and monetary sanctions. [Dkt. 205]. The primary grounds for the request for evidentiary sanctions was Dasagroup's and Defendant Ward's then-failures to provide the ordered responses to Plaintiff's written discovery requests, detailed above. By the time of the hearing on the instant motion, however, both Dasagroup and Mr. Ward had served responses to the discovery requests. Accordingly, Plaintiff withdrew the request for evidentiary sanctions at the hearing. *See* Dkt. 222.

In light of the discussion at the hearing, the Court **DENIES AS MOOT** Plaintiff's request for evidentiary sanctions.

The Court now turns to Plaintiff's request for monetary sanctions regarding Defendants' counsel's failure to appear at the Deposition.

## II. MONETARY SANCTIONS

Plaintiff requests that the Court impose monetary sanctions, for both the costs and expenses incurred in connection with the November 24 deposition, as well as for an award of attorneys' fees associated with the deposition and the instant motion. Under Rule 37, a district court may impose monetary sanctions, including payment of expenses, on a party who fails to appear for their own deposition after receiving proper notice. *See* Fed. R. Civ. P. 37(d)(1)(a)(i); *see also O'Donnell v. Chase Bank USA NA*, No. EDCV142074JGBKKX, 2015 WL 12655697, at *2 (C.D. Cal. May 1, 2015) ("failure of a party to attend his deposition . . . will subject that party to sanctions under Rule 37(d)").

The threshold issue then is whether sanctions should be imposed for the failures associated with the deposition. As detailed above, Defendants' conduct in the context of the timeline of this case is both undisputed and, as discussed further below, unexcused. In the weeks preceding the deposition, Defendants were well aware of the impending fact discovery deadline (previously set for November 30, 2025). *See* Dkt. 136 (Revised Case Management and Scheduling Order issued on August 22, 2025). Judge Thompson had also made clear to the Parties (including Defendants) that all court-ordered deadlines were maintained, despite Mr. Ward's proceeding *pro se* and despite the then-pending motions. *See* Dkt. 171 (Order Denying Dasagroup's Ex Parte Application to Stay Proceedings issued October 20, 2025); Dkt. 172 (Minutes of Further Case Management Conference

stating "All previously ordered dates are maintained."). None of Defendants' motions or requests to stay the proceedings in the fall of 2025 were granted, and Judge Thompson repeatedly emphasized that the case schedule would remain in place.

As detailed above, Plaintiff originally served the 30(b)(6) deposition notice on Defendants months prior to the deposition date, and served the first amended deposition notice on October 27, 2025, approximately one month prior to the noticed deposition date. [Dkt. 205-1 (Durham Decl.) at 3, ¶ 8]. Both Mr. Ward and Dasagroup's then-counsel confirmed, on October 30, that they would appear at the 30(b)(6) deposition noticed for November 24. As of the date of the deposition, Dasagroup's prior counsel was still counsel of record for Dasagroup and new counsel had not yet entered appearance. Defendants gave literally day-of, last minute notice to Plaintiff that neither current counsel (Mr. Moya) nor the new counsel (Mr. Dosa) would appear at the Deposition.

It is undisputed that Plaintiff incurred travel costs, videographer and court reporter fees, and unproductive attorney time for the deposition. Defendants provide neither substantive nor persuasive arguments as to why they delayed giving notice to Plaintiff that their counsel did not intend to appear. Indeed, Defendants' opposition provides no reasonable excuse for the failure to warn Plaintiff's counsel that the deposition might not go forward because prior counsel would simply fail to appear (because of the pending motion to withdraw) and new counsel would object to proceeding without the time to prepare and get up to speed on the case. *See* Dkt. 215. This is especially inexcusable given Mr. Ward's and prior counsel's confirmation on October 30 that they would appear at the deposition (just a few weeks later).

Further, the timing is suspect. After repeatedly seeking stays of the case, Defendants were faced with the prospect that the deposition would go forward as noticed. Despite explicit directives from Judge Thompson to engage new counsel by a deadline days if not weeks ***prior to*** the deposition date, Mr. Ward (on behalf of Dasagroup) finalized the engagement of new counsel on the day before the deposition – which gave no time for that new counsel to enter appearance before the deposition and lent itself to a ready argument that such counsel could not appear because he had not had time to prepare for the deposition. Dasagroup was under express directive from Judge Thompson to engage new counsel by earlier in November, and any reasonable process for finding new counsel

would have required Mr. Ward (as President of Dasagroup) to work on retaining new counsel days if not weeks prior to the Deposition. Both Mr. Ward and the former and current attorneys for Dasagroup should have known days ahead of the deposition that new counsel's entry into the case would impact the ability of the deposition to go forward. It is indeed inconceivable that they were unaware of the complications with the Deposition at least one day prior to the deposition. Defendants and their counsel (at least then-counsel of record) could have (but failed to) raise the issue with Plaintiff's counsel before Plaintiff's counsel had traveled to Seattle, and before the court reporter and videographer showed up at the deposition.

All discovery in this case was referred to the undersigned on March 10, 2025. [Dkts. 74-75]. The undersigned's Standing Discovery Order expressly states that "Counsel shall also comply with the Northern District of California's Guidelines for Professional Conduct, in particular section 9 to 11 of the Court's Guidelines regarding discovery." *See* Standing Discovery Order at Section A. The Court's Guidelines for Professional Conduct, in turn, state that "[a] lawyer should (i) notify opposing counsel and, if appropriate, the court as early as possible when scheduled meetings, hearings, or depositions must be cancelled or rescheduled, and (ii) provide alternate dates for such meetings, hearings, or depositions when possible." *See* Guideline 3. Here, clearly Defendants' counsel did not notify opposing counsel as early as possible that the 30(b)(6) deposition of Dasagroup would have to be rescheduled, and certainly did not provide alternate dates.

In light of the above, the Court finds that monetary sanctions are warranted for Defendants' counsel's failure to appear at the deposition, failure to warn (until the very day of the deposition) Plaintiff's counsel prior to the deposition that rescheduling would be required, providing no advance notice of the problems with the deposition (which would have avoided the costs and fees sought here), and for the resulting refusal by Mr. Ward to testify as the 30(b)(6) representative of Dasagroup based on both then-counsel's failure to appear and new counsel's inability to appear due to Dasagroup's delay in finalizing his retention.

Therefore, exercising its authority under Rule 37, the Court imposes monetary sanctions on Defendants in the form of an award to Plaintiffs of reasonable attorneys' fees and costs.

## III. REASONABLE ATTORNEY FEES

Here, Plaintiff seeks an award of its attorneys' fees incurred in connection with the November 24 deposition and with drafting the Motion for Sanctions. The "customary method" for awarding fees is the lodestar method, calculated by multiplying the number of hours reasonably expended by the prevailing party in the litigation by a "reasonable hourly rate." *Hiken*, 836 F.3d at 1044 (citation omitted). "There is a 'strong presumption' that the lodestar figure represents a reasonable award." *Id.* (quoting *Long*, 932 F.2d at 1314). "The lodestar figure 'roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case,' and is therefore a presumptively reasonable fee." *Kelly*, 822 F.3d at 1099 (quotation cleaned) (citation omitted). The district court must "provide a ... detailed account of how it arrives at appropriate figures for 'the number of hours reasonably expended' and 'a reasonable hourly rate.'" *Id.* at 1044 (quoting *Blum*, 465 U.S. at 888).

**a. Hourly Rates**

In order to determine the lodestar, the first step is to determine whether the hourly rates for the Plaintiff's attorneys are reasonable. A reasonable hourly rate is ordinarily the "prevailing market rate [ ] in the relevant community." *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010)). In support of its request for fees, Plaintiff seeks an award for the hours spent by three attorneys: Ms. McNeill (a sixth-year associate), Ms. Durham (a seventh-year associate), and Mr. Silivos (a partner) of the law firm representing Plaintiff.

Ms. McNeill's rate is $796 per hour. [Dkt. 218-1 (Durham Reply Decl.) at ¶ 12]. Although she is one year senior, Ms. Durham's hourly rate is $764 per hour. *Id.* The rate of Mr. Silivos is $936 per hour. *Id.* Plaintiff's counsel avers that these rates are representative of those customarily charged in the San Francisco and New York markets. *Id.* at ¶ 13. Additionally, both in briefing and at the hearing regarding the instant motion, counsel for Defendants did not object to these hourly rates or argue that they were unreasonable. Finally, these rates are within the range of reasonable and customary rates in the Northern District of California based on the undersigned's familiarity with hourly rates in this market (based on thirty-two years of experience in private practice prior to

taking the bench).

In light of the above factors, the Court finds that each of the rates for these Plaintiff's attorneys are reasonable.

**b. Number of Hours**

The next step in calculating the lodestar is to determine whether the attorneys at issue spent a reasonable number of hours on the work for which fees are requested. "A district court, using the lodestar method to determine the amount of attorney's fees to award, must determine a reasonable number of hours for which the prevailing party should be compensated." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013); *see, e.g., Fischer v. SJB–P.D. Inc.,* 214 F.3d 1115, 1119 (9th Cir. 2000). "Ultimately, a 'reasonable' number of hours equals '[t]he number of hours . . . [which] could reasonably have been billed to a private client.'" *Gonzalez*, 729 F.3d at 1202 (quoting *Moreno v. City of Sacramento,* 534 F.3d 1106, 1111 (9th Cir. 2008). "[T]o determine whether attorneys for the prevailing party could have reasonably billed the hours they claim to their private clients, the district court should begin with the billing records the prevailing party has submitted. Although opposing counsel's billing records may be relevant to determining whether the prevailing party spent a reasonable number of hours on the case, those records are not dispositive." *Gonzalez*, 729 F.3d at 1202. "In determining the appropriate number of hours to be included in a lodestar calculation, the district court should exclude hours 'that are excessive, redundant, or otherwise unnecessary.'" *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (citation omitted).

In support of the instant motion, Plaintiff's counsel submitted the time entries for each of the attorneys at issue. *See* Dkt. 218-1 at Exhibit E. At the hearing on the instant motion, Defendants' counsel primarily argued that the number of hours spent by Plaintiff's counsel on the instant motion are excessive. The Court addresses the hours spent on the work by each attorney in turn.

**i. Ms. McNeill's Hours**

According to Plaintiff's time entries, Ms. McNeill (as the most junior attorney on this team) worked a total of 25.3 hours for which fees are requested (which totals $20,138.80 in fees using her hourly billing rate). *See* Dkt. 218-1 at 35-36 (Exhibit E). The Court notes that Plaintiff's counsel's

declaration states that Ms. McNeill worked 26.5 hours, but that number is not reflected when totaling the hours submitted in the specific time entries. *See* Dkt. 218-1 at ¶ 12; Dkt. 218-1 at 35 (Exhibit E). Accordingly, the Court assumes Plaintiff's counsel's declaration contained an inadvertent mathematical or arithmetic error.

The time entries reflect that Ms. McNeill spent 0.7 total hours discussing the motion with her colleagues; 0.2 hours corresponding with her team about court reporter and videographer expenses; 13 hours conducting research for the motion, 2.1 hours preparing the motion, discussing the sanctions motion with her colleagues, and conducting research pertaining to discovery; and 9.3 hours to "further prepare" the sanctions motion and/or its attachments. *Id.*

The Court finds that Ms. McNeill spent a reasonable amount of time researching for the motion and discussing the motion with her colleagues. However, the Court finds that a private client would not pay for 9.3 hours of preparing the sanctions motion, especially when (as discussed below) Ms. Durham also spent an additional 20.1 hours editing the motion. The Court therefore applies a 50% reduction solely to the hours recorded for further preparing the sanctions motion and/or its attachments, reducing the reasonable hours for this task to 4.7 hours. With this reduction, the Court therefore grants attorneys' fees for a new total of 20.7 hours of Ms. Mc.Neill's work, resulting in a fee award of $16,477.20 (using her hourly rate).

**ii. Ms. Durham's Hours**

According to Plaintiff's time entries, Ms. Durham worked a total of 31.6 hours (which results in $24,142.40 in fees using her hourly rate). *See* Dkt. 218-1 at 35 (Exhibit E). The Court notes that Plaintiff's counsel's declaration states that Ms. Durham worked a total of 32.8 hours, *see* Dkt. 218-1 at ¶ 12, but the actual time entries submitted in Exhibit E totals 31.6 hours. *See* Dkt. 218-1 at 35 (Exhibit E). The Court again assumes Plaintiff's counsel's declaration contained an inadvertent mathematical or arithmetic error.

With regard to her time entries relating to the instant motion, Ms. Durham spent 20.1 total hours to "[e]dit and revise" sections of the motion, 3.4 hours to "[i]ncorporate client edits" to the motion, 5.4 hours conducting research pertaining to the motion, 0.5 hours conferring with Ms. McNeill about her research relevant to the motion, 0.3 hours reviewing exhibits for the motion, and

1.9 hours to "finalize" the motion and its relevant attachments for filing. *Id.*

In light of Ms. Durham's experience with litigating commercial matters in federal courts and the time spent by Ms. McNeill on preparing the motion as well, the Court finds that a private client would not pay for 20.1 hours for Ms. Durham's editing and revising the instant motion. The Court therefore applies a 50% reduction solely to the hours recorded for editing and revising the motion (barring incorporating clients' edits), reducing the reasonable hours for this task to 10 hours.

With regard to her remaining time entries, the Court finds that Ms. Durham spent a reasonable amount of time incorporating client edits, reviewing exhibits, conferring with her colleague about the motion, and finalizing the motion. Accordingly, with the reduction discussed above, the Court therefore grants an award of attorneys' fees for 21.6 hours of Ms. Durham's time, for a new total fee award of $16,502.40 (using her hourly rate).

**iii. Mr. Silivos's Hours**

According to Plaintiff's time entries, Mr. Silivos worked a total of 5.4 hours (resulting in a total amount of fees of $5,054.40 using his hourly billing rate). *See* Dkt. 218-1 at Exhibit E. Mr. Silivos spent 0.2 hours corresponding with Ms. Durham about discovery tasks and the sanctions motion, 4.2 hours revising the motion, and 1 hour researching and corresponding with Ms. Durham about adverse inferences in the Northern District of California. *See* Dkt. 218-1 at 36.

The Court finds that the number of hours Mr. Silivos worked on these tasks are all reasonable such that a private client would pay the full value of Mr. Silivos's services. The Court therefore grants attorneys' fees for the 5.4 hours Mr. Silivos worked, for a total fee award of $5,054.40 (using his hourly rate).

**c. Costs**

Finally, Plaintiffs submitted evidence of the costs of travel to Seattle for the deposition and the costs in cancelling the court reporter and videographer. *See* Dkt. 218-1 at ¶ 11; Dkt. 205-1. Ms. Durham's flight cost was $605.25, her hotel bill was $160.24, and her taxi costs were $138.44. *See* Dkt. 205-1 at 9–21. Ms. Durham's total costs of travel and lodging for the deposition were $903.93. *Id.* Mr. Silivos's flight cost was $986.96, his hotel bill was $208.29, and his taxi costs were $348.63, for a total of $1,543.88. *See* Dkt. 205-1 at 23–56.

The Court finds these costs reasonable. The Court grants Plaintiffs' counsel the full travel and lodgings costs, totaling $2,447.81.

The cancellation fee for the videographer was $309.00 and the cancellation fee for the court reporter was $619.60. As discussed above, the cancellation fees were a consequence of the failure by Defendants and their counsel to warn Plaintiff prior to the Deposition that it would have to be rescheduled. These cancellation costs are reasonable. Accordingly, the Court grants Plaintiff's counsel the full cancellation fees for the videographer and the court reporter.

## CONCLUSION

For all the reasons discussed herein, the Court **GRANTS-IN-PART** Plaintiffs' Motion for Sanctions and imposes a sanction on Defendants for a total of $41,410.41 (as an award of attorneys' fees and costs) to be paid by Defendants to Plaintiff. Defendants are jointly and severally liable for this monetary sanction award.

This **RESOLVES** Dkt. 205.

**IT IS SO ORDERED.**

Dated: August 5, 2026

PETER H. KANG
United States Magistrate Judge

United States District Court
Northern District of California